# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAMES GIBSON,        )

                )       Case No. 19 CV 4152

        Plaintiff,   )

                )       Honorable Judge Ellis

v.                 )

                )       Magistrate Judge Weisman

CITY OF CHICAGO, et al.,  )

                )

        Defendants.  )

## DEFENDANTS LEJA'S AND CITY OF CHICAGO'S MOTION TO DISMISS

Defendant Henry Leja, through his attorneys Hale & Monico LLC, respectfully moves this Court to dismiss all claims brought against Defendant Leja by Plaintiff James Gibson pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant City of Chicago, though its attorneys Reiter Burns LLP, respectfully joins Defendant Leja's motion to dismiss.[1] In support, Defendants Leja and City state:

### INTRODUCTION

In December 1989, Plaintiff was arrested for a double homicide and subsequently convicted in October 1991. In 2019, the conviction was reversed and charges dismissed. Plaintiff now brings this lawsuit against any police officer involved in the initial investigation, regardless of their role and whether they are actually accused of wrongdoing. Defendant Leja, for example, is not to have been part of any of the misconduct, yet is named as a defendant for each claim. Given that there are no factual allegations showing Defendant Leja was personally involved in the alleged constitutional violations, the Court should grant Defendant Leja's motion to dismiss.

---

[1] Defendant Leja moves to dismiss Counts I, II, III, IV, V, VI, VII, VIII, IX, XI, XII, and XIII in their entirety. Defendant City moves to dismiss Counts X (*Monell*), XIV (*Respondeat Superior*), and XV (Indemnification) to the extent these counts are dependent on any underlying claim against Defendant Leja that is dismissed.

## FACTS AS ALLEGED IN COMPLAINT[2]

On December 22, 1989, Lloyd Benjamin and Hunter Wash were murdered outside of Wash's garage, which doubled as his mechanic shop. *Complaint* at ¶¶ 15, 17, 18. Initially there were no eyewitnesses to the shooting. *Id.* at ¶ 20. On December 27, 1989, Plaintiff was detained by Officers Rusnak, Breska, Maslanka, Paladino, Ptak, McCann, Caesar, and Byrne and taken to the police station in connection with the investigation into the Benjamin/Wash homicides. *Id.* at ¶¶ 24, 26. Plaintiff remained at the police station overnight and was placed into three lineups by Officers O'Mara, Collins, Maslanka, Paladino, and McCann. *Id.* at ¶¶ 28, 29. Plaintiff then claims that "Defendant Officers Anthony Maslanka, William Moser, John E. Byrne, Louis Caesar, John Paladino, Henry J. Leja, Jerome Rusnak, Victor Breska, John McCann, John M. McCarthy, Phillip Collins and John O'Mara decided that, pursuant to the *de facto* policy of the City of Chicago Police Department, they would torture Gibson into making a confession or statement which they could use to convict him for the Benjiman/Wash [sic] murders[.]" *Complaint* at ¶ 29.

Officers O'Mara and Collins began questioning Plaintiff about his brother Harold Gibson, who had also been at the police station. Eventually, O'Mara, Collins, Maslanka, Paladino, and Ptak were in the room with Plaintiff, who denied any involvement in the Benjamin/Wash homicides. Paladino, Maslanka, O'Mara, and Collins then used physical force against Plaintiff while questioning him about the murders and threatened to continue to do so unless Plaintiff changed his story. *Complaint* at ¶ 30. Plaintiff was then held overnight again and, on December 29, 1989, was interviewed by Rusnak and Breska, when he again denied involvement in the murders. *Id.* at ¶¶ 31, 32. Plaintiff then agreed to a polygraph examination. *Id.* at ¶ 32. After Rusnak and Breska left the room, Officers Collins, O'Mara, Paladino, Maslanka, Caesar, McCann, and Byrne were in the room when more physical forced was used against Plaintiff, including having a clothes iron used to burn off a tattoo of the name "Peter

---

[2] For this Rule 12(b)(6) Motion only, Defendants rely on Plaintiff's well-pleaded allegations as the facts of the case.

Gunn" that Plaintiff had on his arm due to that being his nickname. *Id.* at ¶¶ 33, 34. Rusnak and Breska then came back into the room and took Plaintiff to complete a polygraph examination, which indicated deception. *Id.* at ¶ 35. Following the examination, Plaintiff told Rusnak and Breska that he had heard rumors that Fernando Webb ("Bodine") was involved in the murders. *Id.* at ¶ 36. Plaintiff alleges that he knew Webb as both "Bodine" and "KD" but that "KD" was actually the nickname of Eric Johnson a/k/a Eric Smith. *Id.*[3] Both Webb and Johnson were detained by the police. *Id.* at ¶ 38. Collins and O'Mara then used physical force on Plaintiff, who then falsely stated that he had observed "KD" (Johnson) give "Bodine" (Webb) a gun. At that point, Officers Caesar, McCann, and Moser entered the room, where they "fed" Plaintiff an untrue story that he observed KD give Bodine a gun and then saw Bodine shoot Benjamin – a story Plaintiff repeated to an Assistant State's Attorney. *Complaint* at ¶¶ 39, 40. On December 30, 1989, Plaintiff was released as criminal charges were not approved. *Complaint* at ¶ 41.

At the police station, Johnson was physically abused by Officers Paladino, Maslanka, Breska, and Rusnak, who threatened him and said he was lying about not being involved in the murders. *Complaint* at ¶ 48. Johnson was taken for a polygraph examination by Officers McCann and Caesar and was told he would be released if he stated he saw Plaintiff commit the murders. *Id.* at ¶ 49. Johnson agreed to make such a statement but, upon refusing, he was threatened with a gun by Byrne (with McCann and Caesar present). *Id.* at ¶ 51. Moser then went into the interview room with Johnson and said they just wanted Johnson's statement as a witness; Johnson agreed to sign the statement implicating Plaintiff, which he did in the presence of an Assistant State's Attorney. This statement was that Plaintiff paid Johnson $50 to act as a lookout while Plaintiff robbed Benjamin and that Johnson then saw Plaintiff shoot Benjamin. *Id.* at ¶¶ 52, 53, 54.

---

[3] For consistency, Eric Johnson/Keith Smith/KD will be "Johnson" and Fernando Webb/Bodine will be "Webb."

After Johnson agreed to sign the statement on December 31, 1989, Officers Byrne, O'Mara, Moser, Collins, McCann, Ptak, and Caesar arrested Plaintiff, who refused to talk to any law enforcement. *Id.* at ¶¶ 55, 56. Plaintiff then claims that "Officers Moser, Byrne, O'Mara, Collins, McCann, Ptak, and Caesar agreed that they would obtain additional false statements from other people in order to fabricate corroboration for Johnson's statement against [Plaintiff]." *Complaint* at ¶ 57.

Officers Moser, O'Mara, Collins, McCann, and Caesar then detained Carla Smith and Janice Johnson and told each that, unless they gave statements in which they admit having heard Plaintiff talk about robbing Benjamin, each would be charged with being an accessory to murder but, if they did sign the statement, then Johnson would be released; both signed the statements. *Id.* at ¶¶ 59, 60, 61. While in the presence of Officers Collins, O'Mara, McCann, and Caesar, Officer Moser told Webb that, if he stated that he observed Plaintiff outside of Wash's garage – where the murders occurred – that Webb would be released from custody and not charged and Webb agreed to sign the statement. *Complaint* at ¶ 62. Plaintiff and Johnson were then charged with the murders of Benjamin and Wash.

During the criminal proceeding, Plaintiff claimed that Johnson's statement implicating Plaintiff in the murders was untrue and the product of physical abuse. *Complaint* at ¶ 70. Officers Moser and Paladino testified during the motion hearing and the motions to suppress the statement were denied. *Id.* at ¶ 73. During Plaintiff's criminal trial, Officer Moser, Carla Smith, Janice Johnson, and Fernando Webb testified: Officer Moser testified as to Plaintiff's statement that Plaintiff was outside the garage where the murders occurred and that Plaintiff had previously overheard Johnson and Webb planning the robbery (which Plaintiff claims is an inaccurate recitation of his statement) but Moser did not testify that "Gibson had been tortured into giving [the statement]." *Id.* at ¶ 76. No other officer testified during Plaintiff's criminal prosecution. Plaintiff was convicted on October 8, 1991 and sentenced to natural life in prison, with the Court commenting that he was relying – at least in part – on Plaintiff's statement that he was outside of the garage prior to the shooting. *Complaint* at ¶¶ 77, 78.

In January 1992, Johnson was also convicted but had the conviction vacated in 2010, with Johnson agreeing to an *Alford* plea for a sentence of time served. *Id.* at ¶¶ 73, 79.

In 2016, Plaintiff's conviction was subject to an evidentiary hearing under the Illinois Torture Inquiry and Relief Commission Act, 775 ILCS 40/1, et. Seq. *Complaint* at ¶¶ 80-83. During the hearing, Defendants Byrne and Paladino were called to testify but invoked their Fifth Amendment rights while Defendants Moser, Leja, Caesar, and Rusnak testified that they did not have any independent memory of the investigation but denied have any knowledge of any abuse of suspects or witnesses. *Id.* at ¶¶ 84, 87. Although initially denied relief by the circuit court, new trial was ordered on April 4, 2019, Plaintiff was released on bond on April 8, 2019, and the charges were dismissed on April 26, 2019. *Complaint* at ¶¶ 88, 89, 91, 92, 93, 94. Plaintiff initiated this lawsuit on May 10, 2019. *Docket No. 1.*

## LEGAL STANDARD

To overcome a Rule 12(b)(6) motion, "a complaint must state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014); *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). While courts accept the complaint's factual allegations as true and draws all permissible inferences in the plaintiff's favor, *id.*, the plaintiff "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under [Rule] 8." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). Legal conclusions and conclusory allegations are not entitled to this presumption of truth and the remaining factual allegations "must be enough to raise a right to relief above the speculative level." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

**ARGUMENT**

I. **All claims should be dismissed against Defendant Leja for lack of personal involvement.**

Defendant Leja is named as a defendant in each of Plaintiff's claims, despite not having been identified as an officer who was personally involved in any of the alleged misconduct. Nor are Plaintiff's conclusory, vague, and speculative theories of conspiracy sufficient to survive a motion to dismiss Defendant Leja from the entire litigation with prejudice.

A. Defendant Leja cannot be held liable for any of Plaintiff's claims due to a complete absence of any personal involvement in the alleged misconduct.

One of the most fundamental principles of Section 1983 claims against state actors is that the defendant must have been personally involved in the claimed constitutional violation. *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). Simply put, "[a]n individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *also Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary."). Absent personal involvement, any claims against that individual must be dismissed. *Id.* Likewise, the Tort Immunity Act holds that "a public employee, as such and acting within the scope of his employment is not liable for any injury caused by the act or omission of another person." 745 ILCS 10/2-204. Or, in other words, the public employee – such as a police officer – must have personally caused the harm to face civil liability under Illinois law.

Plaintiff fails to allege that Defendant Leja had any personal involvement in any of the alleged misconduct. Indeed, there is only one factual allegation against Defendant Leja in the entire 54-page Complaint: that he testified during Plaintiff's TIRC evidentiary hearing that he "had no independent recollection of what occurred back [sic] December 1989 in the interrogation of Gibson or Johnson"

and that he "had no knowledge of any abuse of suspects or witnesses by anyone working under John Burge." *Complaint* at ¶ 87. This single allegation, which is only about Leja testifying, is not sufficient to hold Defendant Leja personally liable for any claimed constitutional violation as he has absolute immunity for that testimony. *E.g. Rehberg v. Paulk*, 556 U.S. 356, 369 (2012); *Briscoe v. LaHue*, 460 U.S. 325, 341-45 (1983); *Curtis v. Membenek*, 48 F.3d 281, 285 (7th Cir. 1995); *also Jurgensen v. Haslinger*, 295 Ill.App.3d 139 (1998) (absolute immunity against civil liability under Illinois law). Nor do the allegations contained in each claim link Defendant Leja to any misconduct as Plaintiff merely incorporates all prior allegations of wrongdoing; of which, none are directed toward Defendant Leja. *Compare Complaint* ¶¶ 1-112 *with* ¶¶ 115, 119, 125, 126, 132, 140, 146, 153, 173, 178. As such, Plaintiff's attempt to include Defendant Leja as a defendant in Counts I, III, IV, V, VI, IX, XI, and XIII fail due to the lack of any personal involvement and the claims should be dismissed with prejudice.

B. Defendant Leja cannot be held liable on a failure to intervene theory, as alleged in Count II.

For similar reasons, Count II (failure to intervene) should be dismissed. Although Section 1983 has a personal involvement requirement, an individual can be held liable for a failure to act to prevent misconduct. *E.g. Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). However, this exception is limited and requires a plaintiff show that the defendant (1) had knowledge of the misconduct and (2) had a realistic opportunity to prevent the misconduct. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). In Count II, Plaintiff claims that all defendants knew of the physical violence inflicted upon him and failed to prevent it. This conclusory statement is not supported by any factual allegation; indeed, it is flatly contradicted by Plaintiff's pleading in which he specifically excludes Defendant Leja from being physically present during any of the alleged misconduct. By not being present or having contemporaneous knowledge of the misconduct, Plaintiff did not establish Defendant Leja had a realistic opportunity to prevent it and this claim should be dismissed.

7

Similarly, Plaintiff cannot bring a failure to intervene claim if the underlying constitutional violation is not viable. *See Fillmore v. Page*, 358 F.3d 496, 505-06 (7th Cir. 2004); *Harper v. Albert*, 400 F.3d 1052, 1066 n.18 (7th Cir. 2005). Accordingly, should the Court dismiss any of Plaintiff's § 1983 claims for any reason, any corresponding failure to intervene claim so likewise be dismissed.

C.  Defendant Leja cannot be liable on a conspiracy theory because Plaintiff's allegations are far too conclusory, vague, and lacking in factual support.

In his Complaint, Plaintiff asserts that Defendant Leja was part of a far-ranging conspiracy that includes any officer involved in the Benjamin/Wash homicide investigation, regardless of the extent of their role. *Complaint* at ¶ 29. That single statement forms the basis of Plaintiff's three conspiracy claims. *Counts* VII, VIII, and XII. This conclusory statement is not enough to survive a motion to dismiss and the claims should be dismissed.

Federal Rule of Civil Procedure 8 requires that a plaintiff give "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to meet this standard, the plaintiff must have well-pleaded, nonconclusory factual allegations that "give rise to a plausible suggestion of conspiracy." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). However, even before *Twombly* and *Iqbal*, "conspiracy allegations were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). Here, Plaintiff merely asserts that Defendant Leja was involved in a conspiracy to torture Plaintiff but provides no factual basis for that accusation. *Complaint* at ¶ 29. On the contrary, Plaintiff merely claims that every police officer adverse to him was part of a wide-ranging conspiracy – a suspicion devoid of realistic or factual support. *Cooney*, 583 F.3d at 971. As such, Plaintiff's conspiracy claim fails to rise above the speculative theory and cannot form the basis of any civil liability. *Id.*

8

## II.     Additionally, many of Plaintiff's claims are subject to dismissal for alternative reasons.

As discussed above, Defendant Leja had no personal involvement in any of the alleged constitutional deprivations or intentional torts and cannot face civil liability. Putting that aside, many of Plaintiff's claims fail for alternative reasons and should be dismissed with prejudice.

### A.   Plaintiff's "Coerced Confession" claim (Count I) should be partially dismissed.

In Count I, Plaintiff purports to bring a "coerced confession" claim under § 1983 and asserts violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights based on the alleged physical abuse and detainment. *Complaint* at ¶¶ 113-123. This claim is legally deficient.

#### 1.   *There is no First, Fourth, Sixth, or Eighth Amendment protection against a "coerced confession."*

As an initial matter, "coerced confession" claims are only valid under the Fifth and Fourteenth Amendments – not the First, Fourth, Sixth, or Eighth – as the Fifth is the only Amendment that prohibits a person from being compelled to testify against himself, *i.e.* a coerced statement. U.S. Const. amend. V; *Napolitano v. Ward*, 457 F.2d 279, 282-83 (7th Cir. 1972). In addition, a plaintiff may bring a Fourteenth Amendment substantive due process claim based on police misconduct that results in a confession. *Chavez v. Martinez*, 538 U.S. 760, 773 (2003) (plurality opinion). To the extent Plaintiff makes a "coerced confession" claim under any Amendments other than the Fifth and Fourteenth, the claims should be dismissed with prejudice.

#### 2.   *Plaintiff's "coerced confession" claim cannot be premised on the alleged physical abuse.*

To bring a Fifth Amendment claim, a plaintiff must plead not only that a statement was coerced but that it was subsequently used against them in a criminal proceeding. Chavez, 538 U.S. at 773. This claim is distinct from a claim of physical abuse. A claim of excessive force or – in Plaintiff's allegations – "torture" is only actionable under the Fourth Amendment, and such a claim accrues the instant that unreasonable force is used. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010). In Illinois, there is a two-year statute of limitation for § 1983 claims of

9

excessive force, even when the allegation is police torture. *Wallace v. Kato*, 549 U.S. 384 (2007); *Wrice v. Burge*, 187 F.Supp.3d 939, 953 (N.D.Ill. 2015) (claim of "torture and physical abuse" under Fourth Amendment subject to dismissal as untimely when filed outside of two-year statute of limitations) *see also Chavez*, 538 U.S. at 773 n.5 ("police torture or other abuse" do not run afoul of the Fifth Amendment and such claims are instead analyzed under the Fourth or Fourteenth Amendments). In his Complaint, Plaintiff claims that officers O'Mara, Collins, Maslanka, Paladino, Ptak, and Byrne were physically abusive, including burning Plaintiff with a clothes iron. *Complaint* at ¶¶ 30, 33, and 34. Putting aside the lack of any personal involvement by Defendant Leja, these allegations are legally insufficient to state a Fifth Amendment claim and, to the extent Plaintiff makes a claim under the Fourth or Fourteenth Amendment, such a claim is untimely. *Wrice*, 187 F.Supp.3d at 953. In other words, Plaintiff has no viable § 1983 claim based on the physical abuse occurring in December 1989 and any purported claim should be dismissed with prejudice regardless of the legal theory.

B. Plaintiff's "Due Process" claim (Count III) should be partially dismissed with prejudice.

In Count III of his Complaint, Plaintiff asserts a claim under the "Due Process Clause" of the Fourteenth Amendment, claiming that all Defendant Officers "deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence[.]" *Complaint* at ¶¶ 131-138. Plaintiff fails to identify in that claim what evidence that Leja, or any of the other Defendant Officers, is accused of withholding or fabricating. Plaintiff also fails to explain under which Due Process theory any of these alleged instances of misconduct fall. Putting that aside, to the extent that Plaintiff alleges there was "withheld exculpatory evidence," the claim falls under *Brady v. Maryland*, 373 U.S. 83 (1963), which requires the disclosure of all exculpatory evidence to a criminal defendant. By contrast, fabricated evidence is a violation of due process when it "is later used to deprive the [criminal] defendant of [their] liberty in some way." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016). The fabrication of evidence or withholding of exculpatory evidence that Plaintiff alleged in the Complaint falls into three

10

possible categories: (1) the circumstances surrounding alleged abuse of Plaintiff and his statement; (2) Johnson's allegedly false statement and physical abuse; and (3) the statements by Webb, Carla Smith, and Janice Johnson. Putting aside Defendant Leja's lack of any personal involvement in any of the alleged misconduct forming the basis of Plaintiff's "Due Process" claim, some of these allegations are legally insufficient and should be dismissed with prejudice.

### 1. Plaintiff's "torture" and statement cannot form the basis of a "Due Process" violation.

Count III is vague and broad enough to potentially include an allegation that Defendant Moser could be liable for concealing or withholding the circumstances surrounding Plaintiff's physical abuse and false statement. To the extent Plaintiff brings a "Due Process" claim on that theory of liability, it fails as a matter of law and should be dismissed with prejudice. *Brady* requires the production of all exculpatory evidence that is unknown to the criminal defendant. 373 U.S. 83 (1963); *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007); *Walden v. City of Chicago*, 755 F.Supp.2d 942 (N.D.Ill. 2010). Plaintiff was present for his alleged coerced confession. It is well-settled that "the police were under no *Brady* obligation to tell [Plaintiff] again that they coerced [him] into confessing." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029; *Walden*, 755 F.Supp.2d at 950-51. Indeed, a coerced confession alone can never constitute a *Brady* claim because a plaintiff is aware of his own confessional and that knowledge cannot be "suppressed." *Wallace v. City of Chicago*, 440 F.3d 421, 429-30 (7th Cir. 2006).

### 2. Johnson's physical abuse and fabricated statement cannot form the basis of a "Due Process" violation.

The Seventh Circuit has "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty in some way." *Whitlock v. Brueggeman*, 682 F.3d 567, 580 (7th Cir. 2012). The use of this false evidence to deprive a person of liberty is mandatory; the Seventh Circuit has ruled "that an accused has no claim against an officer who fabricates evidence and puts the evidence in a drawer, never to be used." *Armstrong v. Daily*, 786 F.3d 529, 553 (7th Cir. 2015); *see also Bianchi*, 818 F.3d at 319;

*Whitlock*, 682 F.3d at 582. It is unclear if Plaintiff is attempting to base part of his Due Process claim upon (1) the physical abuse inflicted upon Johnson or (2) Johnson's false statement implicating Plaintiff in the Benjamin/Wash homicide. Any Due Process claim is limited to that statement alone and not the physical abuse inflicted upon Johnson. Physical abuse allegedly inflicted upon Johnson does not amount to a Due Process violation against Plaintiff. Constitutional rights belong to the individual whose rights have been violated and Plaintiff lacks standing to assert an unreasonable use of force claim on behalf of Johnson. *E.g. Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("[A] litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.").[4]

In addition, Plaintiff fails to provide sufficient <u>factual</u> allegations that Johnson's statement was used to deprive him of a liberty interest: he does not claim that it was used at a pre-trial judicial hearing or during his trial. The only allegation on this issue is a conclusory one, *complaint* at ¶ 74, which is not entitled to a presumption of truth and is not enough to meet Plaintiff's burden. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (legal conclusions and conclusory allegations not entitled to presumption of truth and should be excised). To that end, Plaintiff failed to provide sufficient factual allegations to show that Johnson's "fabricated" statement was used to deprive Plaintiff of a recognized liberty interest and, as a result, Plaintiff's "Due Process" claim should be dismissed with prejudice.

C. <u>Plaintiff's "False Imprisonment" claim (Count IV) should be dismissed as untimely.</u>

Plaintiff's Count IV purports to be a "false imprisonment" claim under Section 1983 for "false imprisonment for thirty (30) years" in violation of his Constitutional rights. *Complaint* at ¶¶139-144. This claim is untimely. The Fourth Amendment prohibits pre-trial detention based on fabricated

---

[4] Although there is a limited exception, Plaintiff has not made any factual allegations to support a showing that he meets all three required prongs: that he suffered an "injury in fact;" there is a close relationship to the third party; and the third party's ability to protect their interest is hindered. *Powers*, 499 U.S. at 410-11. Moreover, any claim based on the use of force against Johnson is untimely. *Wrice*, 187 F.Supp.3d at 953.

evidence. *Manuel v. City of Joliet*, 137 S.Ct. 911 (2017) ("*Manuel I*"). The Seventh Circuit determined that a Fourth Amendment pre-trial unreasonable detention claim accrues when the individual is released from pre-trial custody. *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018) ("*Manuel II*"). In so holding, the Seventh Circuit squarely rejected the notion that such a claim accrues when the criminal charges were dismissed or the criminal defendant was found not guilty. *Id.* at 669. This was adamantly clarified in *Mitchell v. City of Elgin* as "a Fourth Amendment claim for unlawful pretrial detention accrues when the detention ends, not when the prosecution ends." 912 F.3d 1012, 1015 (7th Cir. 2019) (describing *Manuel II*'s holding). That is because "there is no such thing as a constitutional right not to be prosecuted without probable cause." *Manuel II*, 903 F.3d at 670. These cases have firmly established the constitutional principles that the Fourth Amendment prohibits unreasonable pre-trial detention based on false evidence while the Fourteenth Amendment prohibits a conviction based on fabricated evidence. *Knox v. Curtis*, 771 Fed.Appx. 656 (7th Cir. 2019). In other words, an individual's Fourth Amendment claim premised on fabricated evidence accrues when the person is released from custody or **when he was convicted**. *Id.* at *658. And, under this standard, Plaintiff's Fourth Amendment claim should be dismissed as untimely.

It cannot be reasonably argued that Plaintiff can bring a claim for his detention from December 27 through 30, 1989. Any Fourth Amendment claim accrued when he was released from custody on December 30, 1989 and any lawsuit must have been initiated within two years. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007). Likewise, under *Manuel II*, as explained by *Knox*, any Fourth Amendment claim Plaintiff may have had from the date of his arrest (December 31, 1989) until his conviction (October 8, 1991) accrued on the date he was convicted. *Knox*, 771 Fed.Appx. at 658. To that end, he had until October 8, 1993 to initiate a lawsuit based on that pre-trial detention. *Id.*; *see also Mayo v. LaSalle County*, No. 18 CV 1342, 2019 WL 3202809 (N.D.Ill. July 15, 2019) (Tharp, J.). Since Plaintiff did not initiate this present litigation until 2019, his Fourth Amendment claims are untimely.

D. Plaintiff's "Equal Protection" claim (Count V) should be dismissed for failing to plead sufficient factual allegations to support the claim.

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "most typically reaches state action that treats a person poorly because of the persons' race or other suspect classification, such as sex, national origin, religion, political affiliation, among others, or because the person has exercised a 'fundamental right.'" *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010). To establish a prima facie case of discrimination under the Equal Protection Clause, the plaintiff must show that "he is a member of a protected class, and that he was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). He must also allege that the defendant was "motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). While courts must take factual allegations as true when weighing a motion to dismiss, that presumption of truth does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.* Here, Plaintiff does nothing more than simply recite the elements of an Equal Protection claim without provided any factual allegations to support it. *Complaint* at ¶¶ 146-147. As such, the Equal Protection claim should be dismissed.

E. Plaintiff's "Right to Counsel" claim (Count VI) should be dismissed with prejudice.

In Count XI, Plaintiff asserts that his "right to counsel" was violated. *Complaint* at ¶¶ 153-158. It is black letter law that the Sixth Amendment's right to counsel does not attach until "at or after the initiation of adversary criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Stadfeld*, 689 F.3d 705, 711 (7th Cir. 2012) (citation and quotation marks omitted); *see also Rothgery v. Gillespie Cnty., Rex.*, 554 U.S. 191, 213 (2008). This extends to pre-indictment interviews with law enforcement, *United States v. Thomas*, 39 F.Supp.3d 1015, 1021-22 (N.D.Ill. 2014), and pre-indictment lineups. *United States v. Larkin*, 978 F.2d 964, 969

14

(7th Cir. 1992); *US ex rel Wilson v. Peters*, 60 F.Supp.2d 777 (N.D.Ill. 1999); *Jerricks v. Bresnahan*, 880 F.Supp. 521 (N.D.Ill. 1995). There are no allegations of misconduct occurring subsequent to Plaintiff's arrest, other than allegedly perjured testimony (which cannot form the basis of civil liability). *E.g. Rehberg v. Paulk*, 556 U.S. 356, 369 (2012); *Briscoe v. LaHue*, 460 U.S. 325, 341-45 (1983); *Curtis v. Membenek*, 48 F.3d 281, 285 (7th Cir. 1995); *also Jurgensen v. Haslinger*, 295 Ill.App.3d 139 (1998) (absolute immunity against civil liability under Illinois law). Or, in other words, the misconduct occurred prior to the initiation of Plaintiff's criminal proceedings. To that end, Plaintiff's "right to counsel" claim lacks any factual or legal merit and should be dismissed with prejudice.

F.  <u>Plaintiff's "Denial of Access to the Court" claim (Count IX) should be dismissed for failing to plead sufficient factual allegations to support the claim.</u>

The First and Fourteenth Amendments provide an individual with a right to pursue legal redress for claims which have a reasonable basis in law and fact. *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995). To prove a violation of this right, a plaintiff must show (1) that a state action frustrated his efforts to pursue a non-frivolous claim and (2) he suffered an actual, concrete injury as a result. *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000). A denial of access to the courts arises only where an alleged cover-up is to some extent successful. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) ("[A]n attempt to cover up police wrongdoing which succeeded only briefly in hiding the facts from the plaintiffs, and which ultimately neither prevented the plaintiffs from pursing relief nor reduced the value of their claim, was not actionable under Section 1983."). Here, Plaintiff merely asserts the conclusory statement that he has been deprived of "certain constitutional claims against certain potential defendants" but fails to identify which claims and which Defendants. *Complaint* at ¶ 178. A similar situation occurred in *Hobbs v. Cappelluti*, 899 F.Supp.2d 738 (N.D.Ill. 2012). In *Hobbs*, an exonerated prisoner failed to identify how his ability to bring the present lawsuit was deprived or diminished by officers involved in the investigation that led to his conviction. *Id.* at 775. As a

consequence, the plaintiff's denial of access to the courts claim was dismissed. *Id.* So too here does Plaintiff fail to identify the concrete injury with any specificity. More than that, other than the conclusory Paragraph 178, which is not entitled to the presumption of truth, Plaintiff did not assert that any of the defendants were involved in any denial of access to the courts. Accordingly, the Court should dismiss this claim with prejudice.

G.   Plaintiff's "Malicious Prosecution" claim (Count XI) should be dismissed.

In order to plead a malicious prosecution claim, a plaintiff must allege (1) a defendant commenced or continued a criminal prosecution against them; (2) the proceedings terminated in plaintiff's favor; (3) there was no probable cause to support the prosecution; (4) the defendant acted with malice; and (5) plaintiff suffered damages. *Swick v. Liautaud*, 169 Ill.2d 504, 512 (1996). The Illinois Supreme Court recently analyzed the "commence or continue" aspect and held that, in order the meet this element, the plaintiff must show that "the defendant's conduct is both the cause in fact and a proximate cause of the commencement or continuation of the ongoing criminal proceedings." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 46 (Illinois Supreme Court 2019). This is done by examining whether the defendant "played a significant role in the plaintiff's prosecution." *Id.* Plaintiff's Complaint is devoid of any allegation that Defendant Leja was involved in the criminal proceeding in any way, let alone that he played a significant role in the prosecution. Absent any showing of commencing or continuing the prosecution, Plaintiff's malicious prosecution claim against Defendant Leja fails as a matter of law.

H.   Plaintiff's "Intentional Infliction of Emotional Distress" (IIED) claim (Count XIII) should be dismissed as untimely.

Illinois law mandates that any claims brought against public employees must be initiated within one year of the date the claim accrued. 745 ILCS 10/8-101(a); *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006); *Wrice*, 187 F.Supp.3d at 957; *Taylor v. City of Chicago*, 80 F.Supp.3d 817, 828 (N.D.Ill. 2015). It is firmly established that "a claim of intentional infliction of emotional distress in the course

of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013); *Evans*, 434 F.3d at 934; *Grayson v. City of Aurora*, 157 F.Supp.3d 725, 747 (N.D.Ill. 2016). Any notion that IIED is a "continuing tort" that "accrues anew every day" of an allegedly wrongful imprisonment, even if the conviction is eventually overturned, has been flatly rejected. *Bridewell*, 730 F.3d at 678; *Wrice*, 187 F.Supp.3d at 957; *Taylor*, 80 F.Supp.3d at 828.

The only allegations of misconduct – other than testimony during a judicial proceeding – are contained within a timeframe of December 27, 1989 through December 31, 1989. Under Illinois law, Plaintiff had until December 31, 1990 to  to initiate a civil action for that conduct. § 8-101. Plaintiff did not bring his claim until 2019, far beyond this period. As such, the claim is untimely and should be dismissed with prejudice.

I.  <u>Plaintiff cannot bring a § 1983 claim based on a failure to investigate theory of liability.</u>

Throughout his Complaint, Plaintiff includes assertions that attack the investigation conducted by the defendant officers, specifically that the investigation into Fernando Webb was inadequate. *See, e.g. Complaint* at ¶ 63. To the extent Plaintiff seeks to assert a § 1983 claim premised on the investigation, such a claim would be without merit as civilians do not have a constitutional right to have police investigate their case, much less to any particular level of satisfaction. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989); *Rossi v. City of Chicago*, 790 F.3d 729 (7th Cir. 2015).

J.  <u>Defendant Leja has absolute immunity for any court testimony.</u>

As discussed above, Plaintiff cannot maintain any § 1983 claim or a claim under Illinois that is based on Defendant Leja's testimony during the TIRC evidentiary hearing. *E.g. Rehberg*, 556 U.S. at 369; *Briscoe*, 460 U.S. at 341-45; *Curtis*, 48 F.3d at 285; *also Jurgensen*, 295 Ill.App.3d 139 (absolute immunity against civil liability under Illinois law).

### III.     Certain Claims Against The City Should Be Dismissed.

Plaintiff asserts a *Monell* claim against the City in Count X, in which Plaintiff realleges paragraphs 1 through 112 of the complaint as part of Count X.  Paragraphs 1 through 12 similarly form the basis for plaintiff's federal claims in Counts I through IX.  (Complaint, ¶182).  Count X therefore is dependent on the federal law claims asserted in Counts I through IX.  To the extent Counts I through IX, or portions thereof, are subject to dismissal, plaintiff's *Monell* claim against the City in Count X, to the extent based on those insufficient claims, should be dismissed as well.

To prevail on a §1983 claim against the City, a plaintiff must show:  1) a violation of his constitutional rights; 2) an injury; and 3) that the injury and violation of rights was directly caused by the City's own action or inaction that carried the requisite degree of fault.  *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S.Ct. 1382 (1997).  The United States Supreme Court recognized that §1983 liability cannot attach to a municipality in the absence of an actionable constitutional violation.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571 (1986) (If there is no violation of the plaintiff's constitutional rights by a police officer, "it is inconceivable" the municipality could be liable pursuant to a *Monell* claim).  Municipal liability for a constitutional injury under *Monell* "requires a finding that the individual officer is liable on the underlying substantive claim." *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000), *quoting Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998).  Where a plaintiff cannot establish a constitutional injury, he has no *Monell* claim against the municipality.  *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003). Without allegations sufficiently setting forth actionable constitutional violations in the §1983 counts, plaintiff's *Monell* claims based on those counts fail as a matter of law.  To the extent Counts I through IX of the complaint, or portions thereof, are dismissed as insufficient, plaintiff's *Monell* claim in Count X, to the extent based on those insufficient claims, should likewise be dismissed.

Plaintiff's complaint also asserts vicarious theories of recovery against the City in Count XIV *(respondeat superior)* and Count XV (indemnity statute). To the extent plaintiff's federal and/or state law claims are dismissed pursuant to this motion, there is no remaining basis to impose vicarious liability against the City through the dismissed counts. Section 2-109 of the Tort Immunity Act provides that a "local public entity is not liable for any injury resulting from an act or omission of its employee where the employee is not liable." (745 ILCS 10/2-109). Where a municipal employee is not liable by virtue of a common law defense or statutory immunity, the local unit of government for which that employee works enjoys similar protection by virtue of Section 2-109 of the Act. *See, e.g., Sank v. Poole*, 231 Ill. App. 3d 780, 596 N.E.2d 1198, 1203 (4th Dist. 1992). As set forth above by the individual defendants, multiple claims of plaintiff's complaint are untimely or otherwise improper and should be dismissed. To the extent those counts are dismissed against the individual defendants, there is no remaining basis to impose vicarious liability on the City pursuant to plaintiff's derivative *respondeat superior* and indemnification claims. The portions of Count XIV and Count XV seeking vicarious relief against the City pursuant to claims that are dismissed likewise should be dismissed.

<u>**CONCLUSION**</u>

For the reasons discussed above, Defendant Leja's motion to dismiss all claims against him should be granted in full. The primary reason is that Defendant Leja is not alleged to have been personally involved in any of the alleged misconduct. Not only that, but many of Plaintiff's claims are either not sufficiently factually supported or lack legal merit. In addition, Defendant City of Chicago respectfully requests that, to the extent any federal or state claims against Defendant Leja are dismissed, that the Court likewise dismiss any *Monell* claim premised on the dismissed federal claim and dismiss any vicarious liability theory premised on the dismissed state claim.

Respectfully submitted,

For Defendant Moser:
/s/ Shawn W. Barnett
Attorney No. 6312312

For Defendant City of Chicago:
/s/ Paul A. Michalik
Attorney No. 6198674

HALE & MONICO LLC
Andrew Hale
Barrett Boudreaux
Shawn W. Barnett
53 West Jackson, Suite 337
Chicago, IL 60604
(312) 870-6905

REITER BURNS LLP
Daniel Noland
Paul Michalik
Elizabeth Ekl
Katherine Morrison
Daniel Burns
311 South Wacker, Suite 5200
Chicago, IL 60606
(312) 982-0090

## Certificate of Service

I, the undersigned attorney, certify that I caused this motion to be filed with the Clerk of the Northern District of Illinois using the Court's electronic filing system. As a result, copies of the filed document were electronically served upon all counsel of record. A paper courtesy copy of the filed motion may have been provided to the Court depending upon the Court's standing order.

*/s/ Shawn W. Barnett*