IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES GIBSON, | ) | |
| | ) | Case No. 19 CV 4152 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Ellis |
| v. | ) | |
| | ) | Magistrate Judge Weisman |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CAESAR'S AND CITY OF CHICAGO'S
<u>PARTIAL MOTION TO DISMISS</u>**

Defendant Louis Caesar, through his attorneys Hale & Monico LLC, respectfully moves to partially dismiss Plaintiff James Gibson's claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant City of Chicago, though its attorneys Reiter Burns LLP, respectfully joins Defendant Caesar's motion to dismiss. In support, Defendant Caesar and Defendant City state:

**INTRODUCTION**

In December 1989, Plaintiff was arrested for a double homicide and subsequently convicted in October 1991. In 2019, the conviction was reversed and charges dismissed. Plaintiff now brings this lawsuit against any police officer involved in the initial investigation, regardless of their role and whether they are actually accused of fabricating evidence that was used against him in the criminal prosecution. All of Plaintiff's claims are directed against all of the defendants, whether or not there are factual allegations or legal theories to support such accusations. To that end, Defendant Caesar moves to dismiss the claims against him that have no sound legal basis, including counts based on misconduct that Defendant Caesar is not alleged to have been a participant.[1]

---

[1] Defendant Caesar moves to dismiss Counts IV, V, VI, VII, VIII, IX, XII, XI, and XIII in their entirety and Counts I, II, and III in part. Defendant City moves to dismiss Counts X (*Monell*), XIV (*Respondeat Superior*), and XV (Indemnification) to the extent these counts are dependent on any underlying claim against Defendant Caesar that is dismissed.

1

## FACTS AS ALLEGED IN COMPLAINT

In order to avoid redundancy and to promote judicial economy, Defendant Caesar adopts and incorporates the Facts as Alleged in the Complaint[2] recited in <u>Defendant Leja's Motion to Dismiss</u> (*Docket No. 45*) as though fully stated forth in this motion.

## LEGAL STANDARD

To overcome a Rule 12(b)(6) motion, "a complaint must state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014); *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). While courts accept the complaint's factual allegations as true and draws all permissible inferences in the plaintiff's favor, *id.*, the plaintiff "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under [Rule] 8." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). Legal conclusions and conclusory allegations are not entitled to this presumption of truth and the remaining factual allegations "must be enough to raise a right to relief above the speculative level." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

## ARGUMENT

### I. Plaintiff's "Coerced Confession" claim (Count I) should be partially dismissed.

In Count I, Plaintiff attempts to bring a "Coerced Confession" claim under 42 U.S.C. § 1983, claiming violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. *Complaint* at ¶¶ 113-123. Defendant Caesar moves to partially dismiss this claim.

As an initial matter, any "coerced confession" claim alleged to be brought pursuant to the First, Fourth, Sixth, or Eighth Amendment must be dismissed as a matter of law as no such cause of action

---

[2] Defendant Caesar relies on Plaintiff's well-pleaded allegations as the facts of the case for purposes of this motion only.

exists. *Napolitano v. Ward*, 457 F.2d 279, 282-83 (7th Cir. 1972) (Fifth Amendment prohibits an individual from being compelled to testify against themselves); *Chavez v. Martinez*, 538 U.S. 760, 773 (2003) (plurality opinion) (Fourteenth Amendment also prohibits coerced confession based on police misconduct). Plaintiff conceded as much by failing to respond to this exact argument in his Consolidated Response to the other defendant's motions to dismiss. *See Docket No. 64*. As a consequence, Plaintiff has forfeited any argument that his "coerced confession" claim is based on anything other than the Fifth or Fourteenth Amendments. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 n.1, 721 (7th Cir. 2011) (forfeiture occurs where the "litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2006) (failure to offer any opposition to argument constituted a waiver; *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) ("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.").

Additionally, the Fifth Amendment prohibits only the use of a compelled statement against the individual in a criminal proceeding. *Chavez*, 538 U.S. at 773. The Fifth Amendment *does not* prohibit the use of unreasonable force – *i.e.* "torture" – to extract the confession itself. *Id.* On the contrary, a law enforcement officer's use of force is governed by the Fourth Amendment, *Graham v. Connor*, 490 U.S. 386, 394-95 (1989), and a legal cause of action on that use of force accrues immediately. *See Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010). In Illinois, § 1983 claims are subject to a two-year statute of limitation. *Wallace v. Kato*, 549 U.S. 384 (2007). To that end, Plaintiff cannot bring any civil claim based on the alleged "torture" that occurred in December 1989, including his allegation that a clothes iron was used to burn off a tattoo, because any claim is time-barred. *E.g. Wrice v. Burge*, 187 F.Supp.3d 939, 953 (N.D.Ill. 2015) (claim of "torture and physical abuse" under the Fourth Amendment untimely when filed outside two-year statute of limitations and subject to dismissal). In short, the only claim

3

Plaintiff may bring is that his allegedly compelled statement was used against him in a subsequent criminal proceeding in violation of his Fifth and Fourteenth Amendment rights.

Defendant Caesar's argument to dismiss any claim based on the physical force allegedly used against Plaintiff in December 1989 is similar to those made by Defendants Leja, Rusnak, Breska, and Moser in their respective motions to dismiss. *See Docket Nos..45, 47,* and *49.* In his Consolidated Response, Plaintiff asserts that his "coerced confession" claim (Count I) is timely as *Heck v. Humphrey*[3] delayed the accrual date until his conviction was overturned. *Plaintiff's Consolidated Response* (*Docket No. 64*) at 7. While this may be true for his Fifth Amendment claim, such an argument is misplaced as to any Fourth Amendment claim because a claim for the use of unreasonable force is not delayed by *Heck*. *Wrice*, 187 F.Supp.3d at 953. Plaintiff made no argument that any claim based on the use of physical force to extract the confession would be timely. In other words, he implicitly conceded that any such claim would be time- barred and subject to dismissal. *Bonte*, 624 F.3d at 466. Accordingly, the Court should grant Defendant Caesar's motion to dismiss.

**II. Plaintiff's "Due Process" claim (Count III) should be partially dismissed as to Defendant Caesar due to the lack of personal involvement in the alleged misconduct.**

In Count III of his Complaint, Plaintiff asserts a claim under the "Due Process Clause" of the Fourteenth Amendment, claiming that Defendant Officers "deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence[.]" *Complaint* at ¶¶ 131-138. Initially, Plaintiff failed to identify which "exculpatory evidence" was withheld or which "false reports" were fabricated. In his Consolidated Response, Plaintiff abandoned all bases for his "due process" claim save for three: (1) the withholding of the line-ups in which he claims to have been part; (2) the threats and coercion used to gain the testimony of Janice Johnson, Carla Smith, and Fernando Webb; and (3)

---

[3] 512 U.S. 477 (1994).

the failure to disclose the "pattern and practice of abuse" to witnesses. *Plaintiff's Consolidated Response* at 9. Even with Plaintiff's narrowing of the claim, partial dismissal is still warranted.

In order to be held liable for a claim under 42 U.S.C. § 1983, an individual must be accused of having been personally involved in the unconstitutional act. *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). If not, then the claims against that individual defendant must be dismissed. *Id.*; *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Defendant Caesar was not alleged to have been personally involved in the three line-ups at issue. *Complaint* at ¶ 29. As such, Defendant Caesar cannot be held liable for the alleged misconduct relating to those line-ups. Similarly fatal to Plaintiff's claim is that Defendant Caesar is not alleged to have knowledge of the line-ups and, as a result, cannot be deemed to have intentionally withheld information in violation of *Brady v. Maryland*. 373 U.S. 83 (1963).

Further, Plaintiff's claim that the alleged non-disclosure of a "pattern and practice of abuse" of witnesses violated *Brady* should not persuade the Court that Plaintiff can maintain a claim in this litigation. *Brady* mandates the disclosure of exculpatory evidence – including impeaching evidence – to a criminal defendant prior to trial to be used by the criminal defendant in his case. *United States v. Bagley*, 473 U.S. 667, 676 (1985). "Exculpatory evidence" is "evidence tending to establish a criminal defendant's innocence" while "impeachment evidence" is "evidence used to undermine a witness's credibility." *Garcia v. Hudak*, 156 F.Supp.3d 907, 915 (N.D.Ill. 2016). Plaintiff asserts that he knew the testimony of Janice Johnson, Carla Smith, and Fernando Webb was false because Plaintiff never had the conversations those witnesses claimed to have overheard; as such, Plaintiff was able to attack their credibility and their motivation for their testimony. How officers treated witnesses other than Janice, Carla, and Fernando in criminal investigations for crimes other than the Benjamin/Wash homicides is simply not relevant to Plaintiff's own criminal proceeding and would not have undermined those witness's credibility. So, while Plaintiff may bring a "Due Process" claim based on the alleged fabrication of those witness's statements, the Court should not expand *Brady* to include non-relevant

5

conduct in different criminal investigations, particularly not against Defendant Caesar, who was not involved in Plaintiff's criminal proceeding.

### III. Plaintiff's "False Imprisonment" claim (Count VI) is untimely and should be dismissed with prejudice.

Plaintiff's Count IV purports to be a "false imprisonment" claim under § 1983 for "false imprisonment for thirty (30) years" in violation of his constitutional rights. *Complaint* at ¶¶139-144. The Fourth Amendment prohibits all pre-trial detention based on fabricated evidence. *Manuel v. City of Joliet*, 137 S.Ct. 911 (2017) ("*Manuel I*"). The Seventh Circuit determined that a Fourth Amendment pre-trial unreasonable detention claim accrues when the individual is released from pre-trial custody. *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018) ("*Manuel II*"). In so holding, the Seventh Circuit squarely rejected the notion that such a claim accrues when the criminal charges were dismissed or the criminal defendant was found not guilty. *Id.* at 669. This was adamantly clarified in *Mitchell v. City of Elgin* as "a Fourth Amendment claim for unlawful pretrial detention accrues when the detention ends, not when the prosecution ends." 912 F.3d 1012, 1015 (7th Cir. 2019) (describing *Manuel II*'s holding). That is because "there is no such thing as a constitutional right not to be prosecuted without probable cause." *Manuel II*, 903 F.3d at 670. These cases have firmly established the constitutional principles that the Fourth Amendment prohibits unreasonable pre-trial detention based on false evidence while the Fourteenth Amendment prohibits a conviction based on fabricated evidence. *Knox v. Curtis*, 771 Fed.Appx. 656 (7th Cir. 2019). In other words, an individual's Fourth Amendment claim premised on fabricated evidence accrues when the person is released from custody or **when he was convicted**. *Id.* at *658. Thus, Plaintiff's Fourth Amendment claim is untimely.

It cannot be reasonably argued that Plaintiff can bring a claim for his detention from December 27 through 30, 1989. Any Fourth Amendment claim accrued when he was released from custody on December 30, 1989 and any lawsuit must have been initiated within two years. *Wallace v. Kato*, 549 U.S.

384, 387-88 (2007). Likewise, under *Manuel II*, as explained by *Knox*, any Fourth Amendment claim Plaintiff may have had from the date of his arrest (December 31, 1989) until his conviction (October 8, 1991) accrued on the date he was convicted. *Knox*, 771 Fed.Appx. at 658. To that end, he had until October 8, 1993 to initiate a lawsuit based on that pre-trial detention. *Id.*; *see also Mayo v. LaSalle County*, No. 18 CV 1342, 2019 WL 3202809 (N.D.Ill. July 15, 2019) (Tharp, J.). Since Plaintiff did not initiate this present litigation until 2019, his Fourth Amendment claims are barred by the statute of limitations.

Recently, Chief Judge Pallmeyer was confronted with a nearly identical situation in *Brown v. City of Chicago*. No. 18 C 7064, 2019 WL 4958214, at *3 (N.D.Ill. Oct. 8, 2019) (Pallmeyer, CJ). In *Brown*, the plaintiff was convicted in 1990 for arson, convicted against in 2008 following a new trial being granted, and then finally having the charges dropped in 2017 after the 2008 conviction was vacated. *Id.* at *1. In 2018, the plaintiff then brought a *Manuel* pre-trial detention claim based on the time he spent in custody prior to his convictions, *id.*, and the defendants moved to dismiss on statute of limitations grounds. The court agreed with the defendants and reasoned that "[w]hile the Seventh Circuit in *Manuel II* held that a claim for pretrial detention without probable cause begins to accrue when the pretrial detention ends, *Knox* clarified that pretrial detention can be considered as ending upon conviction." *Id.* (citations omitted). Accordingly, the court dismissed the claim the plaintiff had titled "federal malicious prosecution." *Id.* at *3. More importantly, the court held that "any unlawful pretrial detention claim that Plaintiff might have asserted would be time-barred under Seventh Circuit precedent holding that such a claim is not subject to the delayed accrual rule from *Heck*." *Id.* (citing *Knox*, 771 Fed. Appx. 658-59). The court further rejected the notion that *McDonough v. Smith*, 139 S.Ct. 2149 (2019), rescued the claim as *McDonough* was grounded in concern for "avoiding collateral attacks on criminal judgments through civil litigation" while a Fourth Amendment claim is no such attack. *Id.*

Given this precedent, the court found that any Fourth Amendment pretrial detention claim accrued when the plaintiff was convicted in 1990 and 2008 (with the statute of limitations expiring in

7

1992 and 2010 respectively) and that his claims brought in 2018 following the charges being dropped were time-barred. *Id.*

The Court should embrace the reasoning by Chief Judge Pallmeyer and find that Plaintiff's Fourth Amendment pretrial detention claim accrued in October 1991 when he was convicted and, by not initiating his claim until 2019, Plaintiff's claim is untimely and should be dismissed with prejudice.

**IV. Plaintiff's "Equal Protection" claim (Count V) should be dismissed with prejudice.**

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "most typically reaches state action that treats a person poorly because of the persons' race or other suspect classification, such as sex, national origin, religion, political affiliation, among others, or because the person has exercised a 'fundamental right.'" *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010). To establish a prima facie case of discrimination under the Equal Protection Clause, the plaintiff must show that "he is a member of a protected class, and that he was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). He must also allege that the defendant was "motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). While courts must take factual allegations as true when weighing a motion to dismiss, that presumption of truth does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.* Here, Plaintiff does nothing more than simply recite the elements of an Equal Protection claim without provided any factual allegations to support it. *Complaint* at ¶¶ 146-147. As such, the Equal Protection claim should be dismissed.

**V. Plaintiff's "Right to Counsel" claim (Count VI) should be dismissed with prejudice.**

In Count VI, Plaintiff asserts that his "right to counsel" was violated. *Complaint* at ¶¶ 153-158. It is black letter law that the Sixth Amendment's right to counsel does not attach until "at or after the

8

initiation of adversary criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Stadfeld*, 689 F.3d 705, 711 (7th Cir. 2012) (citation and quotation marks omitted); *see also Rothgery v. Gillespie Cnty., Rex.*, 554 U.S. 191, 213 (2008). This extends to pre-indictment interviews with law enforcement, *United States v. Thomas*, 39 F.Supp.3d 1015, 1021-22 (N.D.Ill. 2014), and pre-indictment lineups. *United States v. Larkin*, 978 F.2d 964, 969 (7th Cir. 1992); *US ex rel Wilson v. Peters*, 60 F.Supp.2d 777 (N.D.Ill. 1999); *Jerricks v. Bresnahan*, 880 F.Supp. 521 (N.D.Ill. 1995). There are no allegations of misconduct occurring subsequent to Plaintiff's arrest, other than allegedly perjured testimony (which cannot form the basis of civil liability). *E.g. Rehberg v. Paulk*, 556 U.S. 356, 369 (2012); *Briscoe v. LaHue*, 460 U.S. 325, 341-45 (1983); *Curtis v. Membenek*, 48 F.3d 281, 285 (7th Cir. 1995); *see also Jurgensen v. Haslinger*, 295 Ill.App.3d 139 (1998) (absolute immunity against civil liability under Illinois law). Or, in other words, the misconduct occurred prior to the initiation of Plaintiff's criminal proceedings. To that end, Plaintiff's "right to counsel" claim lacks any factual or legal merit and should be dismissed with prejudice.

In his Consolidated Response, Plaintiff attempts to inject a new theory into his Complaint, by stating that his Fifth Amendment rights were violated during his time in custody, presumably from December 27-30, 1989. *Plaintiff's Consolidated Response* at 13. It is not clear whether Plaintiff bases his new theory on a failure to receive *Miranda* warnings or not having an attorney present during the questioning. Either way, Plaintiff's arguments are not legally sound and the claim should be dismissed.

To proceeding on a constitutional claim pursuant to § 1983, a plaintiff must allege that he was deprived of a constitutional right. Failure to issue *Miranda* warnings concerns the Fifth Amendment right against self-incrimination. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1024 (7th Cir. 2006). A failure to issue *Miranda* warnings implicates only the right against self-incrimination, and does not create a constitutional right to receive the warnings themselves. *Id*. Likewise, the right to counsel

created by *Edwards v. Arizona*[4] is not the source of a stand-alone constitutional claim, because the right to counsel is "derived from the holding of *Miranda*." *Uhde v. Adams Cnty., Wisc. Sheriff's Off.*, 2003 WL 23142254, at *6 (W.D. Wis. July 22, 2003). In other words, the failure to provide counsel does not create a cause of action under Section 1983 unless the plaintiff demonstrates that the statements he made to defendants without an attorney being present were used against him in a criminal case. *See Sornberger*, 434 F.3d at 1023-24.

Plaintiff already has a Fifth Amendment claim based on the allegedly compelled statements being used against in the criminal proceeding. *See* Count I. The failure to provide an attorney to prevent the compelling of the statements is not an independent cause of action because the right to counsel is a prophylactic rule designed to safe-guard the right against self-incrimination. *Id.* As such, Plaintiff's right to counsel claim should be dismissed with prejudice.

## VI. Plaintiff's "Denial of Access to the Courts" claim (Count IX) should be dismissed.

The First and Fourteenth Amendments provide an individual with a right to pursue legal redress for claims which have a reasonable basis in law and fact. *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995). To prove a violation of this right, a plaintiff must show (1) that a state action frustrated his efforts to pursue a non-frivolous claim and (2) he suffered an actual, concrete injury as a result. *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000). A denial of access to the courts arises only where an alleged cover-up is to some extent successful. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000) ("[A]n attempt to cover up police wrongdoing which succeeded only briefly in hiding the facts from the plaintiffs, and which ultimately neither prevented the plaintiffs from pursing relief nor reduced the value of their claim, was not actionable under Section 1983."). Here, Plaintiff merely asserts the conclusory statement that he has been deprived of "certain constitutional claims against

---

[4] 451 U.S. 477 (1981).

certain potential defendants" but fails to identify which claims and which Defendants. *Complaint* at ¶ 178. A similar situation occurred in *Hobbs v. Cappelluti*, 899 F.Supp.2d 738 (N.D.Ill. 2012). In *Hobbs*, an exonerated prisoner failed to identify how his ability to bring the present lawsuit was deprived or diminished by officers involved in the investigation that led to his conviction. *Id.* at 775. As a consequence, the plaintiff's denial of access to the courts claim was dismissed. *Id.* So too here does Plaintiff fail to identify the concrete injury with any specificity. More than that, other than the conclusory Paragraph 178 – which is not entitled to the presumption of truth – Plaintiff did not assert that any of the defendants were involved in any denial of access to the courts. Accordingly, the Court should dismiss this claim with prejudice.

**VII.    Plaintiff's "Failure to Intervene" claim (Count II) should be partially dismissed as to Defendant Caesar.**

Although § 1983 has a personal involvement requirement, an individual can be held liable for a failure to act to prevent misconduct. *E.g. Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). However, this exception is limited and requires a plaintiff show that the defendant (1) had knowledge of the misconduct and (2) had a realistic opportunity to prevent the misconduct. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). In Count II, Plaintiff claims that all defendants knew of the physical violence inflicted upon him and failed to prevent it. Such a claim is subject to the same two-year statute of limitations as the excessive force claim and is therefore untimely. *Wallace*, 549 U.S. at 387-88.

Plaintiff also cannot pursue a failure to intervene claim against Defendant Casar based on accusations of misconduct that Defendant Caesar is alleged to have personally committed. *E.g. Yang*, 37 F.3d at 285 (failure to intervene theory viable only if defendants fails to prevent *another* officer from committing misconduct). Given that Plaintiff asserts Defendant Caesar was personally involved in compelling the statement and the fabrication statements, Plaintiff cannot bring a failure to intervene claim against Defendant Caesar for the same misconduct.

Similarly, Plaintiff cannot bring a failure to intervene claim if the underlying constitutional violation is not viable. *See Fillmore v. Page*, 358 F.3d 496, 505-06 (7th Cir. 2004); *Harper v. Albert*, 400 F.3d 1052, 1066 n.18 (7th Cir. 2005). Accordingly, should the Court dismiss any of Plaintiff's § 1983 claims, any corresponding failure to intervene claim so likewise be dismissed.

## VIII. Plaintiff's "Intentional Infliction of Emotional Distress" (IIED) claim (Count XIII) should be dismissed with prejudice.

Illinois law mandates that any claims brought against public employees must be initiated within one year of the date the claim accrued. 745 ILCS 10/8-101(a); *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006); *Wrice*, 187 F.Supp.3d at 957; *Taylor v. City of Chicago*, 80 F.Supp.3d 817, 828 (N.D.Ill. 2015). It is firmly established that "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013); *Evans*, 434 F.3d at 934; *Grayson v. City of Aurora*, 157 F.Supp.3d 725, 747 (N.D.Ill. 2016). Any notion that IIED is a "continuing tort" that "accrues anew every day" of an allegedly wrongful imprisonment, even if the conviction is eventually overturned, has been flatly rejected. *Bridewell*, 730 F.3d at 678; *Wrice*, 187 F.Supp.3d at 957; *Taylor*, 80 F.Supp.3d at 828.

Any allegations based upon Defendant Caesar's actions from December 27, 1989 through December 31, 1989 are untimely as the claim must have been brought within one year. § 10/8-101. Plaintiff did not bring his claim until 2019, far beyond this period. In addition, Plaintiff cannot base any claim on Defendant Caesar's testimony during the TIRC hearing, as absolute immunity covers all witnesses who testify during a court proceeding. *E.g. Rehberg v. Paulk*, 556 U.S. 356, 369 (2012); *Briscoe v. LaHue*, 460 U.S. 325, 341-45 (1983); *Curtis v. Membenek*, 48 F.3d 281, 285 (7th Cir. 1995); *also Jurgensen v. Haslinger*, 295 Ill.App.3d 139 (1998) (absolute immunity against civil liability under Illinois law). As such, the claim is untimely and should be dismissed with prejudice.

**IX.** **Plaintiff's "Conspiracy" claims (Counts VII, VIII, and XII) should be dismissed as they are far too speculative to state a viable claim.**

Federal Rule of Civil Procedure 8 requires that a plaintiff give "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to meet this standard, the plaintiff must have well-pleaded, nonconclusory factual allegations that "give rise to a plausible suggestion of conspiracy." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). However, even before *Twombly* and *Iqbal*, "conspiracy allegations were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

Here, Plaintiff makes assertions that all the defendants entered into a conspiracy to torture him and that they took actions in furtherance of the conspiracy. *Complaint* at ¶¶ 29, 160-76. These statements are nothing more than a formulaic recitation of the elements of a conspiracy claim, which are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681. Removing the conclusory statements leaves the Complaint absent of any factual support that would raise the conspiracy accusations above a "speculative level." *Twombly*, 550 U.S. at 555. In other words, Plaintiff merely relies on a suspicion that everyone adverse to him was part of a wide-ranging conspiracy to frame him – a speculation devoid of realistic support. *Cooney*, 583 F.3d at 971. For that reason, all three of Plaintiff's conspiracy claims fail as all three lack sufficient factual support and all three counts should be dismissed.

**X.** **Plaintiff cannot bring a § 1983 claim based on a failure to investigate theory of liability or for Defendant Caesar's testimony during the TIRC hearing.**

Throughout his Complaint, Plaintiff includes assertions that attack the investigation conducted by the defendant officers, specifically that the investigation into Webb was inadequate. *See, e.g. Complaint* at ¶ 63. To the extent Plaintiff seeks to assert a § 1983 claim premised on the investigation, such a claim would be without merit as civilians do not have a constitutional right to have police investigate

their case, much less to any particular level of satisfaction. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989); *Rossi v. City of Chicago*, 790 F.3d 729 (7th Cir. 2015); *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012) ("There is no affirmative duty on police to investigate.").

Likewise, Plaintiff cannot maintain any § 1983 claim or a claim under Illinois that is based on Defendant Caesar's testimony during the TIRC evidentiary hearing. *E.g. Rehberg*, 556 U.S. at 369; *Briscoe*, 460 U.S. at 341-45; *Curtis*, 48 F.3d at 285; *also Jurgensen*, 295 Ill.App.3d 139 (absolute immunity against civil liability under Illinois law).

**XI.     Certain claims against the City should be dismissed.**

Plaintiff asserts a *Monell* claim against the City in Count X, in which Plaintiff realleges paragraphs 1 through 112 of the complaint as part of Count X. Paragraphs 1 through 112 similarly form the basis for plaintiff's federal claims in Counts I through IX. (Complaint, ¶182). Count X therefore is dependent on the federal law claims asserted in Counts I through IX. To the extent Counts I through IX, or portions thereof, are subject to dismissal, Plaintiff's *Monell* claim against the City in Count X, to the extent based on those insufficient claims, should be dismissed as well.

To prevail on a §1983 claim against the City, a plaintiff must show: 1) a violation of his constitutional rights; 2) an injury; and 3) that the injury and violation of rights was directly caused by the City's own action or inaction that carried the requisite degree of fault. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S.Ct. 1382 (1997). The Supreme Court recognized that §1983 liability cannot attach to a municipality in the absence of an actionable constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571 (1986) (If there is no violation of the plaintiff's constitutional rights by a police officer, "it is inconceivable" the municipality could be liable pursuant to a *Monell* claim). Municipal liability for a constitutional injury under *Monell* "requires a finding that the individual officer is liable on the underlying substantive claim." *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000), *quoting Tesch v. County of Green Lake*, 157 F.3d 465, 477

(7th Cir. 1998). Where a plaintiff cannot establish a constitutional injury, he has no *Monell* claim against the municipality. *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003). Without allegations sufficiently setting forth actionable constitutional violations in the §1983 counts, plaintiff's *Monell* claims based on those counts fail as a matter of law. To the extent Counts I through IX of the Complaint, or portions thereof, are dismissed as insufficient, Plaintiff's *Monell* claim in Count X, to the extent based on those insufficient claims, should likewise be dismissed.

Plaintiff's complaint also asserts vicarious theories of recovery against the City in Count XIV *(respondeat superior)* and Count XV (indemnity statute). To the extent plaintiff's federal and/or state law claims are dismissed pursuant to this motion, there is no remaining basis to impose vicarious liability against the City through the dismissed counts. Section 2-109 of the Tort Immunity Act provides that a "local public entity is not liable for any injury resulting from an act or omission of its employee where the employee is not liable." (745 ILCS 10/2-109). Where a municipal employee is not liable by virtue of a common law defense or statutory immunity, the local unit of government for which that employee works enjoys similar protection by virtue of Section 2-109 of the Act. *See, e.g.*, *Sank v. Poole*, 231 Ill. App. 3d 780, 596 N.E.2d 1198, 1203 (4th Dist. 1992). As set forth above by the individual defendants, multiple claims of plaintiff's complaint are untimely or otherwise improper and should be dismissed. To the extent those counts are dismissed against the individual defendants, there is no remaining basis to impose vicarious liability on the City pursuant to plaintiff's derivative *respondeat superior* and indemnification claims. The portions of Count XIV and Count XV seeking vicarious relief against the City pursuant to claims that are dismissed likewise should be dismissed.

## CONCLUSION

For the reasons discussed above, Defendant Caesar respectfully requests the Court to grant his motion and to dismiss Counts IV, V, VI, VII, VIII, IX, XII, and XIII in their entirety and Counts I,

II, III, and XI in part. In addition, Defendant City of Chicago respectfully requests that, to the extent any federal or state claims against Defendant Caesar are dismissed, that the Court likewise dismiss any *Monell* claim premised on the dismissed federal claims and dismiss any vicarious liability claim premised on the dismissed federal or state claims.

                                                         Respectfully submitted,

                                                         For Defendant Caesar:
                                                         <u>/s/ *Shawn W. Barnett*</u>
                                                         Attorney No. 6312312

                                                         For Defendant City of Chicago:
                                                         <u>/s/*Paul A. Michalik*</u>
                                                         <u>Attorney No. 6198674</u>

HALE & MONICO LLC
Andrew Hale
Barrett Boudreaux
Shawn W. Barnett
53 West Jackson, Suite 337
Chicago, IL 60604
(312) 870-6905

REITER BURNS LLP
Daniel Noland
Paul Michalik
Elizabeth Ekl
Katherine Morrison
Daniel Burns
311 South Wacker, Suite 5200
Chicago, IL 60606
(312) 982-0090

**Certificate of Service**

I, the undersigned attorney, certify that I caused this motion to be filed with the Clerk of the Northern District of Illinois using the Court's electronic filing system. As a result, copies of the filed document were electronically served upon all counsel of record. A paper courtesy copy of the filed motion may have been provided to the Court depending upon the Court's standing order.

*/s/ Shawn W. Barnett*