IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES GIBSON, | ) |
| | ) |
| *Plaintiff* | ) |
| | ) No. 19 CV 4152 |
| *-vs-* | ) |
| | ) Honorable Judge Ellis |
| CITY OF CHICAGO, *et al.* | ) |
| | ) |
| *Defendants* | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS CAESAR'S
AND CITY OF CHICAGO'S
<u>MOTION TO DISMISS</u>**

<u>Introduction</u>

On December 27, 1989, detectives working under the command of Jon Burge were desperate to solve a double murder that had occurred five days prior. Without any physical evidence or eyewitness to the crime, detectives arrested plaintiff James Gibson and kept him at then Area 3 police department for several days. During his time in custody James told the defendant officers that he was innocent. After placing him in three lineups, no witness identified James as the shooter. At that point, the defendant officers began to demand that James implicate himself in the murders. When James continued to profess his innocence, defendant officers began to slap, punch, kick, burn and threaten James to the point that James relented and a gave into the detectives' demands to give them a false statement that implicated himself. That statement formed the basis of their case against him. James was eventually charged and convicted of two murders. Almost thirty (30) years later, the Appellate Court of the First District of Illinois found that his confession was a product of torture and vacated his conviction and ordered him remanded to the circuit court for a new trial. A month later, all charges were dropped against Plaintiff. Plaintiff now brings federal and state claims in this lawsuit, seeking a remedy for his wrongful conviction and coerced confession. Defendants have moved to dismiss plaintiff's complaint. This Court should deny their motion.

1

## Factual Background

To promote judicial economy, the section titled *Factual Background* in Plaintiff's Consolidated Response to Defendants Maslanka's, Paladinos's, Byrne's, Leja's, Rusnak's, Breska's, Moser's, and the City of Chicago's Motion to Dismiss (Consolidated Response) are incorporated herein by reference.

## Legal Standard

Claims filed in federal court are governed by Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant has "fair notice." Fed. R. Civ. Pro. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a 12(b)(6) motion to dismiss, a complaint need only state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a Complaint under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pled facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Rule 12(b)(6) "doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

## I. Plaintiff pleads a Viable Coerced Confession Claim (Count I)

A. Count I should not be dismissed for including language alluding to the First, Fourth, Sixth and Eighth Amendment.

Defendants proposes that Count I of Plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) based on the language in the complaint pointing to violations of the First, Fourth, Sixth and Eighth Amendment. Defendant goes on to argue that a coerced confession claim can only proceed under Fifth and Fourteenth Amendment violation theory. It appears that Defendant's argues that if a claim is filed under 42 U.S.C. §1983, it must point to the precise legal theory under which it is proposed or else be dismissed pursuant to Rule 12(b)(6). This argument is in direct contradiction of the requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a) only requires that a complaint must identify the basis of jurisdiction and contain a short and plain statement of the claim showing that the pleader is entitled to relief.

Plaintiff's complaint follows the Seventh Circuit's admonition in *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073 (7th Cir. 1992) that, "while it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. To the contrary, the rules discourage it." *Id.* at 1078. Plaintiff's complaint also follows the teachings of the Seventh Circuit that a complaint need not pled legal theories. *See, e.g. Title Industry Assurance Co. v. First American Title Insurance Co.*, 853 F.3d 876, 880 (7th Cir. 2017). To be clear, a complaint need not identify a legal theory, and specifying an incorrect theory is not fatal. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992). As such, defendant proposes an additional requirement of the pleadings that is not recognized by law. Pleading a legal theory that defendant may not agree with is not a basis to dismiss Count I of plaintiff's complaint. Count I of the complaint incorporates paragraphs 1 through 112. Upon reading these incorporated paragraphs it is clear that several Constitutionally protected rights of plaintiff were violated by officers acting under the color of law. In fact, defendant concedes that plaintiff pleads viable claims under the Fifth and Fourteenth Amendments. Any superfluous language included in the drafting of Count I should not render the entire Count I dismissed pursuant to Rule 12(b)(6).

B. Count I pleads facts that are legally sufficient to state a Fifth Amendment claim.

Defendant goes on to argue that despite conceding that Plaintiff's Fifth and Fourteenth

Amendment claims are legally viable plaintiff has not pled facts sufficient to establish that he was coerced to give a self-incriminating statement. This argument is wholly without merit. The law is clear that compelled statements used in a criminal case against the author of those statements runs afoul of the Self-Incrimination clause of the Fifth Amendment. *Wrice V. Burge*, 187 F. Supp. 3d 939 at 954(7[th]Cir. 2015). Here, plaintiff has abundantly pled coercion to gain is confession. Plaintiff states that he was handcuffed to a chair overnight without any sleep, food, drink or washroom. *Complaint at ¶ 28*. Plaintiff goes on to plead that he was slapped, punched, kicked and threatened to have him give a self-incriminating statement. *Complaint at ¶ 30*. According to the facts pled in plaintiff's complaint, this abuse continues until he makes a self- incriminating statement in order to end the torture at the hands of defendant officers. Plaintiff also pleads facts sufficient to support the second element according to *Wrice*. The statement that was beat out of Gibson was used against him at his trial. In fact, while handing down plaintiff's conviction, the trial judge specifically stated that he relied on plaintiff's confession as it was of "extreme importance" in his finding. *Complaint at ¶77*. It is well established that Plaintiff was coerced, by torture, to give a self-incriminating statement.

Defendant Caesar's argument attempts to excise the facts that establish the coercion element from Gibson's coerced confession claim by misinterpreting the principals announce in *Chavez v. Martinez*, 538 U.S. 760. In *Chavez*, the defendant officer interrogated the plaintiff without reading *Miranda* for 10 minutes while the plaintiff was receiving medical attention. The plaintiff gave incriminating statements; however, he was never charged nor were his statements used against him in a criminal proceeding. *Chavez*, 538 U.S. 760 at 764. The Court dismissed the plaintiff's claim of Fifth and Fourteenth Amendment violations, pointing out that the defendant officer's manner of interrogation and that fact that the plaintiff was never charged, the plaintiff's constitutional rights were not violated. *Chavez* is wholly distinguishable from the facts pled here and therefore erroneously relied on by Caesar. Here, the torture that is described in Gibson's complaint shocks the conscious. Also, unlike *Chavez*, Gibson's coerced confession was not then locked away in the defendant officers' desk drawer but was actually used to secure his charges and conviction. Therefore, contrary to defendant's argument, Gibson's torture is a necessary part of his coerced confession claim.

C. Count I should not be dismissed as untimely,

The Statute of Limitations of claims brought under §1983 typically run after two years.

4

Defendant assert that that time began to accrue the instant plaintiff's constitutional rights were violated. Here, the violation consists of an involuntary confession gained through police torture. That coerced confession was later the central evidence relied upon to convict plaintiff. *Complaint at ¶ 77*. As stated in *Wrice*:

> Once the state obtained a conviction against Wrice using his allegedly coerced confession, *Heck v. Humphrey*, 512 U. S. 477 (1994) barred him from asserting a Fifth Amendment claim until his state conviction had been set aside. The *Heck* bar applied because any claim that Wrice's confession was coerced would have "necessarily" implied the invalidity of his conviction." Where the plaintiff's conviction rested largely upon an allegedly coerced confession, a coercive interrogation claim necessarily impugns the validity of the conviction. *Wrice, at 953-954.*

Applying the principle announced in *Wrice*, plaintiff was barred by *Heck* from filing his claim until after his conviction was overturned on March 13, 2019. Gibson filed his complaint on May 10, 2019 in the Circuit Court of Cook County. Therefore, Gibson's coerced confession claim is timely.

## II.  Plaintiff's Due Process Claim Is Legally Viable

A.  Plaintiff has pled sufficient facts to support a claim of a violation to his Due Process Rights under *Brady.*

Caesar argues that Count III is void of any facts that would support a claim of Due Process violation as it relates to *Brady*. *Brady v. Maryland*, 373 U.S. 83 (1963) requires the disclosure of all exculpatory evidence to a criminal defendant. Courts have held that there are three components to a *Brady* violation. "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued." *Tillman v. Burge*, 813 F. Supp. 2d 946 at 960. Count III incorporates facts pled in paragraphs 1 through 112. *Complaint ¶131*. As such, contrary to defendant's argument, sufficient facts are pled to establish that favorable evidence against plaintiff was withheld by the government. Defendant attempts to define plaintiff's claim of fabricated evidence into only three categories, (1) Plaintiff's torture and coerced statement, (2) Johnson's false statement and abuse, and (3) false statements by Webb, Carla, and Janice. However, upon reading Count III of plaintiff's complaint, it is evident that defendant officers are also liable for withholding evidence. The evidence that plaintiff asserts that was deliberately withheld is

detailed in paragraph 71 of the complaint quoting the prosecutor as he responded to the trial court regarding plaintiff's motion to suppress,

> "The fact of the matter is that no evidence was obtained as a result of arresting him. There were no statements, no line-ups, no physical evidence found by the defendant, or off his person which your honor could possibly suppress." *Complaint at ¶71.*

In essence, when plaintiff sought to suppress the lineups that he was placed in and the coerced statement he gave, the prosecutor responded by telling the trial judge that there was no lineup or statement. As pled in the complaint, it is likely that the prosecutor was not aware of the negative lineups since defendant officers never documented them in any report. *Complaint at ¶64.* By not tendering any information regarding the lineups where three witnesses failed to identify plaintiff as even being involved in the murders, the defendant officers deprived plaintiff of exculpatory evidence.

Defendant next argues that the complaint does not contain sufficient allegations of wrongdoing by him, thus entitling him to dismissal. This argument is without merit. Specifically, Caesar argues that it is not established that he participated in or knew of the lineups that failed to identify Gibson as the perpetrator. *Caesar's Motion to Dismiss at p. 5.* However, this argument ignores the portion of the complaint that names him as a co-conspirator with the other defendants' who pursued the common goal of framing Gibson for the murders. *Complaint at ¶ 29.*

Caesar's argument overlooks "the potential tension between § 1983's individual-responsibility requirement and factual scenarios of the kind present here." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). In *Colbert*, the Seventh Circuit confronted a situation where the plaintiff knew that some of the ten officers who searched his house had caused property damage, but he did not know which ones caused the damage because, for safety reasons, he had been removed from the search area. *Id.* This case is similar: based on the reports prepared by the officers, plaintiff knows the identity of all the officers who had some involvement in fabricating the false stories, creating the reports, and communicating the false stories to prosecutors. But plaintiff does not know which particular officer did what. At this stage, plaintiff's claim should be sustained so that further discovery may parse out Caesar's involvement in the undisclosed lineups given that it is pled that Caesar was present during Gibson's detention and a member of the "Midnight Crew".

Moreover, plaintiff's complaint follows the teaching of *Colbert* by including allegations that are unaffected by his inability to describe exactly what each officer did to violate *Brady*. In accordance with *Colbert*, 851 F.3d at 657, plaintiff has alleged that the officers engaged in conspiracies of silence. *Complaint at ¶¶95-98 and 132* And, as suggested by *Richman v. Sheahan*,

512 F.3d 876, 885 (7th Cir. 2008), plaintiff has alleged that that the officers who did not create the false reports or communicate the false story failed to intervene to prevent these violations of plaintiff's constitutional rights. The Seventh Circuit has repeatedly held that such allegations are sufficient to survive a motion to dismiss. *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) (finding a complaint alleging that all members of a group of defendants engaged in misconduct unobjectionable); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (holding that a prisoner's statement that he repeatedly alerted a group of medical personnel to his medical condition and they did nothing in response, causing injury, stated a claim so long as the complaint at some point identified all of the medical personnel involved); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) (noting that where a plaintiff has been injured "as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery" and that this is "not by itself a proper ground for dismissal").

Also, Caesar's argument remains silent as to the *Brady* claims against him regarding his failure to tender evidence of his involvement in the threats and coercion to gain the statement and testimony of Janice Johnson, Carla Smith and Fernando Webb. All three witnesses testified against plaintiff at his trial. Obviously, had the treatment of these three witnesses, been disclosed, the reliability of their testimony would have plummeted, if used at all. As such, disclosure of the circumstances that lead to these three witnesses' statements was material. In addition, had plaintiff been made aware of the pattern and practice of police abuse by defendant officers besides what he experienced first-hand, he would have been able to substantiate his claims of abuse. In *Patterson*, in upholding the plaintiff's Fifth Amendment *Brady* violation claim, the court held:

> "[a] colorable due process claim under §1983 must allege that defendants obstructed justice or withheld information or evidence necessary to ensure the fair and impartial trial guaranteed by the constitution…..Though *Brady* identifies a trial right of the accused, the government's offending conduct may occur before, during, or after the criminal trial……Additionally Patterson claims that all of the defendants acted in concert to effectuate a pattern and practice of torture and frame-ups at Area 2, and that he was not aware of this evidence until it was made public by court order in other proceedings. Patterson further alleges that defendants at all times knowingly suppressed both the actual truth of his innocence and their roles in framing him for the Sanchez murders from state prosecutors, judges, and the People of Illinois. Taken as true, these allegations contain all the elements of a *Brady* violation and sufficiently charge a deprivation of constitutionally guaranteed due process rights. *Patterson v. Burge*, 328 F. Supp. 2d 878 at 889. (N.D. Ill. 2004).

Applying the logic reached in *Patterson*, it is clear that Gibson has pled sufficient facts to substantiate

a claim of a violation of his Due Process Rights under *Brady*. Defendant Caesar obviously did not disclose the pattern and practice of abuse in Area 2 and Area 3 by himself and other officers. Had he done so, all evidence and statements obtained by him would have necessarily been discredited. This certainly is the basis of a violation of plaintiff's Due Process Rights under *Brady*

### III.    Plaintiff's False Imprisonment Claim is not untimely.

Defendant argues that Plaintiff's false imprisonment claims are time barred. Defendant heavily relies on *Wallace v. Kato*, 549 U.S. 384 (2007) to support their position. In *Wallace*, the court considered when did the statute of limitation accrue, the time the plaintiff was bound over for trial or when the plaintiff's conviction was overturned. The Court in *Wallace* determined that "false imprisonment consists of detention without legal process, and false imprisonment ends once the victim becomes held pursuant to such process, when…. he is bound over by a magistrate or arraigned on charges. *Wallace*, at 389. In other words, the plaintiff in *Wallace* statute of limitation began to run when his false imprisonment became legal imprisonment.

*Manuel v. City of Joliet*, 903 F.3d 667(2018) (*Manuel II)*, distinguishes *Wallace* and renders *Wallace* inapplicable to Gibson's claim. As is clear from Gibson's pleadings, he not only complains of his arrest, but also his imprisonment that followed his arraignment. In fact, Gibson claims that false evidence and Chicago Police Department's conspiracy to keep secret their barbaric tactics to gain false confessions are the basis for his continued imprisonment, even throughout his trial. The Court in *Manuel II* held:

> "Defendants' position relies on *Wallace*, which held that a Fourth Amendment claim accrues as soon as the plaintiff has been brought before a judge…..Wallace complained about his arrest rather than custody that post-dated his appearance before a judge….Manuel, by contrast, contests the propriety of his time in custody…The Court held that wrongful pretrial custody violates the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case. When a wrong is ongoing rather that discrete, the period of limitations does not commence until the wrong ends." *Manuel* 903 F. 3D 667 at 669.

The *Manuel II* court went on to hold that based on its reasoning, Manuel's claim did not accrue until the date that he was released from prison after his conviction was vacated. Plaintiff has pled facts similar to those found in *Manuel II.* The bulk of plaintiff's pled violations are not limited to

a false arrest or illegal search, which is temporally rather finite. Plaintiff complains of the underlying current of police misconduct akin to the "ongoing wrong" expressed in *Manuel II*. Therefore, plaintiff's claim of false imprisonment did not accrue until he was released from custody, thereby making his claim timely.

Caesar reliance on *Brown v. Chicago*, 2019 U.S. Dist. LEXIS 165148 is fatal to his own argument. *Brown* further establishes that "[w]here a wrongful conviction is alleged, however, a §1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentenced has been invalidated". *Brown* at *12. The Court in *Brown* went on to dismiss the defendant's motion to dismiss Counts I through IV. *Id. at * 16*. Moreover, as pointed out in Caesar's own motion, the portion of the *Brown* decision relied on by defendants only dismissed Count VI which was titled "Federal Malicious Prosecution". *Caesar's Motion to Dismiss p. 7*, citing *Brown*. Plaintiff does not present a" Federal Malicious Prosecution" claim anywhere in his complaint. Therefore, not only does *Brown* support plaintiff's position regarding timeliness, it is not even on point to any claims raised here.

Furthermore, as pointed out, since plaintiff's claim of false imprisonment directly impugns his conviction, he was barred by the principles announced in *Heck*. As such, the statute of limitations was tolled until his conviction was overturned.

## IV.  Plaintiff has pled facts to support his Equal Protection Claim

Defendant asserts that Plaintiff has not pled any facts to support his claim for violation of his Equal Protections rights. In order to assert an equal protection claim, plaintiff must assert 1.) that he is a member of a protected class; 2) that he was similarly situated to members of a protected class; 3) that he was treated differently than members of the unprotected class; and 4) that defendants acted with a discriminatory intent. *Chavez v. Illinois State Police*, 251 F. 3d 612 (7th Cir. 2001). Plaintiff has done just that. Specifically, plaintiff pleads that "defendants actively participated in or personally caused misconduct in terms of torturing minority criminal suspects in a manner calculated to coerce confessions. Said misconduct was motivated by racial animus and purposeful discrimination; it also affected minorities in a grossly disproportionate manner vis-à-vis similarly situated Caucasian individuals. *Complaint at ¶ 147*. Throughout the complaint defendant officers are claimed to have used racial slurs, that historically are used to degrade African Americans, during their abuse of plaintiff and his co-defendant. *Complaint at ¶ 30*. In fact,

an entire portion of the complaint highlights defendant's *de facto* policy of depriving African Americans of their Equal Protection rights. A reasonable inference can be drawn that defendant officers, through their racial slurs, acted with animus against plaintiff based on his race.

## V. Plaintiff's "Right to Counsel" claim should not be dismissed

In arguing that plaintiff's right to counsel violation claim should be dismissed, defendant asserts that there was no Sixth Amendment right to counsel at the time of plaintiff's complained of abuse. Defendant overlooks that the constitution also offers a "Right to Counsel" under the Fifth Amendment.

> "A person who is interrogated while in police custody has the right to request the assistance of a lawyer…. Interrogation, so as to trigger the right to counsel means direct questioning by the police…" *United States v. Briggs,* 273 F. 3d 737 at 740 (7th Cir. 2001).

Here, it is clear that plaintiff was interrogated while in custody for the span of several days. Also, the complaint pleads that plaintiff was tortured during his interrogation. The logical inference from the facts as pled is that plaintiff did not have an attorney present during his interrogation. Furthermore, it cannot be said that he voluntarily waived any right to counsel when he was beaten into a confession.

On page 10 of Caesar's Motion to Dismiss, he relies on *Sornberger v. City of Knoxville,* 434 F. 3d 1006 in arguing, "the failure to provide counsel does not create a cause of action under Section 1983 unless the plaintiff demonstrates that the statements he made to defendants without an attorney being present were used against him in a criminal case". This use of *Sornberger* appears to support Gibson's argument given that his statement was used against him at his trial.

## VI. Plaintiff has pled sufficient facts to assert his denial of access to the courts claim

Plaintiff pleads that defendant officers deprived him of access to the courts based on their misconduct and conspiracies that covered up that misconduct. *Complaint ¶¶177-181.* Those seeking to vindicate their right in court enjoy a constitutional right to access the courts that prohibits state actors from impeding one's effort to pursue legal claims. *Lewis* v. *Casey*, 518 U.S. 343 (1996). To prove a violation of this right, a plaintiff must demonstrate that state action hindered

10

his or her efforts to pursue a non-frivolous legal claim and that consequently the plaintiff suffered some actual concrete injury. *May v. Shean,* 226 F. 3d 876 (7th Cir. 2000). Although overruled on other grounds, the teachings of the court in *Bell v. Milwaukee*, 746 F. 2d 1205 (7th Cir. 1984) offers guidance to plaintiff's claim here. The court in *Bell* ruled in relevant parts:

> "The Fourteenth Amendment entitles the individual the fair opportunity to present his or her claim. Such a right exists where the claim has a reasonable basis in fact or law….A conspiracy to cover up a killing, thereby obstructing legitimate efforts to vindicate through judicial redress, interferes with the due process right of access to the courts….Judicial access must be adequate, effective, and meaningful. To deny such access defendants need not literally bar the courthouse door or attack plaintiff's witnesses. This constitutional right is lost where, as here, police officials shield from the public and the victim's family key facts which would form the basis of the family's claim for redress." *Bell*, 746 F. 2d at 1261.

Here, Gibson has alleged facts to establish the vast and systemic official cover up of police misconduct under Burge by the City and the Chicago Police Department. Gibson cites the Mayor Rahm Emanuel's speech, the 2017 Justice Department Report and other reports that detail the conspiracy to cover up police brutality that lead to coerced confessions during this time period. Obviously, had evidence of torture, such as that complained of here, been exposed when it happened, Gibson would have had the ammunition needed to assert his claims. By covering up their misconduct through the "Blue Wall of Silence", litigants were kept in the dark about how pervasive police brutality actually was, thus reducing the scope of their claims. Only in recent years are litigants able to substantiate conspiracy and *Monell*, claims.

Defendant erroneously relies on *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738 (N.D. Ill. 2012) to support their motion to dismiss Gibson's denial of access to court claim. *Hobbs* is distinguished from this case in that the court in *Hobbs* considered whether the arresting officers denied a prisoner access to legal resources. "Hobbs alleges that each defendant, acting individually, jointly and in a conspiracy, denied him access to the law library, legal material and/or legal counsel while he was incarcerated…" *Hobbs* 899 F.Supp. 2d at 774. Here, Gibson is not complaining that he was denied access to the law library, legal material or legal counsel while he was imprisoned. He is complaining, similar to the plaintiff in *Bell*, that the police cover up of their misconduct obstructed his ability to bring a lawsuit. Therefore, applying the principals announced in *Bell*, Gibson has asserted enough facts to support his claim that he was denied access to the courts through defendant officers' actions as well as their conspiracy to cover up their misconduct.

11

### VII. Plaintiff's Failure to Intervene claim is plausible on its face

Throughout Gibson's complaint are facts that establish defendant officers not only participated in Gibson's abuse, but were present when other officers abused Gibson. Furthermore, Gibson has pled facts to support various underlying violations of his rights at the hand of defendant officers. As such, defendant officers had a duty to prevent the other members of the "Midnight" crew from abusing Gibson in their presence. *Yang v. Hardin*, 37 F. 3d 282 (7th Cir. 1994). Moreover, Caesar concedes that Gibson has at least pled a viable Fifth Amendment Claim. *Caesar's Motion at pp. 3-4.*

### VIII. Plaintiff's Malicious Prosecution claim is viable.

Defendant's argument that plaintiff's malicious prosecution claim should be dismissed pursuant to Rule 12(b)(6) is without merit. Under Illinois law, to state a malicious prosecution claim, Gibson must show (1) the commencement or continuation of an original criminal or civil proceeding by defendants; (2) termination of the proceeding in his favor; (3) the absence of probable cause; (4) the presence of malice on the defendant's part; and (5) damages. *Zitzka v. Westmont*, 743 F. Supp. 2d 887 at 925 (N.D. Ill. 2010).

Defendants cite to *Beaman v. Freesmeyer,* 2019 IL 122654 (2019) which holds;

> Liability thus depends on whether the defendant was actively instrumental in causing the prosecution, and the presumption of prosecutorial independence can be overcome by showing that the defendant improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, concealed exculpatory evidence or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution. *Beaman* 2019 IL 122654 at ¶ 44.

Here, it is well pled that defendant officers appeared at Gibson's home, arrested him, placed him in lineups, then beat him in order to gain his confession. *Complaint* ¶¶ 30-34. Defendant officers also beat a statement from Gibson's co-defendant which implicated Gibson in the murders. *Complaint ¶ 54.* Defendant officers did not have probable cause to charge Gibson with murder so, as pled in the complaint, they fabricated evidence to manufacture probable cause. Furthermore, the malice in defendants' abuse is evident in the pleadings. Due to defendant officers knowingly misinforming the prosecutor and withholding exculpatory evidence (i.e. the negative lineups and manner of obtaining statements) from their reports

12

given to the prosecutor, the presumption of prosecutorial independence is overcome in this case. Therefore, defendant officers' conduct is the cause and a proximate cause of the commencement or continuation of Gibson's prosecution. Gibson spent nearly 30 years in prison due to defendants' misconduct until his conviction was vacated and dismissed. Furthermore, defendants cannot avail themselves of tort immunity as far as they were personally involved in the fabricated evidence and coerced confession which was the impetus of Gibson's prosecution.

## IX. Plaintiff has pled sufficient facts in his claim for Intentional Infliction of Emotional Distress (IIED).

Plaintiff contends that he suffered severe emotional distress as a result of defendant's intentional, extreme, and outrageous conduct of torturing, framing, and falsely imprisoning him for a crime he did not commit. *Complaint ¶¶ 110-111*. Defendants argue in their motion to dismiss Gibson's IIED claim that his claim is time-barred. However, the weight of case law in this district holds that a claim for IIED arising from malicious prosecution does not accrue until the state criminal proceedings are terminated. *Hobley V. Burge*, 2004 U.S. Dist. LEXIS 10228 at \*33 (2004). Thus, since state tort claims are subject to a one-year limitation period pursuant to 745 ILCS 10/8-101 and Gibson filed his complaint only two months after his case was dismissed, his IIED claim is timely. Furthermore, since Gibson is not basing his claim of IIED on any testimony at trial or TIRC hearing, any tort immunity is inapplicable.

## X. Plaintiff's conspiracy claims are sufficiently pled

Plaintiff has pled that defendant officers conspired to violate his constitutional rights. To sustain a claim of conspiracy, it is enough to merely indicate the parties, general purpose, and approximate date, so that defendant is on notice of what he is charged with. *Campbell v. City of Chicago*, 2018 U.S. Dist. LEXIS 155258 at \*13. Here, Gibson has indicated the parties to the conspiracy in great detail. *Complaint at ¶160*. The general purpose of the conspiracy was to frame Gibson of the murder and deprive him of his constitutional rights. *Complaint at ¶164*. The time period is the date of his arrest through the dismissal of his case. Gibson has pled more than just speculation that defendant officers were part of a conspiracy to deprive him of his constitutional

rights. The complaint goes as far as to specifically spell out the acts of each defendant to place them on notice.

### XI. Plaintiff's has pled sufficient facts to sustain the City's liability in violating Plaintiff's Constitutional Rights.

Plaintiff asserts a *Monell* claim against the City of Chicago for its well-known policies and practices that fostered an environment ripe for defendant officers' misconduct toward Gibson. This district has held:

> …[a] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Plaintiff can establish such a causal link in one of three ways, by showing (1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of laws; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority. *Tillman v. Burge,* 813 F. Supp. 2d 946 at 978. (7th Cir. 2011).

Applying the well settled doctrine announced in *Tillman*, plaintiff has devoted an entire portion of the complaint to elaborate in great detail the City of Chicago's *de facto* policy of police torture by officers working under Jon Burge. *Complaint at ¶¶95-108.*

It appears that defendants do not really contest the sufficiency of plaintiff's pleadings as they relate to the *Monell* claim. Likewise, defendants base their motion to dismiss Gibson's *Monell* claims based on their assertion that there can be no *Monell* claim if there is no viable constitutional rights violation claim against any individual officer. Plaintiff agrees with defendants' interpretation of the applicability of *Monell* when there is no viable claim against any individual officers. However, that is not the case here. As pled in the complaint and argued in this response to defendant's motion to dismiss, there are viable claims against the individual officers for violating Gibson's constitutional rights. Therefore, defendants' motion to dismiss Gibson's *Monell* should be denied. The same reasoning should also be applied to deny defendants' motion to dismiss Gibson's *respondeat superior* and recovery under indemnity statute.

<u>Conclusion</u>

For the reasons discussed above, the Court should deny defendants' Rule 12(b)(6) motion to dismiss.

Respectfully submitted,

/s/ Ramon A. Moore_____
Attorney for Plaintiff

Ramon A. Moore
Law Office of Ramon A. Moore
150 N. Michigan Ave., Suite 2800
Chicago, IL 60601
(312)332-5134
ramonmoore@ramonmoorelaw.com

15