**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES GIBSON, | ) | |
| | ) | Case No. 19 CV 4152 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Ellis |
| v. | ) | |
| | ) | Magistrate Judge Weisman |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CAESAR'S AND CITY OF CHICAGO'S**
**REPLY IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**

Defendant Louis Caesar, through his attorneys Hale & Monico LLC, respectfully submits this reply memorandum in support of his partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant City of Chicago ("City"), though its attorneys Reiter Burns LLP, respectfully joins Defendant Caesar's reply. In support, Defendants state:

**INTRODUCTION**

Defendant Caesar moved to partially dismiss Plaintiff James Gibson's complaint with prejudice. Specifically, Defendant moved to dismiss Counts IV, V, VI, VII, VIII, IX, XI, XII, and XIII in their entirety and Counts I, II, and III in part; Defendant City joined the motion to the extent Plaintiff's *Monell* and derivative state law claims were premised on claims that the Court dismissed. Plaintiff's argument in opposition is primarily non-responsive to Defendant Caesar's arguments, relies on conclusory statements that are not afforded any presumption of truth, and conflates issues in an attempt to stave off dismissal. Simply put, there is nothing in Plaintiff's response that should persuade the

Court that any aspect of Defendants' motion should not be granted. To that end, the Court should grant Defendants' motion to dismiss in its entirety.

## ARGUMENT

### I.     Count I should be partially dismissed with prejudice.

In his motion, Defendant Caesar moved to partially dismiss Count I on two grounds: first, Plaintiff's complaint failed to state a claim under the First, Fourth, Sixth, or Eighth Amendments and second, that Plaintiff's "coerced confession" claim cannot include an independent claim based on the alleged torture used to extract the statement.

Plaintiff's response to Defendant Caesar's first argument is wholly off-point; Defendant Caesar never suggested that Count I should be dismissed in its entirety due to the erroneous invocation of the First, Fourth, Sixth, and Eighth Amendments, only that Plaintiff cannot pursue a claim based on an asserted violation of any rights secured by those amendments. *Compare Docket No. 78* at 3 *with Docket No. 69* at 2-3. In other words, Plaintiff is arguing against a theory of dismissal never made by Defendant Caesar.

By contrast, Plaintiff wholly ignored the actual basis as to why partial dismissal of Count I is appropriate – that Plaintiff failed to state a viable cause of action for a First, Fourth, Sixth, or Eighth Amendment claim. *Id.* He has, accordingly, waived any opposition to that argument and the Court should grant Defendant Caesar's motion on that issue. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 n.1, 721 (7th Cir. 2011); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

For similar reasons, the Court should not be persuaded by Plaintiff's response to Defendant Caesar's argument that Count I cannot be premised on the alleged "torture" used against him in December 1989. The Fifth and Fourteenth Amendments prohibit the use of a compelled statement against an individual during a criminal proceeding. *Chavez*

*v. Martinez*, 538 U.S. 760, 773 (2003) (plurality opinion). It does not govern, or even forbid, the amount of force used to extract those statements; amounts of force utilized by law enforcement officers is subjected to the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). And, fatal to Plaintiff's claims, a Fourth Amendment claim of excessive force accrues immediately. *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010). Because Section 1983 claims are governed by a two-year statute of limitations, any claim Plaintiff had based on his allegations that a clothes iron was used to burn him in December 1989 was required to have been initiated by December 1991. As Plaintiff did not bring this litigation until 2019, his claim is time-barred. *Wrice v. Burge*, 187 F.Supp.3d 939, 953 (N.D.Ill. 2015) (claim of "torture and physical abused" under the Fourth Amendment untimely and not extended by *Heck*).

Plaintiff's response to this argument is a misplaced belief that his claim was subject to delayed accrual pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). While *Heck* did bar Plaintiff from bringing a Fifth Amendment claim until his conviction was overturned or vacated – and Defendant Caesar made no argument to the contrary on that point – *Heck* did not prohibit Plaintiff from bringing a Fourth Amendment claim based on the physical force used against him in 1989. *Wrice*, 187 F.Supp.3d at 953. Indeed, Plaintiff could have initiated a Fourth Amendment claim premised on the use of a clothes iron against him without collaterally attacking his conviction but he failed to do so within the two-year time limit. As a consequence, any claim based on the physical force used against him in December 1989 should be dismissed with prejudice.

## II.    Count III should be partially dismissed with prejudice.

According to his Response, Plaintiff has narrowed his claimed "Due Process" violations to (1) the non-disclosure of the fact that he was in three line-ups while in

custody, (2) the failure to disclose the "threats and coercion" used to gain the statements of Janice Johnson, Carla Smith, and Fernando Webb, and (3) the failure to disclose the "pattern and practice of abuse" to witnesses. *Docket No. 78* at 6-7.[1] Defendant Caesar is entitled to partial dismissal of this claim with prejudice.

Section 1983 liability can only be maintained against those individuals who were personally involved in the alleged constitutional deprivation. *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). It is undisputed that Defendant Caesar was not present during these line-ups and it is not alleged that he had any knowledge of the same. As such, he cannot be held liable under Section 1983. *Id.*

Without any factual basis, Plaintiff asserts that because he made a conclusory statement that Defendant Caesar was a "co-conspirator," Defendant Caesar can be held personally liable for the alleged misconduct of others. Plaintiff goes farther and states that he should be able to conduct discovery to support his wild accusations against Defendant Caesar. This position has no legal basis and should be rejected wholesale.

Rule 8 of the Federal Rules of Civil Procedure "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In other words, Plaintiff cannot survive a motion to dismiss and get to discovery when the only allegations against Defendant Caesar are conclusory statements that the Court is not bound to accept. *Id.* Conclusory conspiracy allegations

---

[1] In his Response, Plaintiff asserts that Defendant Caesar argued that the "Due Process" claim was based on Plaintiff's own torture and statement, Eric Johnson's abuse and statement, and the statements by Janice, Carla, and Fernando. *Docket No. 78* at 5. Defendant Caesar made no such argument. *See Docket No. 69*. It is apparent that Plaintiff's response to Defendant Caesar's motion is merely a "copy and paste" job from his consolidated response to the other defendants' motions to dismiss without Plaintiff reviewing Defendant Caesar's actual argument. *Compare Docket No. 79 with Docket No. 64*. As this portion of Plaintiff's Response is entirely non-responsive and irrelevant to Defendant Caesar's motion, it should be disregarded.

that are "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her [is] not enough" to state a valid claim that will survive a motion to dismiss. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). Yet, as Plaintiff concedes, the only allegation that Defendant Caesar had a role in the line-ups is the speculative, conclusory conspiracy accusation. This is not enough to state a valid claim and the Court should grant Defendant Caesar's motion.

Plaintiff's reliance on *Colbert v. City of Chicago* is misplaced and does not support his argument that Defendant Caesar can be held personally liable for conduct Plaintiff concedes in his Complaint was committed by other officers. In *Colbert*, the plaintiff was unable to ever identify the officers involved in a purported wrongful search. 851 F.3d 649 (7th Cir. 2017). Plaintiff, by contrast, specifically identified the officers involved in the line-ups by asserting that "Gibson was then put into three (3) lineups by Officers O'Mara, Collins, Maslanka, Paladino and McCann." *Docket No. 1-1* ("Plaintiff's Complaint") at ¶ 29. Put another way, Plaintiff excluded Defendant Caesar from having any role in the claimed misconduct. *Id.* To that end, Plaintiff's own complaint prohibits Defendant Caesar from being accused of having personal involvement in the line-ups and Plaintiff has pled himself out of court on that issue.

In addition, Plaintiff's bald allegation of a conspiracy does not save his claim. This Court was confronted with an argument similar to Plaintiff's in *Hill v. City of Chicago* and ultimately rejected it. In *Hill*, this Court found that the plaintiff's "allegation of conspiracy is a legal conclusion and is not entitled to the assumption of truth." No. 13 C 4847, 2014 WL 4922319 (N.D.Ill. Sept. 30, 2014) (Ellis, J.). In the end, Defendant Caesar's only purported link to the line-ups is a conclusory allegation of conspiracy that is not

supported by facts. As this is not enough to survive a motion to dismiss, the Court should grant Defendant Caesar's motion.

Putting that aside, Plaintiff's allegations relating to the line-ups do not rise to the level of a due process *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* requires the disclosure of exculpatory and impeaching evidence to the criminal defendant. *United States v. Bagley*, 473 U.S. 667, 676 (1985). In order to prevail on a civil *Brady*-based due process claim against a police officer, a plaintiff must demonstrate that the evidence in question was favorable to him, the police "suppressed" the favorable evidence, and prejudice ensued because the suppressed evidence was material. *Anderson v. City of Rockford*, 932 F.3d 494, 504 (7th Cir. 2019). "Evidence is suppressed for *Brady* purposes if the 'prosecution failed to disclose evidence that it or law enforcement was aware of before it was too late for the defendant to make use of the evidence' and 'the evidence was not otherwise available to the defendant through the exercise of reasonable diligence.'" *Id.* at 504-05 (citing *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001)). Or, put more simply, *Brady* requires the criminal defendant be furnished with the evidence of which he has no knowledge to ensure that the criminal defendant can then investigate and possibly use the evidence to fight the charges against him.

*Anderson* is fatal to Plaintiff's Due Process claim because Plaintiff *knew* he participated in the line-ups. Because Plaintiff already knew of the line-ups, no disclosure was required under *Brady* or its progeny. *See, e.g.*, *Harris v. Kuba*, 486 F.3d 1010, 1015 (7th Cir. 2007) (government not required to disclose information the criminal defendant already knew); *see also Hill*, 2014 WL 4922319, at *3 (because plaintiff did not identify any exculpatory facts that he was not aware of during his trial, the due process claim was dismissed).

6

Further, Plaintiff's claim also fails the "material" aspect of a *Brady* violation. Evidence is "material" if there is a 'reasonable probability' that the result would have been different had the suppressed evidence been put before the jury. *Id.*; *Goudy v. Cummings*, 922 F.3d 834, 842 (7th Cir. 2019). Plaintiff does not allege – nor can a reasonable inference be made as to –who viewed the line-ups or even if the line-up was connected to the Benjamin/Wash homicide investigation or if Plaintiff merely acted as a filler for another investigation. Given the lack of details and absence of any connection to the subsequent criminal proceedings relating to the Benjamin/Wash homicide, it cannot be said that the line-ups were "material" for *Brady* purposes.

Plaintiff's assertion that the alleged non-disclosure of a "pattern and practice of abuse" of witnesses violated *Brady* does not save his claim. Plaintiff's speculative conclusion that disclosure of the alleged policy and practice "would have necessarily ... discredited" all of the evidence and his own statement is woefully undeveloped and appears to rely solely on allegations of inadmissible propensity. *Docket No. 78* at 7-8. It certainly does not satisfy the pleading requirements by presenting a plausible *Brady*-based Due Process claim.

Accordingly, while Plaintiff has pled and may bring a "Due Process" claim based on the alleged fabrication of Janice's, Carla's, and Webb's statements – allegations Defendant Caesar adamantly denies – the Court should not accept Plaintiff's invitation to expand *Brady* to require disclosure of information a criminal defendant already knew (*e.g.* Plaintiff's own knowledge of his participation in three line-ups) and/or to require disclosure of non-relevant conduct from other, unrelated investigations (*e.g.* how officers treated witnesses and suspects who were not connected to the Benjamin/Wash homicides). Accordingly, the Court should grant Defendant Caesar's motion and partially dismiss Plaintiff's "Due Process" claim.

### III. Plaintiff's "False Imprisonment" claim (Count VI) is time-barred.

In this matter, Plaintiff purports to bring a § 1983 "False Imprisonment" claim. It should be dismissed as untimely. The Seventh Circuit has firmly established that a Fourth Amendment unreasonable pre-trial detention claim accrues when the individual is released from pre-trial custody, either due to having the charges dismissed or being convicted. *Knox v. Curtis*, 771 Fed.Appx. 656, 658 (7th Cir. 2019). That is because "a Fourth Amendment claim for unlawful pretrial detention accrues when the detention ends, not when the prosecution ends." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1015 (7th Cir. 2019) (describing the holding of *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018) ("*Manuel II*")); *see also Brown v. City of Chicago*, No. 18 CV 7064, 2019 WL 4958214 (N.D. Ill. Oct. 8, 2019) (Pallmeyer, C.J.).

*Brown* is particularly analogous to the case at bar, presenting a vacated conviction and claims pursuant to Section 1983 based on the time in custody. There, the plaintiff attempted to bring a claim based on his time in custody prior to his conviction. Chief Judge Pallmeyer rejected the plaintiff's attempt to recast his claim as one for unlawful pretrial detention under *Manuel*. The court agreed with the defendants that such a claim would be untimely, reasoning that "[w]hile the Seventh Circuit in *Manuel II* held that a claim for pretrial detention without probable cause begins to accrue when the pretrial detention ends, *Knox* clarified that pretrial detention can be considered as ending upon conviction." *Id.* (citations omitted). The court further explained "any unlawful pretrial detention claim that Plaintiff might have asserted would be time-barred under Seventh Circuit precedent holding that such a claim is not subject to the delayed accrual rule from *Heck*." *Id.* at *3 (citing *Knox*, 771 Fed. Appx. 658-59). Finally, Chief Judge Pallmeyer rejected the notion that *McDonough v. Smith*, 139 S. Ct. 2149 (2019), rescued the claim

8

as *McDonough* was grounded in concern for "avoiding collateral attacks on criminal judgments through civil litigation," while no such attack is made by the Fourth Amendment. *Id.*

Plaintiff fails to even address the Seventh Circuit case law that is directly on point. And his only attempt to distinguish *Brown* is to argue that, since he does not have a "federal malicious prosecution" claim like the plaintiff in *Brown*, it "is not even on point to any claims raised here." *Docket No. 78* at 9. Plaintiff ignores the plain text of *Brown* and his argument is directly contrary to the opinion itself. While the *Brown* plaintiff did attempt a "federal malicious prosecution" claim — one that is not recognized in the Seventh Circuit — the Chief Judge found that the plaintiff had "restated the claim as one for pretrial detention without probable cause." *Brown*, 2019 WL 4958214, at *3. On that basis, Chief Judge Pallmeyer held that "Plaintiff's Fourth Amendment claims for his detention before his 1990 and 2008 trials needed to be filed in 1992 and 2010 respectively." *Brown*, 2019 WL 4958214, at *3. Going further, Chief Judge Pallmeyer rejected Plaintiff's exact argument by reasoning "[a] Fourth Amendment claim does not constitute such a collateral attack[]" on a conviction that would be prohibited by *Heck*. *Id*. Applying that reasoning to the case at bar, Plaintiff's Fourth Amendment claim is similarly untimely. Plaintiff was arrested in December 1989 and held in pretrial custody until October 1991, when he was convicted. Under current and binding Seventh Circuit law, Plaintiff had two years — until October 1993 — to file a Fourth Amendment claim based on that pretrial detention. By waiting until 2019, Plaintiff did not comply with the statute of limitations and his 2019 Fourth Amendment "false imprisonment" claim is time-barred and should be dismissed with prejudice.

For identical reasons, Plaintiff is precluding from maintaining a claim based on his time in custody from December 27 to 30, 1989. And, Plaintiff did not respond to this argument, thus waiving the issue. *Bonte*, 624 F.3d at 466.

## IV. Count V should be dismissed as insufficiently pled.

Plaintiff's Equal Protection claim is nothing more than "[t]hreadbare recitals of the elements of a cause of action [and] supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). As such, his allegations are insufficient to state a claim.

Plaintiff's Response to Defendant Caesar's motion is identical to the one he made in his consolidated response. *Docket No. 64*. This should not persuade the Court that Plaintiff has sufficiently pled the claim. Plaintiff merely points to the use of one racial slur by Defendant Paladino and his conclusory statement that all Defendants tortured other minority suspects. *Docket No. 64* at 12-13 (referencing *Complaint* ¶¶ 30, 147). The mere allegation that another defendant used a racial slur and a conclusory statement is not sufficient to plead a claim against Defendant Caesar. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (plaintiff must show he was a member of a protected class and treated differently from unprotected class); *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001) (plaintiff must allege defendant "motivated by a discriminatory purpose."). For that reason, the Court should dismiss this claim with prejudice.

## V. Plaintiff's "Right to Counsel" claim (Count VI) should be dismissed with prejudice.

Defendant Caesar moved to dismiss any "right to counsel" claim brought by Plaintiff, whether under the Fifth or the Sixth Amendment. *Docket No. 69* at 8-10. Part of Defendant Caesar's argument is that Plaintiff cannot maintain a Fifth Amendment "right to counsel claim" because he (1) never invoked his right to counsel and (2) already had a

Fifth Amendment claim based on his statements being used against him at trial, making a second Fifth Amendment claim superfluous. *Id.*

In the seminal *Miranda v. Arizona*, the Supreme Court held that an interrogation must cease when the accused demands an attorney. 384 U.S. 436, 474 (1966); *see also Edwards*, 451 U.S. at 484-85. However, for this right to be asserted, the accused must have actually invoked his right to counsel. *E.g.*, *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991); *also Davis v. United States*, 512 U.S. 452, 459 (1994) ("the suspect must unambiguously request counsel."). By failing to respond to the argument that he never invoked his right to counsel and cannot bring a Fifth Amendment claim, Plaintiff has waived any argument to the contrary. *Bonte, supra.*

Even if the Court declines to find waiver, dismissal of this claim is still warranted. Plaintiff suggests that Defendant Caesar's "use of *Sornberger* appears to support Gibson's argument given that his statement was used against him at his trial." *Docket No. 78* at 10. This argument is puzzling at best. *Sornberger v. City of Knoxville, Ill.* clearly held that there is no independent constitutional right to receive *Miranda* warnings. 434 F.3d 1006, 1024 (7th Cir. 2006). This citation in no way "support[s]" any allegation that Plaintiff's statement was used against him at trial or that Plaintiff's Fifth Amendment rights were violated. And there is no stand-alone constitutional claim to the right to counsel because it is "derived from the holding of *Miranda*." *Uhde v. Adams Cnty., Wisc. Sheriff's Off.*, 2003 WL 23142254, at *6 (W.D. Wis. July 22, 2003). Given Plaintiff already has a Fifth Amendment claim on the use of the statements, his right to counsel claim is not a valid claim and should be dismissed with prejudice.

Plaintiff has also waived any argument of a Sixth Amendment violation.

## VI.    Plaintiff's "Denial of Access to the Courts" claim (Count IX) should be dismissed.

Defendant Caesar moved to dismiss Plaintiff's "denial of access to the courts" claim as insufficiently plead. *Docket No. 69* at 10-11. Plaintiff's response is identical to the one he made in his consolidated response. *Compare Docket 78* at 10-22 *with Docket No. 64* at 13-15. To avoid redundancy, Defendant Caesar incorporates Defendant Moser's reply on this issue (*Docket No. 71* at 10-11) as though fully set forth herein. The Court should dismiss Count IX with prejudice.

## VII.   The Court should dismiss Plaintiff's failure to intervene claim against Defendant Caesar.

Defendant Caeser moved to dismiss the failure to intervene claim for several reasons. First, any failure to intervene claim based on the alleged physical abuse is untimely as it is outside the two-year statute of limitations. *Docket No. 69* at 11. Plaintiff failed to respond to this argument so the Court should grant Defendant Caesar's motion as unopposed on this point. Likewise, Defendant Caesar cannot be held liable on a failure to intervene theory for misconduct he is alleged to have committed personally. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Again, Plaintiff does not respond to this argument so the motion should be granted.

## VIII.  Plaintiff's "Intentional Infliction of Emotional Distress" (IIED) claim (Count XIII) should be dismissed with prejudice.

Defendant Caesar moved to dismiss Plaintiff's IIED claim as untimely, pursuant to 745 ILCS 10/8-101(a), *Bridewell v. Eberle*,[2] *Evans v. City of Chicago*,[3] and *Grayson v. City of Aurora*.[4] As he did in his consolidated response, Plaintiff ignores the binding

---

[2] 730 F.3d 672 (7th Cir. 2013).
[3] 434 F.3d 916 (7th Cir. 2006).
[4] 157 F.Supp.3d 725 (N.D.Ill. 2016).

Seventh Circuit opinions of *Bridewell* and *Evans* in favor of the unpublished, district court opinion of *Hobley v. Burge* from 2004. *Docket No. 78* at 13. The Court should not be persuaded to follow a 2004 unpublished district court opinion and ignore two binding Seventh Circuit opinions that Plaintiff failed to address.

**IX.  Plaintiff's "Conspiracy" claims (Counts VII, VIII, and XII) are solely based on conclusory statements that do not rise above the speculative level and each claim should be dismissed.**

Federal Rule of Civil Procedure 8 requires that a plaintiff give "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to meet this standard, the plaintiff must have well-pleaded, nonconclusory factual allegations that "give rise to a plausible suggestion of conspiracy." *Iqbal*, 556 U.S. at 680. However, even before *Twombly* and *Iqbal*, "conspiracy allegations were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

Plaintiff's response (*Docket No. 78* at 13-14) simply relies on a baseless suspicion that everyone adverse to him was part of a wide-ranging conspiracy to frame him – a speculative belief devoid of plausible factual support. *Cooney*, 583 F.3d at 971. Other than these conclusory statements, which are entirely lacking any factual support, Plaintiff provides nothing of substance in response to Defendant Caesar's arguments. Given the lack of factual support for his conspiracy claims, the Court should dismiss the claim.

### X. The Court should dismiss any *Monell* or other derivative claims against the City to the extent based upon claims against Defendant Caesar that are subject to dismissal.

The City moved to dismiss any *Monell* claim to the extent based on a claimed constitutional violation committed by Defendant Caesar that was subject to dismissal. *Docket No. 69* at 14-15; *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) (if a plaintiff cannot establish a constitutional injury, he cannot pursue a *Monell* claim). Plaintiff does not disagree that if an alleged constitutional violation is dismissed, then the corresponding *Monell* claim premised on that constitutional tort should be similarly dismissed. For the reasons discussed above, many of the constitutional claims against Defendant Caesar are untimely or otherwise lack merit and should be dismissed. To that end, any related *Monell* claim should also be dismissed.

Similarly, any state law claim against Defendant Caesar that is dismissed would warrant dismissal of Plaintiff's *respondeat superior* and indemnity claims to the extent based on that alleged misconduct. 745 ILCS 10/2-109; *Docket No. 69*, at 14-15.

### CONCLUSION

For the reasons discussed above and those put forth in *Defendant Caesar's and City of Chicago's Motion to Dismiss* (*Docket No. 69*), the Court should grant Defendant Caesar's motion to dismiss in its entirety. In addition, to the extent any Federal or State law claims are dismissed, the Court should dismiss any *Monell* claim based on the dismissed constitutional claim and the *respondeat superior* and indemnity claims based on the dismissed state law claims.

Respectfully submitted,

For Defendant Caesar:
*/s/ Shawn W. Barnett*
Attorney No. 6312312

For Defendant City of Chicago:
*/s/Paul A. Michalik*
Attorney No. 6198674

HALE & MONICO LLC
Andrew Hale
Barrett Boudreaux
Shawn W. Barnett
53 West Jackson, Suite 337
Chicago, IL 60604
(312) 870-6905

REITER BURNS LLP
Daniel Noland
Paul Michalik
Elizabeth Ekl
Katherine Morrison
Daniel Burns
311 South Wacker, Suite 5200
Chicago, IL 60606
(312) 982-0090

## Certificate of Service

I, the undersigned attorney, certify that I caused this motion to be filed with the Clerk of the Northern District of Illinois using the Court's electronic filing system. As a result, copies of the filed document were electronically served upon all counsel of record. A paper courtesy copy of the filed motion may have been provided to the Court depending upon the Court's standing order.

*/s/ Shawn W. Barnett*