IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES GIBSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-4152 |
| v. | ) | Hon. Sara L. Ellis |
| | ) | Hon. M. David Weisman |
| CITY OF CHICAGO, *et al.* | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ENTRY OF
CONFIDENTIALITY PROTECTIVE ORDER**

Plaintiff JAMES GIBSON, by his attorney, submits this response in opposition to the Defendants' motion for entry of a protective order (Dkt. # 92), stating in support as follows:

**INTRODUCTION**

Plaintiff agrees with Defendants that entry of a protective order is reasonable to protect the parties. As such, Plaintiff has no objection to entry of this Court's model protective order in this case, which adequately protects all categories of confidential documents that might be produced in this litigation. *See* Ex. A (Northern District of Illinois Model Protective Order, showing information available to the public may not be designated as "Confidential Information"). Plaintiff agrees with the model protective order in that the Defendants' personal information, such as medical, income tax returns, address, social security number, telephone number, and any other personal identifiers should not be disclosed to the public for safety reasons. Defendants, however, seek to modify the Court's Model Protective Order and propose their own protective order. *See* Ex. B (Defendants' proposed protective order, showing Defendants' changes to the model order). Plaintiff opposes Defendants' proposed protective order in as much as it seeks to protect as confidential entire Chicago Police Department Complaint Register files (CR Files). The CR files are extremely relevant as they document citizen complaints against the defendants as police officers and the City's response to those

1

complaints. The courts in this District have overwhelmingly held that CR files are public documents that cannot be protected as confidential in their entirety.

Should this court decide not to enter the model protective order, Plaintiff proposes his version of a protective order. *See* Ex. C (Plaintiff's counterproposal, showing Plaintiff's modifications to the Model Protective Order). Plaintiff's version allows for expeditious production of CR files in this case under the protective order, while establishing a reasonable procedure that permits public release of the CR files.

Defendants have not shown good cause for their modifications to the Court's model protective order. For the reasons explained below, this Court should deny Defendant's motion, and enter either the model protective order or Plaintiff's counter proposal.

## **LEGAL STANDARD**

Generally, pretrial discovery that is relevant to the any claim or defense should be disclosed between opposing parties so long as it is proportionate to the issues presented. Fed. R. Civ. P. 26 (b)(1) However, Federal Rules of Civil Procedure 26 provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26 (c)(1); *see also Bond v. Utreras*, 585 F. 3d 1061 (7th Cir. 2009). "Rule 26(c) allows a court to shield certain documents from the public when there is good cause to do so." *Bond*, 585 F.3d at 1074. The rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Gordon v. Countryside Nursing and Rehab. Ctr., LLC.,* No. 11 C 2433, 2012 WL 2905607, at *2 (N.D. Ill. July 16, 2012).

As the moving party, Defendants bear the burden of showing good cause for their additions to the model protective order. *Cent. States, Se. & Sw. Areas Pension Fund v. Nat'l Lumber Co.*, No. 10 C 2881, 2012 WL 2863478, at *2 (N.D. Ill. July 11, 2012). In determining whether there is

good cause for a protective order, the court must balance the harm to the party seeking the protective order against the importance of public disclosure. *In re Northshore Univ. Healthsystem,* 254 F.R.D. 338, 341-42 (N.D. Ill. 2008). Good cause generally signifies a sound basis or legitimate need to take judicial action. *In re Alexander Grant & Co. Litig.,* 820 F.2d 352, 356 (11th Cir. 1987). Some factors to consider in making this determination are privacy interests, whether the information is important to the public health and safety and whether the party benefiting from the confidentiality of the protective order is a public official. *Pansy v. Borough of Stroudsburg,* 23 F. 3d 772, 787-88 (3d Cir. 1994). "In sum, neither the CRs nor the RLs are exempt from disclosure under FOIA," *Kalven v. City of Chicago,* 2014 IL App (1st) 121846 at ¶32, 7 N.E. 3d 741 (1st Dist. 2014), *overruled on other grounds by Perry v. Dep't of Fin. & Prof"l Regulation*, 2018 IL 122349, 106 N. E. 3d 1016 (2018).

## ARGUMENT

Plaintiff's disagreement concerns Defendant's proposal to modify the model protective order to include CR files in the category of confidential documents. Specifically, at issue is the City's following underlined addition to paragraph 2 of the Model Protective Order:

> As used in this Order, "Confidential Information" means information designated as "CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER" by the producing party that falls within one or more of the following categories: ............ (h)…[a]ny disciplinary actions, files and attachments to such files generated by the investigation of deaths in custody, uses of deadly force, and complaints of misconduct by Chicago police officers(generally referred to as "'Log Number" files, "Complaint Register" (CR) files, "Universal" (U) files, "extraordinary Occurrence" (EO) files, or "Non-Disciplinary Intervention" (NDI) files) (collectively hereinafter referred to as "Log Files"), or by internal Chicago Police Department "Summary Punishment Action Requests" (SPARs).

CR files are *not* "prohibited from public disclosure by statute"—indeed, the Illinois Appellate Court determined that they are public records not categorically exempt under any provision of the Illinois Freedom of Information Act. *Kalven v. City of Chicago*, 2014 IL App. (1st)

3

121846. The *Kalven* case goes on to leave open the possibility that a limited amount of information contained within CR files may be redacted pursuant to IFOIA's deliberate-process exemption, 5 ILCS 140/7(1)(f), prior to production. *Id.* at ¶¶ 24-25, 32.

Here, the City seeks to subject *all* of the contents of any relevant CR file to the restrictions of the Protective Order, claiming that it should not have to bear the burden of redacting the files. The City's position cannot be squared with Rule 26 and the resulting limited purpose of protective orders. Such orders exist to protect that which is confidential from possible public disclosure, not to enable the producing party to avoid the burden of making redactions. This is particularly so with respect to CR files, which the Illinois Appellate Court has found to be matters of public record. Moreover, the City has already indicated that it plans to redact the CR files for personal identifying information even with the Confidentiality designation, so it is already going to be reviewing and redacting the CR files before making any production in this case. *See* Mot. for Entry of Confidentiality Protective Order (Dkt. # 92) at p. 4.

CR files contain records of citizen complaints against police officers and the investigations into these complaints. Requiring Plaintiff to keep CR files confidential would senselessly impede Plaintiff's ability to question third party witnesses regarding the CR files. A confidentiality designation would also bar Plaintiff from sharing these CR files with other civil rights lawyers seeking to expose police misconduct and would block Plaintiff's counsel from tracking misconduct complaints against particular police officers. Such a restriction is unjustifiable in light of the Illinois Appellate Court ruling that CR files are public records not exempted from disclosure under the Illinois Freedom of Information Act.

    **A.    The City Has Not Established Good Cause for Designating Complaint Register Files Confidential.**

"[U]nder [Rule] 26(c), the district court has the power to issue a protective order only

upon a showing of 'good cause.'" *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). The burden to demonstrate good cause for entry of a protective order rests with the party seeking to limit disclosure. *Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 762 (N.D. Ill. 2010). "[I]mplicit in Rule 26(c)'s 'good cause' requirement" is the understanding that absent good cause, "a party receiving discovery materials might make them public." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988).

Here, the City has utterly failed to articulate a basis for designating CR files as Confidential other than that it would be "burdensome" to produce them with redactions for those portions of the files exempt from public disclosure under IFOIA. *See* Mot. (Dkt. # 92) The City, however, has already undertaken to redact a broad range of personal identifying information from the CR files it will produce. *Id.* at p. 9. The City insists that good cause exists for a Confidentiality designation due to CR files' inclusion of "names of complainants and third parties and other private information," including social security numbers, information included in the Illinois Identity Protection Act, 5 ILCS 179/10(b)(1) (*i.e.*, social security numbers), and information included in the Juvenile Court Act, 705 ILCS 405/1-1 *et seq. Id.* at ¶ 12. Yet the City's plan is to redact this very information prior to producing it under a Confidentiality designation to Plaintiff. (providing for redaction of social security numbers, dates of birth, information covered by Juvenile Court Act, and, for security reasons, all references to a current or former police officer's confidential information about him/ herself and his/ her family). As expressed to Defendants, Plaintiff respects the need to keep Defendant officers' personal information (address, social security number, income tax returns, dates of birth and any other personal identifiers) from leaking to the public. The officers' personal information is the very information that the Model Protective Order would protect and is agreeable to Plaintiff. However, CR files are beyond the scope of what should be protected. When focusing our discussion precisely to CR files, the City has not presented any

5

persuasive argument as to the validity of keeping the officers' CR files secrete. Most of the officers involved in the present lawsuit have been named in prior lawsuits, newspaper articles and reports and thus allegations of their prior bad acts are already public and well documented. As far as protecting the officers' reputation, disclosing the contents of the CR files cannot possibly affect their reputation any more than what is already known about many of the defendants.

Furthermore, other courts have held that the possible harm to the defendant officers' reputation is a factor that should not hold much weight in defining "good cause" given their public status.

> "Police officers are public servants sworn to serve and protect the general public. The general public's health and safety are at issue whenever there are serious allegations of police torture. The manner in which such allegations are investigated is a matter of significant public interest. The real issue for this Court to decide is whether the specific harm to the defendants outweighs the significant public interest in the disclosure of the disputed files…..Privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny. Performance of police duties and investigations of their performance is a matter of great importance. Much of the Goldston Report, the 10 designated CR files and the Police Foundation Memorandum are already a matter of public record. This has led to many articles being published about the allegations of police torture.
> *Wiggins v. Burge*, 173 F.R.D. 226 (N.D. Ill. 1997).

The City also has failed to provide any detail as to the burden redaction will entail other than to say that the process is "defendants' attorneys would be required to perform a page by page analysis of every CR file requested in discovery in order to determine if each individual page contained confidential information, then mark each page appropriately." This assertion of burden does not constitute good cause for a blanket confidentiality designation given that defendants' attorneys propose going through each page any way to redact personal information.

Furthermore, where the documents at issue are government records and available to the public pursuant to state freedom of information laws, there is no basis for a judicial order barring

6

disclosure. The Northern District's Model Protective Order embodies this commonsense judgment. The model order defines a limited body of documents as confidential and states: "Information or documents that are available to the public may not be designated as Confidential Information." Local Rule Form 26.2 at ¶ 2. Defendant's proposed protective order strikes out this provision in its effort to shield public documents from public dissemination. *See* Mot. (Dkt. # 92) and Ex. B. at ¶ 2.

While there was previously uncertainty as to the status of CR files, the Illinois Appellate Court made clear that these documents are public records and not exempt from disclosure under the Illinois Freedom of Information Act (IFOIA). *Kalven v. City of Chicago*, 2014 IL App. (1st)121846. Since the *Kalven* ruling, federal district courts in Illinois have increasingly refused to issue sweeping protective orders for CR files. *See Sierra v. Guevara, et al.*, No. 18-cv-3029 (N.D. Ill. June 7, 2019), Doc. No. 118 at 3; *Jackson v. City of Chicago*, No. 14-cv-6746, 2017 WL 5478303, at *2 (N.D. Ill. Nov. 14, 2017) ("In the wake of *Kalven*, several judges in this district have ruled that a blanket order forbidding dissemination of the contents of CR files to third parties cannot be justified."); *Jacobs v. City of Chicago*, No. 14-cv-5335, 2015 WL 231792, at *2 (N.D. Ill. Jan. 16, 2015) ("Considering *Kalven*'s interpretation of IFOIA, this court agrees with Plaintiff that marking entire CR files confidential . . . is unjustified."); *Sokol v. City of Chicago*, No. 13-cv-5335, 2014 WL 5473050, at *3 (N.D. Ill. Oct. 29, 2014) ("Defendants have failed to show good cause for treating entire CR files as confidential by default."); *Kuri v. City of Chicago*, No. 13-cv-1653 (N.D. Ill. June 6, 2014), Doc. No. 77 at 3 ("Because CR files are now subject to public inspection under IFOIA, Defendants cannot meet its burden of showing 'good cause' for including a clause for CR files in the protective order."); *Viramontes v. City of Chicago*, No. 13-cv-6251, 2014 WL 12775316, at *2 (N.D. Ill. June 2, 2014) ("Categorically considering confidential the entirety of contents found in a CR file is inconsistent with the stance taken by the

Illinois appellate courts."). In *Sierra*, Judge Weisman found that "[w]ith Rule 26's requirement for good cause and this district's post-*Kalven* precedent in mind . . . Defendants have failed to justify an indiscriminate confidential designation for [CR] files under the protective order." No. 18-cv- 3029 at 3. In light of *Kalven*'s IFOIA holding, "the question is not whether Plaintiff will receive these documents, but how." *Id.*

### B.     Defendants proposed protective order will prejudice Plaintiff's investigation.

Defendants' proposed protective order attempts to offer a solution to disclosing information contained in the CR files to individuals interviewed in the course of litigation. Defendants seem to acknowledge the importance of Plaintiff to be able to disclose the CR files to witnesses to conduct any meaningful interview of those potential witnesses  Defendants proposed protective order would require that any potential witness that Plaintiff seeks to interview would be required to sign an "Agreement to be Bound" before they can be shown the contents of any CR files. *Def. Ex. B, Attachment A.*  In practicality, this does not do much to ease the burden on Plaintiff's ability to interview these essential witnesses.  Many of these witnesses will have information essential to Plaintiff regarding the defendant officers' prior bad acts and the City's response to those bad acts.  In fact, this will form an important basis of Plaintiff's *Monell* claim. These witnesses, who have already alleged abuse by the government, will undoubtedly have mistrust for the legal system, including attorneys and their investigators.  Whatever success Plaintiff's attorney and investigator has in establishing a rapport with these witnesses while come to a dead end once the witness is required to sign an "Agreement to be Bound".  Obviously, the "Agreement to be Bound" is enforceable through this Court's contempt powers.  Once that is rightfully explained to any of these witnesses, it is foreseeable that they would no longer wish to cooperate.  After all, what do they have to gain by voluntarily subjecting themselves to potential

8

contempt of this Court? No matter how helpful they may want to be to shedding light on their allegations of police misconduct, it may be a bit much to ask them to put themselves in potential danger of contempt to do so. Defendants' proposed "Agreement to be Bound" will have a chilling effect on the flow of information during Plaintiff's investigation.

### C. Proposed Inclusion of Paragraph 6 is not warranted

As explained above, Plaintiff has no objection to treating personal identifying information as confidential, and the model protective order already permits such a designation. Ex. A At ¶2. In their proposed paragraph 6, Ex. B. Defendants propose to redact information from documents entirely before tendering to Plaintiff's counsel. This redaction can be problematic given that Defendants will have unilateral access to identifying information of witnesses and thus can identify and locate those witnesses, while Plaintiff does not have the information and cannot locate the witnesses.

Again, Defendants do not establish good cause for such redactions. In fact, they mention officer safety and the Juvenile Court Act. Plaintiff has no objection to redactions necessary to protect officer safety. However, the provisions of Illinois that Defendants cite only require redaction of victim names.

### D. Plaintiff objects to defendants' removal of Paragraph 8 of the Model Order

The model order provides in paragraph 8 that parties cannot withhold information in discovery based on an assertion that the information requires greater protection that that provided by the protective order, unless the party moves for an order calling for greater protection. *Ex. A* Defendants have deleted that provision. The Rules plainly provide that parties are not permitted to withhold discoverable information without asserting a claim or privilege. Rule 26(b)(5), or securing a Court order, Rule 26(c). Paragraph 8 of the model order makes clear that the protective order does not modify these background rules. There is no reason to delete that straightforward statement of

law.

### E. Plaintiff's counter proposed modifications would alleviate any burden placed upon Defendants' counsels.

If this Court is persuaded to modify the Model Protective Order, Plaintiff offers a counter proposed protective order. *See Ex. C.* Following Defendants' proposed solution to disclose information contained in the CR files to potential witnesses, Plaintiff would be required to have such witness agree to and sign an "Agreement to be bound" before such disclosure could take place. As expressed above, this proposal will certainly be problematic and have a chilling effect. If such witness refuses to sign the "Agreement to be bound" and be shown the CR file, any interview would be ineffective. At that point, the burden would shift to Plaintiff to ask this Court to lift such provision so that the interview could take place. Essentially, by summarily defining the CR files as "Confidential Information" Plaintiff would bear the burden of establishing why the CR files should be able to be disclosed. This would improperly relieve the party seeking the protection, in this case Defendants, from their burden of showing why on a case-by-case basis the disclosure of each CR file would harm them. Since Defendants are seeking this protection the burden of validating such request should remain with them.

Plaintiff proposes that the CR files remain **not** designated as "Confidential" prior to the City tendering the information to Plaintiff. Plaintiff would then narrow down what information he seeks to disclose to potential witnesses and present that information to Defendants' counsel. Defendants' counsel will then have three (3) business days to try to come to an agreement with Plaintiff or file a motion for protective order. This approach will vastly reduce the scope of material that Defendants' attorneys would need to redact. For example, if the City turns over 100 CR files, Plaintiff will more than likely narrow the files that it intends to use to 25 or so. Plaintiff will identify those 25 files and present them to Defendants' counsel. At that point Defendants only need to concern themselves

with 25 files. Obviously, Defendants' counsel would be welcome to discuss and resolve potential issues during the three-day attorney review period. More than likely the Court's intervention would remain unnecessary. To the extent that Court intervention is necessary, the burden will properly remain on Defendants to establish the need of a protective order. If no objection to disclosure is made within the three-day attorney review period, Plaintiff would be allowed to disclose the information disclosed in the CR file. *See Ex. C ¶ 9 Plaintiff's counter proposal to modifications.*

Plaintiff has discussed this approach with Defendants' attorney during previous phone conferences and remains unclear if Defendants object to this approach.

## CONCLUSION

For these reasons, the court should deny the City's Motion for Entry of Confidentiality Protective Order. Plaintiff requests that the Court enter the Model Protective Order. In the alternative, Plaintiff requests that the Court enter Plaintiff's counter-proposed version of the protective order, which permits public disclosures of CR files.

Respectfully submitted,

**JAMES GIBSON**

By: /s/ Ramon A. Moore
Plaintiff's Attorney

Ramon A. Moore
Law Office of Ramon A. Moore
150 N. Michigan Ave.
Suite 2800
Chicago, Illinois 60601
(312) 332-5134
ramonmoore@ramonmoorelaw.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on June 22, 2020 he served the foregoing motion upon all counsel who have filed appearances in these actions via CMECF.

/s/ Ramon A. Moore