**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAMES GIBSON, )
)
Plaintiff, )
)
vs. )   Case No. 19-cv-04152
)
CITY OF CHICAGO, et al., )   Honorable Sara L. Ellis
)
Defendants. )

<u>**DECLARATION OF ANDREW M. STROTH**</u>

I, Andrew M. Stroth, declare under penalty of perjury of the laws of the United States:

1.      I am competent to testify and have personal knowledge about what is written in this declaration.

2.      I am counsel for James Gibson, the Plaintiff in the above-captioned matter.

3.      On September 28, 2020, Mr. Gibson propounded written discovery requests to the Defendants. The Defendants have responded to those requests. More than a week ago, the parties exchanged their initial production of documents.

4.      Attached to my declaration as Exhibit A is a true and correct copy of Plaintiff's Requests for Admission that Mr. Gibson propounded on the Defendants, including the City of Chicago, on September 28, 2020.

5.      Attached to my declaration as Exhibit B is a true and correct copy of the City of Chicago's October 27, 2020 response to Plaintiff's Requests for Admission. In the City's response, it "Denied" without any qualification the request to admit that "Between 1973 and 2006, officers under Jon Burge's Command at Areas 2 and 3 subjected many suspects, particularly African Americans, to mental, physical, and psychological torture." In response to the same Request for

Admission No. 1, Defendants John Byrne, Anthony Maslanka, and John Paladino all declined to answer the request by invoking their Fifth Amendment rights.

6.      On December 9, 2020, I wrote to counsel for the City of Chicago to raise the concern that the City's categorical and unqualified denial of Request for Admission No. 1 does not comply with Rule 36's requirement that "when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest," Fed. R. Civ. P. 36(a)(4), given that the City has previously conceded the facts contained in that request.  *See* Letter from Andrew M. Stroth to Paul A. Michalik (December 9, 2020), attached as Exhibit C.

7.      On January 7, 2021, counsel for James Gibson and the City of Chicago held a meet-and-confer teleconference to discuss the issues that I had raised in my December 9, 2020 letter about the City's response to Request for Admission No. 1. During that meeting, the City's counsel stated that the City refuses to modify or qualify in any way its response to Request for Admission No. 1, and that the City believes such an unqualified denial is proper under Rule 36. The City's counsel refused to identify whether or not there are any facts contained within Request for Admission No. 1 that are true.

8.      I am aware of numerous cases that involved allegations of torture and/or abuse by Jon Burge and/or the officers under his command in Areas 2 or 3, including the following:

- *Caine v. City of Chicago et al.*, No. 1:11-cv-08996 (N.D. Ill.)

- *Kitchen v. Burge*, No. 1:10-cv-04093 (N.D. Ill.)

- *Reeves et al v. Burge*, No. 1:10-cv-01989 (N.D. Ill.)

- *Smith v. Burge et al.*, No. 1:16-cv-03404 (N.D. Ill.)

- *Kluppelberg v. Burge*, No. 1:13-cv -03963 (N.D. Ill.)

- *Tillman v. Burge*, No. 1:10-cv-04551 (N.D. Ill.)

- *Patterson v. Burge*, No. 1:03-cv-04433 (N.D. Ill.)

- *Hobley v. Burge, et al.*, No. 1:03-cv-3678 (N.D. Ill.)

- *Orange v. Burge, et al.*, No. 1:04-cv-00168 (N.D. Ill.)

9.     Attached as Exhibit D is a true and correct copy of the following Associated Press story: Herbert G. McCann, AP News, *Former Chicago police commander linked to torture dead at 70* (Sept. 19, 2018), https://apnews.com/article/677d71113f73437f962390e77be5b827.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: January 18, 2021.                    */s/ Andrew M. Stroth*
                                                                Andrew M. Stroth
                                                                Action Injury Law Group, LLC
                                                                191 North Wacker Drive, Suite 2300
                                                                Chicago, IL 60606
                                                                (844) 878 4529
                                                                *astroth@actioninjurylawgroup.com*

# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-04152 |
| | ) | |
| CITY OF CHICAGO, et al, | ) | Honorable Sara L. Ellis |
| | ) | |
| Defendants. ) | | JURY TRIAL DEMANDED |

PLAINTIFF'S REQUEST FOR ADMISSION
<u>TO ALL DEFENDANTS</u>

Plaintiff James Gibson, by his undersigned attorneys, propounds the following Request for Admission pursuant to Federal Rule of Civil Procedure 36 upon all Defendants to be answered within thirty days after service hereof.

### **DEFINITIONS**

1.      "Defendant" and "You/r" shall refer to any of the Defendants, as well as its counsel and any of its present or former divisions, subsidiaries, officers, directors, affiliates, employees, consultants, experts, investigators, representatives, agents or other Persons acting on any of their behalf. The term the "Department" shall refer to the Chicago Police Department.

2.      "Relate", "relating to" or "regarding" shall mean directly or indirectly mentioning or describing, pertaining to, being connected with, reflecting upon, or having any logical or factual connection with a stated subject matter.

3.      "Communications" shall refer to any form of communication, including, for example, letters, memos, e-mails, notes, or the like.

4.      "Person" shall refer to any individual, corporation, partnership, organization, or any other entity.

5.      "And" and "or" mean "and/or" so that the terms are given their broadest possible meaning. In construing a request, the singular shall include the plural and the plural shall include singular, and use of a masculine, feminine or neuter pronoun shall not exclude any of the others. The past tense includes the present and the present tense includes the past, where the clear meaning is not destroyed by the change.

6.      "Complaints" shall refer to any complaint or criticism relating in any manner to a police officer's job performance, whether ultimately deemed (un)sustained, (un)founded, or any other disposition. This includes, but is not limited to, all citizen complaints made to the Department's Office of Professional Standards, Internal Affairs Division, the Independent Police Review Authority ("IPRA") and/or the Civil Office of Police Accountability ("COPA").

7.      Unless otherwise stated, the time frame for Plaintiff's discovery requests shall include the period encompassing the events described in Plaintiff's complaint, which began in 1973 and continue through to the present day. This time frame shall govern other discovery served in this case, including any FRCP 30(b)(6) depositions.

8.      The term "Incident" shall refer to the homicide of Lloyd Benjamin and Hunter Wash at 1119 W. 58th Street, Chicago, Illinois on December 22, 1989.

9.      The term "Official File" shall refer to the file containing the Official Reports as that term was defined in Palmer v. City of Chicago, 576 F. Supp. 1067 (N.D.Il1. 1983), rev'd on other grounds, 755 F.2d 560 (7th Cir. 1985). In summary, the Official File for the Incident is the file which is permanently maintained by the Department's Record Division.

10.      The term "Street File" shall have the same meaning ascribed to it in Jones v. City of Chicago. 856 F.2d 985 (7th Cir. 1988) and Palmer v. City of Chicago. 576 F. Supp. 1067 (N.D.Ill. 1983). The files have also variously been referred to as "running files"; files maintained

on "clipboards"; and/or "officer files". To be clear, the term "Street Files" refers to all of the Documents from these files, including any detective notes, memos and Witness Statements contained therein.

11.     The term "Witness Statement" shall refer to information provided to a detective by a witness, or potential witness, relating to the Incident and the resulting investigation. A witness statement can be oral or written.

12.     The term "Memo" shall refer to the commonly understood definition of the term "Memo", including but not limited to Departmental "To/From Memos"; communications with third parties; or intra-Departmental communications

13.     The term "Consideration" refers to any advantage or benefit that is given to someone. Consideration includes but is not limited to deals on pending cases, paying any money whatsoever to a witness, or providing other benefits to a witness.

14.      "Defendant Officers" shall refer to the Defendant police officers Anthony Maslanka, William Moser, John E. Byrne, Louis Caesar, John Paladino, Henry J. Leja, Jerome Rusnak, Victor Breska, John McCann, Phillip Collins, John O'Mara, and John Burge.

15.     "Individual Defendants" shall refer to Defendant police officers Anthony Maslanka, William Moser, John E. Byrne, Louis Caesar, John Paladino, Henry J. Leja, Jerome Rusnak, Victor Breska, John McCann, Phillip Collins, John O'Mara, and John Burge.

16.     The terms "policy" and/or "practice" shall be construed in the manner they are used in the caselaw surrounding municipal liability under *Monell v. Department of Soc. Serv. of New York*, 436 U.S. 658 (1978) and the cases that follow it. For purposes of Plaintiff's discovery requests, these terms shall refer to the policies and practices in place at the time period surrounding the Sanchez homicide investigation.

17.     The term "lineup" shall mean any photo, sketch, or live in-person lineup in which a suspect or other person of interest is included among a group of people viewed by a witness.

## REQUESTS TO ADMIT

1.     Between 1973 and 2006, officers under Jon Burge's Command at Areas 2 and 3 subjected many suspects, particularly African Americans, to mental, physical, and psychological torture.

**RESPONSE:**

2.     From December 27, 1989 through January 2, 1990, Anthony Maslanka worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE:**

3.     From December 27, 1989 through January 2, 1990, Defendant Chicago police officer William Moser worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE:**

4.     From December 27, 1989 through January 2, 1990, Defendant Chicago police officer John E. Byrne worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE:**

5.     From December 27, 1989 through January 2, 1990, Defendant Chicago police officer Louis Caesar worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE:**

6.     From December 27, 1989 through January 2, 1990, Defendant Chicago police

officer John Paladino worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE:**

7. From December 27, 1989 through January 2, 1990, Defendant Chicago police officer Henry J. Leja worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE:**

8. From December 27, 1989 through January 2, 1990, Defendant Chicago police officer Jerome Rusnak William worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE:**

9. From December 27, 1989 through January 2, 1990, Defendant Chicago police officer Victor Breska worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE:**

10. From December 27, 1989 through January 2, 1990, Defendant Chicago police officer John McCann worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE:**

11. From December 27, 1989 through January 2, 1990, Defendant Chicago police officer Phillip Collins worked in the Chicago Police Department's "Area 3" under the command

of Jon Burge.

**RESPONSE:**

      12.     From December 27, 1989 through January 2, 1990, Defendant Chicago police officer John O'Mara worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE:**

  September 28, 2020

                                         /s/ Andrew M. Stroth

                                       Andrew M. Stroth
                                       Action Injury Law Group, LLC
                                       191 North Wacker Drive
                                       Suite 2300
                                       Chicago, IL 60606
                                       (844) 878 4529
                                       astroth@actioninjurylawgroup.com

                                       ATTORNEY FOR PLAINTIFF

**PROOF OF SERVICE**

I hereby certify that true and correct copies of the foregoing were caused to be

served on September 28, 2020 upon the following individuals by email:

<u>**Attorneys for Defendants**</u>

Hale & Monico, LLC
53 West Jackson
Ste 337
Chicago, IL 60604
(312) 870-6905

Andrew Hale
ahale@ahalelaw.com

Barrett Boudreaux
bboudreaux@ahalelaw.com

Shawn W. Barnett
sbarnett@halemonico.com

Leinenweber Baroni &
Daffada, LLC
120 N. LaSalle Street Ste 2000
Chicago, IL 60602
(312 )663-3003

Thomas More Leinenweber
thomas@ilesq.com

Kevin Edward Zibolski
kevin@ilesq.com

Michael John Schalka
mjs@ilesq.com

Reiter Burns LLP
311 S. Wacker Drive
Suite 5200
Chicago, IL 60606
312-982-0090

Terrence M. Burns
tburns@reiterburns.com

Paul A. Michalik
pmichalik@reiterburns.com

Daniel M. Noland
dnoland@reiterburns.com

Katherine C. Morrison
kmorrison@reiterburns.com

Daniel J. Burns
dburns@reiterburns.com

/s/ Andrew M. Stroth

Andrew M. Stroth
Action Injury Law Group, LLC
191 North Wacker Drive
Suite 2300
Chicago, IL 60606
(844) 878 4529
astroth@actioninjurylawgroup.com

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  19 C 4152 |
| | ) | |
| CITY OF CHICAGO, a municipal | ) | Judge Sara L. Ellis |
| corporation et al., | ) | |
| | ) | Magistrate M. David Weisman |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S RESPONSE TO PLAINTIFF'S REQUEST FOR**
**ADMISSION TO ALL DEFENDANTS**

Defendant, the City of Chicago ("City"), by its attorneys, Reiter Burns LLP, for its response to plaintiff's request for admission to all defendants, states:

**REQUESTS TO ADMIT**

1.      Between 1973 and 2006, officers under Jon Burge's Command at Areas 2 and 3 subjected many suspects, particularly African Americans, to mental, physical, and psychological torture.

**RESPONSE**:  Denied.

2.      From December 27, 1989 through January 2, 1990, Anthony Maslanka worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE**:  The City admits that, from December 27, 1989 through January 2, 1990, Jon Burge was assigned as commander of Area 3 of the Chicago Police Department and that, from December 27, 1989 through January 2, 1990, Officer Anthony Maslanka was assigned to Area 3 of the Chicago Police Department.

3.      From December 27, 1989 through January 2, 1990, Defendant Chicago police officer William Moser worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

1

**RESPONSE**: The City admits that, from December 27, 1989 through January 2, 1990, Jon Burge was assigned as commander of Area 3 of the Chicago Police Department and that, from December 27, 1989 through January 2, 1990, Officer William Moser was assigned to Area 3 of the Chicago Police Department.

4.     From December 27, 1989 through January 2, 1990, Defendant Chicago police officer John E. Byrne worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE**: The City admits that, from December 27, 1989 through January 2, 1990, Jon Burge was assigned as commander of Area 3 of the Chicago Police Department and that, from December 27, 1989 through January 2, 1990, Officer John Byrne was assigned to Area 3 of the Chicago Police Department.

5.     From December 27, 1989 through January 2, 1990, Defendant Chicago police officer Louis Caesar worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE**: The City admits that, from December 27, 1989 through January 2, 1990, Jon Burge was assigned as commander of Area 3 of the Chicago Police Department and that, from December 27, 1989 through January 2, 1990, Officer Louis Caesar was assigned to Area 3 of the Chicago Police Department.

6.     From December 27, 1989 through January 2, 1990, Defendant Chicago police officer John Paladino worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE**: The City admits that, from December 27, 1989 through January 2, 1990, Jon Burge was assigned as commander of Area 3 of the Chicago Police Department and that, from December 27, 1989 through January 2, 1990, Officer John Paladino was assigned to Area 3 of the Chicago Police Department.

7.     From December 27, 1989 through January 2, 1990, Defendant Chicago police officer Henry J. Leja worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE**: The City admits that, from December 27, 1989 through January 2, 1990, Jon Burge was assigned as commander of Area 3 of the Chicago Police Department and that, from December 27, 1989 through January 2, 1990, Officer Henry Leja was assigned to Area 3 of the Chicago Police Department.

8.      From December 27, 1989 through January 2, 1990, Defendant Chicago police officer Jerome Rusnak William [*sic*] worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE**: The City admits that, from December 27, 1989 through January 2, 1990, Jon Burge was assigned as commander of Area 3 of the Chicago Police Department and that, from December 27, 1989 through January 2, 1990, Officer Jerome Rusnak was assigned to Area 3 of the Chicago Police Department.

9.      From December 27, 1989 through January 2, 1990, Defendant Chicago police officer Victor Breska worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE**: The City admits that, from December 27, 1989 through January 2, 1990, Jon Burge was assigned as commander of Area 3 of the Chicago Police Department and that, from December 27, 1989 through January 2, 1990, Officer Victor Breska was assigned to Area 3 of the Chicago Police Department.

10.     From December 27, 1989 through January 2, 1990, Defendant Chicago police officer John McCann worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE**: The City admits that, from December 27, 1989 through January 2, 1990, Jon Burge was assigned as commander of Area 3 of the Chicago Police Department and that, from December 27, 1989 through January 2, 1990, Officer John McCann was assigned to Area 3 of the Chicago Police Department.

11.     From December 27, 1989 through January 2, 1990, Defendant Chicago police officer Phillip Collins worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE**: The City admits that, from December 27, 1989 through January 2, 1990, Jon Burge was assigned as commander of Area 3 of the Chicago Police Department and that, from December 27, 1989 through January 2, 1990, Officer Phillip Collins was assigned to Area 3 of the Chicago Police Department.

12. From December 27, 1989 through January 2, 1990, Defendant Chicago police officer John O'Mara worked in the Chicago Police Department's "Area 3" under the command of Jon Burge.

**RESPONSE**: The City admits that, from December 27, 1989 through January 2, 1990, Jon Burge was assigned as commander of Area 3 of the Chicago Police Department and that, from December 27, 1989 through January 2, 1990, Officer John O'Mara was assigned to Area 3 of the Chicago Police Department.

Respectfully submitted,

MARK A. FLESSNER

Corporation Counsel of the City of Chicago

By: /s/ Paul A. Michalik
Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Reiter Burns LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606

*Attorneys for Defendant City of Chicago*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing Defendant City of Chicago's Responses to Plaintiff's Request for Admission to All Defendants to be upon the following counsel of record via email on October 27, 2020.

**_Attorneys for Plaintiff_**
Andrew M. Stroth
Carlton Odim
Action Injury Law Group LLC
191 N. Wacker Dr.
Suite 2300
Chicago, IL 60606
(312) 771-2444
astroth@actioninjurylawgroup.com
carlton@actioninjurylawgroup.com

**_Attorney for Defendants Victor Breska, Henry J. Leja, William Moser, John Paladino, Jerome Rusnak, Louis Caesar, Susan McCann as Special Representative for Estate of John McCann, Phillip Collins as Special Representative for Estate of Phillip Collins, and Pam O'Mara as Special Representative for Estate of John O'Mara_**
Andrew M. Hale
Shawn W. Barnett
Barrett Boudreaux
Hale & Monico LLC
53 W. Jackson Blvd., Suite 330
Chicago, IL 60604
ahale@halemonico.com
sbarnett@halemonico.com
bboudreaux@halemonico.com

**_Attorney for Defendants John Byrne, Anthony Maslanka, John Paladino and Estate of Jon Burge_**
Thomas M. Leinenweber
James V. Daffada
Michael J. Schalka
Kevin E. Zibolski
Megan K. McGrath
Leinenweber Baroni & Daffada, LLC
120 N. LaSalle St., Suite 2000
Chicago, IL 60602
thomas@ilesq.com
jim@ilesq.com
mjs@ilesq.com
kevin@ilesq.com
mkm@ilesq.com

s/ Paul A. Michalik

# Exhibit C



**ACTION INJURY**

L A W   G R O U P

**CONFIDENTIAL**

December 9, 2020

Paul A. Michalik
Terrence M. Burns
Daniel M. Noland
Special Assistant Corporation Counsel
to the City of Chicago
Reiter Burns LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606

Dear Counsel,

     I am writing regarding *James Gibson v. City of Chicago et al.*, No. 19 Civ. 4152 (N.D. Ill.). As you are aware, this is a federal civil rights action filed by Mr. James Gibson, who was tortured in 1989 by Chicago police officers under Jon Burge's command into confessing to a murder that he did not commit. Mr. Gibson tragically spent 29 years and 4 months in prison before his release in April of 2019 when his prior conviction was vacated. In this action, Mr. Gibson seeks to hold accountable the City of Chicago and the officers who tortured him for the barbaric, unconstitutional practices the City and Burge routinely unleashed on the African-American community.

     I am writing specifically to raise the concern that City of Chicago's response to Gibson's First Request for Admission ("Request" or "Request No. 1") does not comply with Rule 36. We therefore request that the City amend its response to Request No. 1 within 14 days to avoid motion practice. If the City does not intend to amend its response within that timeframe, we should schedule a call to meet and confer over this dispute. We also ask the City to identify the factual basis for denying the Request in its entirety. We will reach out to you to meet and confer at a later date about our concerns with the City's remaining responses to the First Set of Requests for Admissions and the City's other discovery responses.

     Request No. 1 asks the City to admit that "[b]etween 1973 and 2006, officers under Jon Burge's Command at Areas 2 and 3 subjected many suspects, particularly African Americans, to mental, physical, and psychological torture." The City denied this Request for Admission *without qualification or explanation.*

     As you and the City know, there is a mountain of evidence that African-American men were mentally, physically, and psychologically tortured by officers under Jon Burge's Command

Action Injury Law Group, LLC
**T** 844.878.4LAW (4529)
   191 North Wacker Drive, Suite 2300
**C** 312.771.2444
   Chicago, IL 60606
**F** 312.641.6866



**ACTION INJURY**
L A W  G R O U P

in Areas 2 and 3 between 1973 and 2006.

That evidence includes an ordinance in which "the City of Chicago acknowledge[d] that former Chicago Police Commander Jon Burge and detectives under his command systematically engaged in acts of torture, physical abuse and coercion of African American men and women at Area 2 and 3 Police Headquarters from 1972 through 1991"; that the "torture . . . included electrically shocking individuals on their genitals, lips and ears," "suffocating individuals with plastic bags," "mock execution[s] with guns," "physical beatings with telephone books and rubber hoses," and "and other forms of physical and psychological abuse"; and that "the City of Chicago must officially acknowledge the torture that occurred in the City" under Burge's command. City of Chicago Ordinance, Reparations for the Chicago Police Torture Survivors (May 6, 2015).

In addition, a report by investigators for the Chicago Police Department's Office of Professional Standards made the same finding—that abuse of suspects in Area 2 "did occur" and "was systematic," including "beating[s]," "psychological techniques and planned torture." Sanders-Goldston Special Project Conclusion Reports at 6 (The Burge Investigation) (Nov. 2, 1990). This report analyzed a 10-year period that included the year in which Mr. Gibson was tortured into making a false confession.

The same egregious facts about torture of suspects in Areas 2 and 3 have been routinely recognized by federal and state courts in Illinois. *See* First Am. Compl. ¶ 97 (collecting cases). As Judge Shadur explained in 1999, "[i]t is now common knowledge that in the early to mid–1980s Chicago Police Commander Jon Burge and many officers working under him regularly engaged in the physical abuse and torture of prisoners to extract confessions." *U.S. ex rel. Maxwell v. Gilmore*, 37 F. Supp. 2d 1078, 1094 (N.D. Ill. 1999) (collecting cases).

Because of this evidence of which the City and its attorneys have actual knowledge, it is not possible for the City or its counsel to deny the entirety of Mr. Gibson's First Request for Admission. To do so ignores your obligation to respond to a request for admission in good faith and accurately, under Rule 36 and Rule 11 of the Federal Rules of Civil Procedure.

Rule 36 provides that:

A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Action Injury Law Group, LLC

**T** 844.878.4LAW (4529)

191 North Wacker Drive, Suite 2300

**C** 312.771.2444

Chicago, IL 60606

**F** 312.641.6866

www.actioninjurylawgroup.com



**ACTION INJURY**
L A W   G R O U P

Fed. R. Civ. P. 36(a)(4).

Here, the City cannot deny Request No. 1 in good faith without qualification or further explanation. If the City does not withdraw its denial in its entirety, at the very least, the rule requires that the City "'specify'" what part of the request can be admitted and otherwise qualify or deny the rest of the request. *See Holthaus v. United Abrasives, Inc.*, No. 07 Civ. 136, 2007 WL 4198270, at *1 (S.D. Ill. Nov. 26, 2007) (quoting Fed. R. Civ. P. 36(a)(4)); *Advantage Industial Sys., LLC v. Aleris Rolled Prod., Inc.*, No. 18 Civ. 00113, 2020 WL 4432415, at *16 (W.D. Ky. July 31, 2020) (stating that "[t]he word 'specify,' as used here, envisions that a simple one-word denial may not be sufficient, and the responding party will provide detail where needed," and citing *In re Wahlie*, No. 10-31680, 2011 WL 6757006, at *3 (Bankr. N.D. Ohio Dec. 23, 2011) (noting that "if a party fails to provide a detailed response under Rule 36 where one is needed, sanctions may be imposed.")). Moreover, where, as here, a party's own statements are inconsistent with an "unequivocal" denial of a request for admission, the party must qualify its denial to provide sufficient clarity on the subject. *Holthaus*, 2007 WL 4198270, at *1.

As you should be aware, an unqualified denial of a request for admission that is later proven to be true is sanctionable by the Court. *See Loudermilk v. Best Pallet Co., LLC*, No. 08 Civ. 06869, 2009 WL 3272429, at *2 (N.D. Ill. Oct. 8, 2009) ("If a party fails to admit an assertion set forth in a Rule 36 request to admit and the requesting party later proves a document to be genuine or an assertion to be true, the responding party may have to pay the reasonable expenses, including attorney's fees, incurred in making that proof.").[1]

In light of the overwhelming evidence that Black men were tortured in Areas 2 and 3 over the course of decades (including the time period in which Mr. Gibson was tortured), we fail to understand how the City of Chicago and its attorneys can unequivocally deny Request No. 1. Accordingly, we request that the City amend its response to Request No. 1 to comply with Rule 36's requirement that the City respond in good faith by admitting or qualifying its denial. Please do so within 14 days. If the City does not do so, my client reserves his right to seek sanctions at the appropriate time for what can only be regarded as a knowing false unqualified denial.

---

[1] *Accord Vukadinovich v. Griffith Pub. Sch.* No. 02 Civ. 472, 2008 WL 5141388, at *5 (N.D. Ind. Dec. 5, 2008) ("If the requesting party can prove the inconsistencies" between the evidence and a response to a request for admission "during summary judgment or at trial, he may move the court for reasonable expenses."); *Owners Ins. Co. v. Charleston Glass & Mirror, Inc.*, No. 14 Civ. 3649, 2015 WL 13817635, at *1 (D.S.C. July 20, 2015) (stating that although an unqualified denial may "comply with Rule 36," a court may impose sanctions for "false answers" to requests for admission); *Firestone v. Hawker Beechcraft Int'l Serv. Co.*, No. 10 Civ. 1404, 2012 WL 899270, at *10 (D. Kan. Mar. 16, 2012) (collecting cases providing that "the party improperly refusing the admission [must] pay the expenses of the other side in making the necessary proof at trial"); *A&V Fishing, Inc. v. Home Ins. Co.*, 145 F.R.D. 285, 287–88 (D. Mass. 1993) ("a false answer to a request for admission may result in the imposition of sanctions under either or both Rules 11 and 37(c)").

Action Injury Law Group, LLC

**T** 844.878.4LAW (4529)
191 North Wacker Drive, Suite 2300
**C** 312.771.2444
Chicago, IL 60606
**F** 312.641.6866

www.actioninjurylawgroup.com



## ACTION INJURY
### LAW GROUP

Moreover, the City had the choice to respond to the Request by stating that it lacks the information necessary to respond, but failed to do so. Thus, to continue its denial, the City must possess actual knowledge, based on a reasonable inquiry, that the entirety of the Request is false. Accordingly, we ask that you identify what information or documents support the City's unqualified denial of the Request. We trust that if such information or documents exist that you will have no problem providing them to us. Indeed, for decades the City has collected and possessed information about the torture that Burge and the "Midnight Crew" used to elicit false confessions from African-American individuals like Mr. Gibson. Please provide this information within 14 days.

If you would like to discuss this issue, please feel free to call or email me directly at (312) 735 4045 or astroth@actioninjurylawgroup.com.


Sincerely,


/s/ Andrew M. Stroth

Action Injury Law Group, LLC
**T** 844.878.4LAW (4529)
191 North Wacker Drive, Suite 2300
**C** 312.771.2444
Chicago, IL 60606
**F** 312.641.6866

www.actioninjurylawgroup.com

# Exhibit D

Former Chicago police commander linked to torture dead at 70

_____

**NewsRoom**

9/19/18 AP Nat'l News 22:48:29

AP National News
Copyright (c) 2018 AP

September 19, 2018

## Former Chicago police commander linked to torture dead at 70

### HERBERT G. McCANN, Associated Press

CHICAGO

CHICAGO (AP) — Former Chicago police Cmdr. Jon Burge, who was accused of torturing suspects in his South Side police district but was never prosecuted for the alleged crimes, has died, a Florida funeral home confirmed Wednesday. He was 70.

Burge led a "midnight crew" of rogue detectives accused of torturing more than 100 suspects, mostly black men, from 1972 to 1991, in order to secure confessions. His alleged victims were shocked with cattle prods, smothered with typewriter covers and had guns shoved in their mouths.

Burge was fired in 1993 and sentenced to prison in 2011 for lying in a civil case about his actions. It was too late to charge him criminally on the torture charges.

Sarah Zipperer of Zipperer's Funeral Home in Ruskin, Florida, on Wednesday would confirm only that the business was handling his remains. She refused to give the cause or date of his death, citing the wishes of his family.

In 2015, the city of Chicago agreed to pay $5.5 million in reparations to 57 Burge victims. G. Flint Taylor, a civil rights attorney and lawyer for some of the men, estimates the price tag for all Burge-related cases is about $132 million.

The allegations against Burge and his men even helped shape Illinois' debate over the death penalty. Then-Gov. George Ryan released four condemned men from death row in 2003 after Ryan said Burge extracted confessions from them using torture. The allegations of torture and coerced confessions eventually led to a moratorium on executions in Illinois. The state officially abolished the death penalty in 2011.

Word of Burge's death came amid the murder trial of a white Chicago police officer in the fatal shooting of black teenager Laquan McDonald. Officer Jason Van Dyke is accused of shooting McDonald 16 times as he walked away from police. It is considered one of the biggest trials in recent Chicago history.

The possibility of such a trial would have seemed remote during Burge's time on the force.

"With the passing of Jon Burge, we must reflect on the dark legacy that he embodied," said Lori Lightfoot, a former federal prosecutor who once led a civilian body that oversees disciplinary cases involving officers and a candidate for Chicago mayor. "So many lives shattered, and a horrible stain on the legitimacy of policing that resonates today."

Craig Futterman, a University of Chicago law professor, said Burge's actions were despicable, but pointed to broader systemic issues within the Chicago Police Department for allowing the alleged torture to continue for so long.

**Former Chicago police commander linked to torture dead at 70**

"He could not have engaged in more than two decades of torture of black folks without a system that protected torturers and was complicit in ensuring that officers like Burge could torture black folks with impunity," Futterman said.

That system "is a primary reason why there is such a deep distrust between the black community and police and why police continue to struggle to solve violent crime, something they can't do without the trust (of the community))," he added.

Dean Angelo, former head of the city's police union, insisted that Burge "put a lot of bad guys in prison."

"People picked a career apart that was considered for a long time to be an honorable career and a very effective career. I don't know that Jon Burge got a fair shake based on the years and years of service that he gave the city," Angelo told reporters during a break at the Van Dyke trial.

At Burge's 2010 federal trial, Burge's lawyers called the accusers thugs and liars who were maligning an honorable man who had served in the U.S. military in Korea and Vietnam and returned with a Bronze Star. Burge took the stand and broke his long silence, repeatedly denying he had tortured anyone. A jury disagreed and found Burge guilty of perjury.

At his 2012 sentencing, one alleged victim said Burge was so cruel that he laughed while he tortured him. Burge told the judge that "while I try to keep a proud face, in reality, I am a broken man."

Burge said he was "deeply sorry" for the disrepute his case had brought on the Chicago Police Department. He offered no apologies for his actions.

U.S. District Judge Joan Lefkow cited Burge's "unwillingness to acknowledge the truth in the face of all the evidence" and sentenced him to 4 1/2 years in prison.

---- **Index References** ----

News Subject: (Crime (1CR87); Criminal Law (1CR79); Death Penalty (1DE04); Human Rights (1HU19); Legal (1LE33); Police (1PO98); Social Issues (1SO05); Torture (1TO68))

Region: (Americas (1AM92); Florida (1FL79); Illinois (1IL01); North America (1NO39); U.S. Midwest Region (1MI19); U.S. Southeast Region (1SO88); USA (1US73))

Language: EN

Other Indexing: (Dean Angelo; Joan Lefkow; Jon Burge; Laquan McDonald; Jason Van Dyke; George Ryan; G. Flint Taylor; Lori Lightfoot; Craig Futterman; Sarah Zipperer)

Word Count: 722

**End of Document**
© 2021 Thomson Reuters. No claim to original U.S. Government Works.



 © 2021 Thomson Reuters. No claim to original U.S. Government Works.