**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19 C 4152 |
| | ) | |
| CITY OF CHICAGO, a municipal | ) | Honorable Judge Sara L. Ellis |
| corporation and former Chicago Police | ) | |
| Officers ANTHONY MASLANKA, | ) | Magistrate Judge M. David Weisman |
| WILLIAM MOSER, JOHN E. BYRNE, | ) | |
| LOUIS CAESAR, JOHN PALADINO, | ) | |
| HENRY J. LEJA, JEROME RUSNAK, | ) | |
| VICTOR BRESKA, ESTATE OF JOHN | ) | |
| MCCANN, ESTATE OF JOHN M. | ) | |
| MCCARTHY, ESTATE OF THOMAS | ) | |
| PTAK, ESTATE OF PHILLIP COLLINS, | ) | |
| ESTATE OF JOHN OMARA, and ESTATE | ) | |
| OF JON BURGE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT CITY OF CHICAGO'S RESPONSE TO CHAKA PATTERSON'S MOTION
FOR LEAVE TO FILE APPEARANCE AS ADDITIONAL COUNSEL**

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Reiter Burns LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
312-982-0090

*Attorneys for Defendant City of Chicago*

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT .........................................................................................................9

   I.    Legal Standard....................................................................................... 9

   II.   Model Rule 1.9 Precludes Patterson's Representation of Gibson Because it Involves the Same *Monell* Claim Against the City that Patterson Defended In *Kluppelberg*............................................................................................. 10

   III.  Patterson is judicially estopped from claiming he does not have a conflict... 16

CONCLUSION ....................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases:**                                                                  **Page(s):**

*Amari Co., Inc. v. Burgess,*
  955 F. Supp. 2d 868 (N.D. Ill. 2013) ..................................................................................17

*Bonds v. City of Chicago,*
  451 F.Supp.3d 900 (N.D. Ill. 2020)............................................................................9, 14, 15

*Grochocinski v. Mayer, Brown Rowe & Maw, LLP,*
  719 F.3d 785 (7th Cir. 2013) ......................................................................................... 16, 17

*In re Airadigm Commc'ns, Inc.,*
  616 F.3d 642 (7th Cir. 2010) ..............................................................................................17

*In re Knight-Celotex, LLC,*
  695 F.3d 714 (7th Cir. 2012) ..............................................................................................16

*Kluppelberg v. Burge, et al.,*
  13 C 3963 (N.D. Ill.) ...................................................................................................passim

*Mack v. City of Chicago, et al.,*
  19 C 4001 ...........................................................................................................................12

*Monell v. New York City Dept. of Social Servs.,*
  436 U.S. 658 (1978) .....................................................................................................passim

*New Hampshire v. Maine,*
  532 U.S. 742 (2001) ...........................................................................................................16

*Village of Tinley Park v. Connolly,*
  2018 WL 1054168 (N.D. Ill. Feb. 15, 2018) .................................................. 9, 10, 12, 13, 14

*Watkins v. Trans Union, LLC,*
  869 F.3d 514 (7th Cir. 2017) ........................................................................................8, 9, 11

**Other Authorities:**

ABA Model Rules of Professional Conduct 1.9..................................................................passim

Local Rules 83.50 (N.D. Ill.) ....................................................................................................8

Defendant, the City of Chicago ("City"), by its attorneys, for its response to Chaka Patterson's ("Patterson") Motion for Leave to File Appearance as Additional Counsel, states:

## INTRODUCTION

Patterson cannot represent Gibson because he has a conflict of interest. While a partner at Jones Day, he represented the City for approximately 3 ½ years in *Kluppelberg v. Burge*, 13 C 3963 (N.D. Ill.), defending the City against the same *Monell* claim that Gibson makes. Model Rule 1.9 provides that a lawyer who "formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client" without consent. Model Rules Prof'l Conduct 1.9(a). Patterson cannot represent Gibson whose interests are materially adverse to the City's because the matters of *Kluppelberg* and *Gibson* are substantially related, if not the same. Both *Kluppelberg* and Gibson alleged that they were wrongfully convicted of murders that occurred in Area 3 in the 1980s because of constitutional misconduct by Burge and other former CPD officers. (Amended Complaint, Dkt. 111 ("AC") at ¶2, 10; Ex. 1, Kluppelberg's second amended complaint at ¶1-2, 36-38, 72). Both named the City and Jon Burge as defendants. (AC at ¶14-15; Ex. 1, at ¶12, 14). Both alleged that defendant officers working under Burge beat them into confessing. (AC at ¶2; Ex. 1, at ¶21, 71-72). Both claimed that Burge was involved in the underlying murder investigation himself, and as a supervisor of other defendants. (AC at ¶118-19, 123-24; Ex. 1, at ¶71-72). And both raised a *Monell* claim against the City that alleged that the City had a *de facto* policy of physically abusing suspects to obtain false confessions in the 1980s. (AC at ¶ 185; Ex. 1, at ¶52).

Patterson denies the matters are substantially related. Yet, in 2015, he and his colleagues asked to be removed as appointed post-conviction counsel for Jessie Hatch in *People v. Hatch*, 80C5534 (Cook County Circuit Ct.), citing a conflict between Hatch and the City because Hatch's primary allegation was that he was wrongfully convicted due to misconduct by Jon Burge and others. (Ex. 2 at 1, Jones

Day's Notice of Conflict of Interest in Appointment of Counsel for Jesse Hatch). Patterson and his colleagues told the Circuit Court that through their work in *Kluppelberg*, they "learned . . . confidential information about the City's legal strategy, responses, and defenses to allegations of abuse by Jon Burge," and that they "obtained substantial confidential information about the City and its co-defendants' handling of criminal matters, particularly in cases in which Jon Burge is alleged to have played a role." (*Id.* at 1, 4). Based on those representations, the court withdrew the appointment of Jones Day in *Hatch*. (Ex. 3).

Patterson cannot be permitted to change positions as it suits him. He had a conflict then, and he has one now. Because he is ethically precluded from representing Gibson in this case, his motion to appear should be denied.

## BACKGROUND

Gibson claims he was wrongfully convicted of the December 22, 1989, murders of Lloyd Benjamin and Hunter Wash. (AC at ¶1-2). More specifically, Gibson alleges that on December 27, 1989, "Defendant Chicago Police Officers working under the command of Jon Burge at Area 3 Violent Crimes," arrested Gibson without probable cause and tortured him into making an inculpatory statement. (*Id.* at ¶2). Gibson also alleges that the defendant officers coerced and fabricated false statements from witnesses incriminating Gibson in the murders. (*Id.* at ¶67). Gibson raises a *Monell* claim (Count X, *id.* at ¶184-90), in which he seeks to hold the City itself liable for his alleged constitutional harms and asserts that "the use of torture by Chicago Police Officers under the command of Jon Burge to obtain false confessions, statements and fake evidence, were the direct result of a situation which spun out of control because the City of Chicago's policymakers chose to allow it to continue thereby making torture a *de facto* policy of the City of Chicago and it's [*sic*] Police Department" (*id.* at ¶4). In support of that claim, Gibson alleges that "beginning as early as the early

1980s, the City of Chicago was expressly on notice that Burge and some of the officers under his command in Area 2 and Area 3 were torturing suspects during interrogations." (*Id.* at ¶185).

In *Kluppelberg*, the plaintiff James Kluppelberg claimed that he was wrongfully convicted for the 1984 murders of six people as a result of an arson. (Ex. 1, Kluppelberg's second amended complaint at ¶2-3). Though the murders happened in 1984, Kluppelberg was not arrested or charged until 1988. (*Id.* at ¶ 20-21). Kluppelberg alleged that detectives working under the command of Jon Burge "beat a false confession out of him" and that he "was convicted after the police manipulated witnesses, fabricated evidence and withheld" exculpatory information. (*Id.* at ¶2-3). Kluppelberg, like Gibson, raised *Monell* claims in which he alleged that the misconduct against him was undertaken "pursuant to the policies and practices of the Chicago Police Department … to pursue wrongful convictions through profoundly flawed investigations," which included "coercing false statements through violent and unduly coercive interrogations, which would include threats and violence, consistent with the manner in which Plaintiff and Ms. Gramont were interrogated." (*Id.* at ¶52). In a failure to intervene claim, Kluppelberg alleged was "undertaken pursuant to the City's policies and practices," Kluppelberg also claimed that "Defendant Burge knew that the practice at Area Three and of these Defendants was to falsely inculpate suspects by coercing and fabricating false, incriminating statements." (*Id.* at ¶72, 75).

The City retained Jones Day to represent it and defend against the *Monell* claims in *Kluppelberg*. Patterson filed his appearance on behalf of the City on July 24, 2013 (Ex. 4), more than a month before the City's Answer to the original complaint was filed, and represented the City until his motion to withdraw was granted on January 31, 2017, after he took another legal position. (Ex. 5, Kluppelberg dkt. 578). According to billing records submitted by Jones Day to the City, he billed the City for work on the case from July 15, 2013 to December 30, 2016. (Ex. 6, Declaration of Jessica Felker at ¶4). The case had been almost fully litigated during that period. The trial had been set to take place on

November 7, 2016, but was postponed only six days before, during the final pretrial conference, and reset to 2017. (Ex. 7, *Kluppelberg* dkt. 534). The parties, including the City, had already briefed motions *in limine* and the court ruled on them on November 1, 2016. (Ex. 8, *Kluppelberg* dkt. 533). The case settled in 2017 after Patterson's departure. (Ex. 9, *Kluppelberg* Dkt. 654).

Patterson spent approximately 14 hours working on draft answers to the complaint. (Ex. 6, Felker Declaration at ¶7). In the course of his work on the case, Patterson's billing records and work product also establish that he played an integral role defending the City throughout fact and expert discovery and leading up to trial. (Ex. 6 at ¶6-8; see also Declaration of Liza Franklin, Ex. 10 at ¶4). He personally signed responses to written discovery on behalf of the City and defended multiple depositions, including Rule 30(b)(6) depositions. Patterson wrote correspondence to the Corporation Counsel evaluating the merits of the case and discussing settlement authority, and he participated in multiple meetings with the Corporation Counsel and his assistants regarding the case and settlement. (Ex. 6 at. ¶6-8; Ex. 10 at ¶4-6). Patterson's billing records establish that he communicated with the Corporation Counsel's office, the Chicago Police Department's Office of Legal Affairs, and internally with other Jones Day lawyers defending the City for dozens of hours. Patterson further communicated with co-defendants' counsel in joint defense privileged communications for over 35 hours during the course of his representation. In total, Patterson billed over 3,200 hours on the case. (Ex 6 at ¶7).

Relative to his participation in written discovery, Patterson signed over 20 responses to interrogatories, requests for production, interrogatories, and rule 26(a)(1) disclosures, including amendments and supplements. (Ex. 6 at ¶7). He billed many hours meeting with City representatives to properly respond to the written discovery. In doing so, as set forth in the responses, he necessarily learned confidential information. Patterson raised objections based on attorney client privilege and work product in response to numerous discovery requests. For example, in the City's Third

4

Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories, Patterson wrote as follows on behalf of the City:

> 5.     State whether any of the Individual Defendants — or any other employees or agents of the Chicago Police Department or Chicago Fire Department — acted inconsistently with any of the policies and practices of the City of Chicago, the Chicago Police Department or Chicago Fire Department (formal or informal, written or unwritten) at any time during the investigation surrounding the Incident or Ramos Incident.
>
> ANSWER: The City objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, or any other applicable law, privilege, doctrine or immunity. . . .
>
> Subject to and without waiving the foregoing general and specific objections, the City denies that any of the Individual Defendants or employees of the Chicago Police or Fire Departments acted inconsistently with any of the policies and practices of the City of Chicago, Chicago Police Department or the Chicago Fire Department. The City's investigation continues and it will supplement this response consistent with its obligations under the Federal Rules of Civil Procedure and the Local Rules. (Ex. 11, City's Third Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories in Kluppelberg at ¶5).

Patterson similarly objected based on privilege and work product to plaintiff's request for production seeking all "review, studies, analyses, or proposals for same, regarding the prevalence of coerced confessions occurring within the Department at any time." (Ex. 12, City's First Supp. Obj. and Resp. to Second Req. for Prod. at ¶2). In addition, Patterson objected to other discovery requests based on privilege and work product.

Patterson also played a significant role in oral discovery in *Kluppelberg*, representing the City and/or City representatives and employees at many depositions. The following are some examples:

- Deputy Chief of Detectives Eugene Roy: Patterson billed over 30 hours preparing for, meeting with, and defending Roy's Rule 30(b)(6) deposition on record keeping issues at the CPD, including the Area 3 Detective Division. (Ex. 13, Excerpts of deposition of Eugene Roy in *Kluppelberg* at 6-8 and 12-14).

- Retired Captain Edward O'Donnell: Patterson billed over 40 hours preparing for, meeting with, and defending O'Donnell's deposition, relating to O'Donnell's role in the underlying arson investigation and opinion that Kluppelberg was guilty, Rule 30(b)(6) testimony as a City representative on the topic of crime patterns, and whether he witnessed any physical abuse of suspects under the command of Jon Burge while working as a detective under

5

Burge. (Ex. 14, Excerpts of deposition of Edward O'Donnell in *Kluppelberg* at 27-28, 200-201, 256-257).

- Retired Area 3 Detective Janet McCarthy: Patterson billed over 50 hours preparing for, meeting with, and defending McCarthy's deposition relating to Area 3 recordkeeping, among other questions asked. (Ex. 15, excerpts of deposition of Jan McCarthy in *Kluppelberg* at 21-28).

- Sgt. Mayda Corral: Patterson billed over 35 hours preparing for, meeting with, and attending Corral's Rule 30(b)(6) deposition relating to the Detective Division's search for files for purposes of the City's compliance with its discovery obligations in *Kluppelberg*. (Ex. 16, excerpts of deposition of Mayda Corral at 40-43).

- Deputy Corporation Counsel Liza Franklin: Patterson billed over 20 hours preparing for, meeting with, and defending Franklin's Rule 30(b)(6) deposition relating to locating a CPD file that *Kluppelberg* alleged had been withheld from him in violation of Brady v. Maryland and which contained allegedly exculpatory material. (Ex. 17, excerpts of deposition of Liza Franklin at 3-12).

- Assistant Direct of Research & Development James Hickey: Patterson billed over 60 hours preparing for, meeting with, and defending Hickey for his Rule 30(b)(6) deposition relating to the creation, maintenance, production, etc. of investigative files in homicide cases. (Ex. 18, excerpts of deposition of James Hickey in *Kluppelberg* at 3-4, 12-13).

- CPD Office of Legal Affairs attorney Galen Caldwell: Patterson billed over 60 hours preparing for and meeting with Caldwell relative to his Rule 30(b)(6) deposition and another deposition he gave relating to the City's compliance with its discovery obligations in *Kluppelberg*. (Ex. 19, excerpts of deposition of Galen Caldwell in *Kluppelberg* at 5-8, 17-28).[1]

Patterson later played a major role in handling expert discovery on behalf of the City, including preparing for and/or attending plaintiff's experts' depositions, and finding and working with the City's experts, including a *Monell* expert. (Ex. 6 at ¶8). Patterson also played a significant role (billing over 300 hours) working on trial preparation, the final pretrial order, motions *in limine*, and preparing trial witness outlines. (*Id.*).

Moreover, Patterson personally presented the City's case in a confidential mock jury presentation on October 13, 2016. Patterson billed over 100 hours preparing for that presentation and

---

[1] For the time Patterson billed relative to these depositions, see Jessica Felker's declaration at paragraph 8.

spent 10 hours at the presentation itself while the City Defendants' claims and defenses were confidentially tested before the mock jury. (Ex. 6 at ¶8). Patterson then received and reviewed the City's jury consultant's 85-page "Interpretations of Results & Recommendations" from the mock jury exercise.[2] Likewise, Patterson received from the City a report of a mock jury presentation from another case alleging abuse against the City, Burge and detectives under his command at Area 3, and also a white paper prepared by the City's jury consultant addressing some of the issues as in this case, including Burge.[3] *Id.*

Throughout his representation of the City in *Kluppelberg*, Patterson communicated with City Law Department representatives, including the Corporation Counsel himself. (Ex. 6 at ¶7; Ex. 10 at ¶4). He also drafted, edited, and supplied to the City several attorney client privileged memoranda evaluating the merits of the case, legal issues, factual issues, and making settlement recommendations.[4] (Ex. 6 at ¶6).

Finally, and perhaps most tellingly, Patterson has previously acknowledged he received "substantial confidential information" in the course of his representation of the City in *Kluppelberg*. (Ex. 2, Jones Day's Notice of Conflict of Interest in Appointment of Counsel for Jesse Hatch). In 2015, the Chief Judge of the Criminal Division of the Circuit Court of Cook County appointed Jones Day to represent Jesse Hatch in a post-conviction matter where Hatch alleged that he was "wrongfully convicted due to misconduct by former City police officer Jon Burge and other former City police officers." (Ex. 2 at 2). In a pleading submitted on behalf of Patterson and his colleagues, Jones Day

---

[2] Due to its privileged subject matter, the City will not file the jury consultant's "Interpretations of Results & Recommendations" in the public record or provide it to plaintiff's attorneys but will supply the document to this Court for an *in camera* inspection upon request.

[3] Again, the City will supply those two confidential and privileged reports to this Court for *in camera* review if the Court wishes to review them.

[4] The City also will provide these privileged memoranda to this Court for *in camera* review upon request.

requested to be excused as appointed counsel for Hatch due to a conflict of interest with the firm's representation of the City. Specifically, the Notice stated:

> Jones Day cannot zealously represent Mr. Hatch in his Burge-related post-conviction proceedings while also maintaining the confidentiality of information it has or will learn in the course of defending the City in *Kluppelberg v. Burge, et al.,* No. 13-cv-3963 (N.D. Ill., Lefkow, J.). **While defending the City, Jones Day has learned (and continues to learn) confidential information about the City's legal strategy, responses, and defenses to allegations of abuse by Jon Burge while he worked for the City of Chicago Police Department.** Through some eighteen months of intensive fact discovery, Jones Day has also learned of the City's police investigative policies and practices, police record retention policies and practices, police document storage policies and practices, police officer training, and information about the work of Jon Burge and numerous other police officers during their time as employees of the City. In addition, the City has operated under a joint defense privilege in the *Kluppelberg* litigation with counsel for the individual defendants in the case, including Jon Burge and other individual police officers. The information Jones Day has learned as a result of its representation is protected by the attorney-client relationship between the City and Jones Day and the joint defense privilege.

> If Jones Day were to represent Mr. Hatch with the zealousness required, it would quite likely be forced to allege that Jon Burge and other City police officers (and by implication, the City itself) acted in such a fashion that Mr. Hatch should prevail in his post-conviction proceedings. Certainly, any law firm representing Mr. Hatch must at least be ethically free to make such allegations and not under a conflict of interest while deciding whether to recommend to Mr. Hatch that such allegations might help his case. **In making such allegations, however, Jones Day would inevitably be in the position of knowing confidential information about the opposing party in the litigation that it could not ethically use but that would be relevant and important to Mr. Hatch's case. In that situation, Jones Day would be forced to choose between zealously representing its current client, the City, and respecting the joint defense privilege with individual defendants including Jon Burge, and zealously representing Mr. Hatch in his postconviction proceedings.** The Illinois Rules of Professional Conduct as well as the Model Rules of Professional Conduct were drafted to protect against this conflict in loyalties.

(*Id.* at 4-5) (emphasis added).

Based on this Notice of Conflict, Jones Day was excused from the appointment. As further explained below, Patterson cannot represent Gibson for the same reasons he and his law firm could not represent Jesse Hatch.

## ARGUMENT

### I. Legal Standard

ABA Model Rule of Professional Conduct 1.9 "governs the duties lawyers owe to former clients" and whether an attorney should be disqualified from representing an individual in light of that duty. *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017); see also N.D. Ill. L.R. 83.50 (ABA Model Rules of Professional Conduct apply to proceedings in this district). The rule provides that a lawyer who "formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirm[ed] in writing." Model Rules of Prof'l Conduct R. 1.9(a). When analyzing whether an attorney is precluded from representing an individual because of a duty owed to a former client, the court must first determine whether an attorney-client relationship existed and, if so, must then determine "whether that former relationship is substantially related to a current relationship." *Village of Tinley Park v. Connolly*, 17-CV-3271, 2018 WL 1054168, at *2 (N.D. Ill. Feb. 15, 2018) (Ellis, J.).

Two matters are "substantially related" when "they involve the same transaction or legal dispute or where there is a 'substantial risk that confidential factual information as would normally have been obtained in a prior representation would materially advance the client's position in the subsequent matter.'" *Watkins*, 869 F.3d at 519; *Bonds v. City of Chicago*, 451 F.Supp.3d 900, 902 (N.D. Ill. 2020) (citing Rule 1.9, cmt. 3). "Whether two matters involve the same transaction is determined by an inquiry into whether the matters are factually related." *Watkins*, 869 F.3d at 520. Direct involvement in a specific transaction prohibits later representation of other clients "with materially adverse interests." *Id.* Even if two matters do not involve the same transaction or legal dispute, they may nevertheless be substantially related "if there is a substantial risk that confidential information would materially advance the client's position in the present matter." *Id.*

General knowledge of a client's policies and practices ordinarily will not preclude a subsequent representation but "knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily **will** preclude such a representation." Rule 1.9 cmt. 3 (emphasis added). In determining whether Patterson is precluded from representing Gibson, "the [City] is not required to point to specific information that it passed to [the attorney] that would be relevant to the present case; the Court can presume such information passed to [the attorney] when it appears likely under the circumstances." *Connolly*, 2018 WL 1054168, at *4; see also Rule 1.9 cmt. 3 ("A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services").

There is no dispute an attorney-client relationship existed between Patterson and the City in *Kluppelberg*, so he is bound by the duties to the City in Rule 1.9. There is also no question the City's interests are materially adverse to Gibson's in this matter. The issue is whether *Kluppelberg* and *Gibson* are the same or substantially related, thus prohibiting Patterson from representing Gibson. He claims they are not. He is wrong.

## II. Model Rule 1.9 Precludes Patterson's Representation of Gibson Because it Involves the Same *Monell* Claim Against the City that Patterson Defended In *Kluppelberg*.

Patterson is conflicted from representing Gibson because *Kluppelberg* and *Gibson* involve the same legal dispute and are substantially related. They involve the same *Monell* claim: that the City had a widespread practice of coercing false confessions through physical force from criminal suspects in the 1980s, and both rely on allegations against Burge and detectives working under his command in support of that that *Monell* allegation. (AC at ¶ 185; Ex. 1, at ¶52).

Both *Kluppelberg* and this case involve allegations that detectives under the command of Jon Burge coerced a false confession to murder from the plaintiff. (AC at ¶2; Ex. 1, at ¶21, 71-72). Gibson confessed and was arrested and charged in 1989 (AC at ¶2, 111); Kluppelberg confessed and was arrested and charged in 1988. (Ex 1, at ¶20). Both Kluppelberg and Gibson named the City and Burge as defendants. (AC at ¶14-15; Ex. 1, at ¶12, 14). Both alleged that Burge was involved in the underlying murder investigation himself, and as a supervisor of other defendants. (AC at ¶118-19, 123-24; Ex. 1, at ¶71-72).

Most importantly, they both brought *Monell* claims that they were physically abused by detectives under the command of Burge into a false confession as a result of the City's *de facto* policy in the 1980s. (AC at ¶ 185; Ex. 1, at ¶52). Gibson specifically alleges that "beginning as early as the early 1980s, the City of Chicago was expressly on notice that Burge and some of the officers under his command in Area 2 and Area 3 were torturing suspects during interrogations," covering the same time period and location as Kluppelberg's allegations. (*Id.* at ¶185; *accord id.* at ¶186, 188; *see also id.* at ¶97 (alleging crime suspects were physically and psychologically coerced from 1973 to 2006 under Burge and his detectives)). Kluppelberg alleged the same thing.  (Ex 1, at ¶52, 72, 75).

This is the same legal issue, but even if not, clearly issues that are substantially related. "[T]here is a substantial risk that confidential factual information as would normally have been obtained in" *Kluppelberg* "would materially advance" Gibson's position here. *Watkins*, 869 F.3d at 520. As cited above, Patterson played an integral role defending the City in *Kluppelberg* during written discovery, oral discovery, trial preparation, settlement evaluation, and providing legal and factual advice to the City, including through his participation in the mock jury exercise and written client communications (which we can supply for *in camera* review if requested). Patterson provided legal advice to the City regarding the *Monell* claim by Kluppelberg and received confidential information regarding the City's defenses from the City. The City communicated with Patterson in a privileged and confidential setting

11

and provided confidential information to aid Patterson in how they should proceed in defense of the case brought by Kluppelberg. In the City's view, this is not a close call: Patterson has a conflict of interest that precludes his representation of Gibson because he represented the City in *Kluppelberg*.[5]

In a recent case, a plaintiff's attorney was disqualified by Chief Judge Pallmeyer because the attorney previously represented the City in *Monell* litigation and, after leaving the Department of Law, filed a new lawsuit alleging *Monell* liability under similar theories. (See Ex. 20 at 2-3, October 3, 2019, Transcript in *Mack v. City of Chicago*, et al., 19 C 4001: "There is no question in my mind that Mr. Schoop was indeed involved as a supervisor and otherwise on cases involving *Monell* claims. They don't have to be on all fours with this one, but at least one appears to be pretty close to on all fours with this one. There is no question he has to be disqualified."). Like Judge Pallmeyer's conclusion in *Mack*, there is no question that Patterson has to be disqualified in this case. Patterson represented the City in *Kluppelberg* on a case alleging that the plaintiff was physically coerced into a false confession in 1988 by detectives working under the command of Jon Burge and that his wrongful conviction occurred "pursuant to the policies and practices of the Chicago Police Department … to pursue wrongful convictions through profoundly flawed investigations," which included "coercing false statements through violent and unduly coercive interrogations." (Ex. 1 at ¶52). Patterson and his team filed an answer denying those allegations **on behalf of the City** in *Kluppelberg* (Ex. 21, City's Answer in *Kluppelberg* at ¶52); those are the very allegations Gibson asserts here.

This Court's decision in *Connolly* is also instructive. In *Connolly*, this Court granted the Village of Tinley Park's ("Village") motion to disqualify an attorney for the other side who had previously provided legal services for the Village. 2018 WL 1054168, at *1. The attorney, Murphey, "previously

---

[5] Indeed, Gibson alleges that the City acquiesces to the abuse of suspects in Area 3 by Burge in part by defending Burge and officers under his command in civil suits. (AC at ¶189). While that allegation has been denied, the City's defense of Kluppelberg's civil lawsuit and its payments to Jones Day in that litigation would certainly be encompassed by this allegation by Gibson.

engaged in privileged and confidential conversations" with high-ranking members of the Village regarding fair housing lawsuits brought against the Village by a developer and the United States. *Id.* In *Connolly*, however, Murphey sought to defend a former Village employee in a suit brought by the Village alleging breach of fiduciary duties stemming from the employee's role in the underlying housing development at issue in the fair housing lawsuits against the City. *Id.* at 1, 2.

In concluding that Murphey's conflict precluded his representation of the defendant-employee, this Court first recognized that Model Rule 1.9(a) precludes an attorney who formerly represented a client from representing another client in "the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client…." *Id.* at 2. Consistent with Comment 3 of Model Rule 1.9, this Court in *Connolly* also recognized "[t]he Village is not required to point to specific information that it passed to Murphey that would be relevant to the present case; the Court can presume such information passed to Murphey when it appears likely under the circumstances." *Id.* at 4. Ultimately, this Court concluded that the two representations were "substantially related" as they involved "the same amendment to the Village code, the impact and reaction to that amendment, and the issue of 'whether the Village's subsequent actions with respect to the amendment were legitimate or discriminatory.'" *Id.* at 4. Moreover, in his role as attorney for the Village, Murphey provided legal advice regarding the suit by the developer and the United States and received factual information, including confidential information, regarding the underlying development at issue. *Id.* This Court found that the Village believed it was communicating in a privileged and confidential setting with Murphey and necessarily would have provided confidential information to aid Murphey in how they should proceed in the case brought by the United States. *Id.* For these reasons, this Court disqualified Murphey as attorney for the defendant-employee. *Id.* at 4-5.

Similar to *Connolly*, this case and *Kluppelberg* are substantially related because both cases arise from allegations that detectives under the command of Jon Burge coerced a false confession, both

13

cases involve allegations that Area 3 detectives improperly coerced statements, and both cases include a *Monell* claim alleging the City itself is liable because it allegedly had a widespread practice of physically coercing false confessions in the late 1980s. Also like *Connolly*, Patterson played an integral role defending the City in *Kluppelberg* during discovery and trial preparation, and learned confidential information about the City's defenses and legal strategies in that role.

The City anticipates Patterson will rely on Judge Gottschall's decision in *Bonds* in support of his position that he does not have a conflict of interest, but that case is inapposite. In *Bonds*, a former Assistant Corporation Counsel (ACC) employed by the City of Chicago entered an appearance on behalf of a plaintiff suing the City under *Monell*. 451 F. Supp. 3d at 901. The City moved to disqualify him under Model Rules 1.11 and 1.9, based on his prior representation of the City in, among other things, prior *Monell* cases. *Id.* at 901-02, 904. The court denied the City's motion, reasoning that the City had shown only that the ACC had general knowledge of *Monell* claims from representing the City, but that "general subject matter similarity is meaningless, as is general knowledge of the former client's practices and procedures." *Id.* at 904. The City contended that one case in which the ACC represented the City, *Paine*, had similar *Monell* claims that disqualified him in *Bonds*, but the cases were similar, according to the court, only in broad subject matter—"the appropriateness of the City's response to a citizen having a mental health crisis." *Id.* Otherwise "the factual similarities diverge[d]." *Id.* at 905.

The underlying events in the two cases (*Bonds* and *Paine*) occurred 7 years apart, the cases did not involve the same officers, and the cases did not involve the same underlying alleged misconduct. In *Paine*, the suit arose from officers transporting an out-of-town woman from lockup who was experiencing mental health issues, to an area by herself, where she was sexually assaulted. *Id.* In *Bonds*, the suit stemmed from an incident where officers were called to the plaintiff's home related to an altercation with her son. *Id.* The son, who was allegedly suffering from mental health issues, cut an officer with a knife when they tried to enter and a confrontation ensued in which the son was

14

ultimately shot and killed by officers. *Id.* The particular *Monell* allegations in *Bonds* challenged the adequacy of a Crisis Intervention Team (CIT) program, but Paine's complaint did not mention the CIT program. *Id.* at 906. Although the City had responded to an interrogatory in *Paine* wherein the City had identified three witnesses with knowledge of the CIT program, those responses were signed by a different attorney from the City. And that other attorney averred in a declaration that he was the lead attorney in *Paine*, and he had no recollection of the ACC in *Bonds* being involved in litigating *Paine*'s *Monell* claims or the mental health policy issues. *Id.* The City had no proof to rebut that declaration. *Id.* at 907.

Contrary to *Bonds*, the City here has demonstrated specific, detailed participation by Patterson in numerous aspects in the defense of *Kluppelberg*, which involved factual issues that mirror the allegations comprising Gibson's *Monell* claim. Moreover, both claims arise from the exact same time frame, rebutting any suggestion that the passage of time since Patterson's representation obviates the conflict. Patterson answered multiple rounds of written discovery asserting the attorney client privilege and work product, Patterson billed many hours meeting with and defending multiple City representatives at deposition (including Rule 30(b)(6) depositions and depositions concerning physical abuse by Burge), and Patterson spent a significant amount of time and effort working on the City's trial preparation. Patterson wrote case evaluation memoranda to the City analyzing the legal and factual merits of the case and discussing settlement strategy and recommendations. Moreover, Patterson participated in a mock jury exercise wherein the City Defendants' defenses were confidentially vetted with a jury consultant (and was privy to the results of other mock jury evaluations of Burge cases); it is difficult to envision a more sensitive and confidential involvement. As Comment 3 of Model Rule 1.9 contemplates, a conclusion about a lawyer's possession of confidential information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services. The nature of the services provided

by Patterson compels the conclusion he possessed confidential information provided by the City in *Kluppelberg.*

### III. Patterson is judicially estopped from claiming he does not have a conflict.

If there were any doubt regarding the conflict, the court need only look to the Notice of Conflict filed in *People v. Jesse Hatch* by Patterson and his Jones Day colleagues admitting that Patterson is conflicted from representing a party that makes allegations related to the misconduct of Burge against the City and its officers. (Ex. 2). He is now judicially estopped from disclaiming his position in his and his colleagues' request to be removed from that case.

"Judicial estoppel is a flexible equitable doctrine designed to prevent the perversion of the judicial process." *Grochocinski v. Mayer, Brown Rowe & Maw, LLP,* 719 F.3d 785, 795 (7th Cir. 2013) (cleaned up). The doctrine "is not 'reducible to any general formulation of principle' and accordingly does not lend itself to rigid rules." *Id.* (quoting *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001)). It is left to the "equitable judgment and discretion" of the court whether to apply the doctrine of judicial estoppel. *In re Knight-Celotex, LLC,* 695 F.3d 714, 721 (7th Cir. 2012).

Three factors guide whether judicial estoppel should apply: (1) whether "a party's later position must be clearly inconsistent with its earlier position;" (2) whether "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and (3) whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire,* 532 U.S. at 750-51; *Grochocinski,* 719 F.3d at 795.

Applying those three factors, Patterson is judicially estopped from taking a contradictory position here, *i.e.* that he does not have a conflict of interest based on his representation of the City in *Kluppelberg.* The Circuit Court of Cook County, based on Patterson's and his firm's statements as

16

contained in the Notice of Conflict of Interest, excused Patterson and his firm from serving as appointed counsel. And as set forth above, Patterson would be deriving an unfair advantage if he is allowed to represent Gibson, given the wealth of confidential information he learned representing the City in *Kluppelberg*. Accordingly, the three judicial estoppel factors have been met.

Nor does any possible argument that because Patterson was not a "party" defeat the claim of judicial estoppel. "[T]here is no requirement that the parties be the same for judicial estoppel to apply. What matters for purposes of judicial estoppel is whether, in reaching its earlier decision, the court relied on the representation of the one against whom estoppel is asserted." *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 662 (7th Cir. 2010); accord *Grochocinski*, 719 F.3d at 796. Patterson and his firm previously moved to be excused from appointed representation based on their conflict of interest. He now moves to appear on behalf of Plaintiff, despite the previously identified conflict due to his representation in *Kluppelberg*. In both instances, Patterson was/is the movant representing his own interests, rather than that of any specific party. Accordingly, Patterson—by presenting contradictory positions to two separate courts—"is not entitled to assail the integrity of the judiciary by prevailing twice on opposite theories." *Amari Co., Inc. v. Burgess*, 955 F. Supp. 2d 868, 880 (N.D. Ill. 2013).

Patterson has represented to the Circuit Court that he had learned "confidential information about the City's legal strategy, responses, and defenses to allegations of abuse by Jon Burge while he worked for the City of Chicago Police Department." (Ex. 2, Notice of Conflict at 4). Patterson also "learned of the City's police investigative policies and practices, police record retention policies and practices, police document storage policies and practices, police officer training, and information about the work of Jon Burge and numerous other police officers during their time as employees of the City." *Id.* Moreover, Patterson "operated under a joint defense privilege in the *Kluppelberg* litigation with counsel for the individual defendants in the case, including Jon Burge and other individual police officers." *Id.* The information Patterson "learned as a result of [his] representation is protected by the

attorney-client relationship between the City and Jones Day and the joint defense privilege." *Id.*
Patterson should not be allowed to disavow the Notice of Conflict and his ethical responsibilities by
filing an appearance for Gibson in this case.

## CONCLUSION

Patterson's motion to file an appearance should be denied because he has a conflict. Gibson
will not be prejudiced by this Court denying Patterson's motion to appear because he is adequately
represented. In light of Patterson's obvious conflict, this Court should deny his motion for leave to
file an additional appearance.

Wherefore, the City respectfully requests that this Court deny plaintiff's motion for leave to
file the additional appearance of Chaka Patterson, and for any other relief this Court deems
appropriate.

Respectfully submitted,

/s/ Daniel M. Noland
Special Assistant Corporation Counsel

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Reiter Burns LLP
311 S. Wacker Dr., Suite 5200
Chicago, IL 60606
312-982-0090
*Attorneys for Defendant City of Chicago*