IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19 CV 4152 |
| | ) | |
| vs. | ) | |
| | ) | Magistrate Judge M. David Weisman |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JOEL BRODSKY and RAMON MOORE, | ) | |
| | ) | |
| Intervenors, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES GIBSON, | ) | |
| | ) | |
| Defendant, | ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on intervenors Joel Brodsky and Ramon Moore's Federal Rule of Civil Procedure 12(c) motion for partial judgment on the pleadings. For the reasons set forth below, the Court recommends that the district court grant in part and deny in part the motion [690].

**Facts**

On October 8, 1991, Gibson was convicted for a double murder he did not commit and sentenced to life in prison based on a statement coerced by torture by Chicago Police Detectives. (ECF 420 ¶ 4; ECF 208 ¶ 4.) Thereafter, Gibson unsuccessfully appealed his conviction and

exhausted all of his post-conviction remedies. (ECF 420 ¶ 5; ECF 208 ¶ 5.) In 2009, the State of Illinois enacted the Illinois Torture Inquiry and Relief Commission Act, and Gibson filed a claim under the Act in 2012. (ECF 420 ¶¶ 6-7; ECF 208 ¶¶ 6-7.)

In April 2014, Gibson agreed that Brodsky would represent Gibson before the Illinois Torture Inquiry and Relief Commission, in overturning the wrongful conviction, and prosecuting any future civil rights action." (ECF 420 ¶ 8; ECF 208 ¶ 8.) On July 22, 2015, the Commission found that Gibson had been tortured into making the statement that was the primary evidence used to convict him and referred the matter to the Circuit Court of Cook County for further proceedings. (ECF 420 ¶ 10; ECF 208 ¶ 9.)

On September 3, 2015, Gibson signed an agreement to employ Brodsky to:

> [R]epresent [him] in any and all necessary post-conviction proceedings to gain his freedom and vacate and set aside the wrongful conviction in Cook County case No. 90 CR 3212, and in enforcing a cause of action against any person or entity liable arising out of the torture, wrongful conviction, and wrongful imprisonment of James Gibson as outlined in the Torture Inquiry And Relief Commission Case Disposition in TIRC Claim of James Gibson, Claim No. 2013.139-G, which occurred beginning on or about December 27, 1989 and continuing thereafter, and which is currently still ongoing.

(ECF 420, Ex. A.) Gibson agreed to pay Brodsky one-third of any recovery. (*Id.*) The agreement also authorized Brodsky to retain other attorneys to assist with Gibson's case at Brodsky's expense. (*Id.*)

Brodsky, on behalf of Gibson, appealed the Circuit Court's order, and during the appeal, he hired Moore as co-counsel. (ECF 420 ¶¶ 12-13; ECF 208 ¶¶ 12-13.) The March 2, 2017, co-counsel agreement states:

> Joel A. Brodsky has . . . employed Attorney Ramon Moore as his co-counsel in the above referenced matter, and has agreed to pay him eleven and 111/100 percent (11.111%) of any sum recovered on behalf of the Client whether the recovery is by way of settlement, lawsuit, claim, or otherwise, (which amounts to one-third (33.333%) of the fee the Attorney is entitled to out of any recovery made on behalf

2

> of Client pursuant to the written fee agreement between the Attorney and Client). Attorney Ramon Moore agrees to accept this contingent fee arrangement and understands that he will receive no fees if there is no recovery from the above referenced case.

(ECF 420, Ex. B; ECF 208, Ex. A.)

On October 9, 2015, Brodsky filed a petition with the circuit court pursuant to the Torture Inquiry and Relief Commission Act asking that Gibson's conviction be overturned. (ECF 420 ¶ 11; ECF 208 ¶ 10.) The court denied the petition on July 29, 2016. (ECF 420 ¶ 11; ECF 208 ¶ 11.)

On August 15, 2016, the appellate court reversed and remanded the case to the circuit court, which again denied Gibson relief. (ECF 420 ¶¶ 12-14; ECF 208 ¶ 19.) Brodsky and Moore appealed the decision. (ECF 420 ¶ 13; ECF 208 ¶¶ 20-21.) The Appellate Court reversed, vacated Gisbon's conviction and life sentence, ordered a new trial excluding the statement coerced by torture, and ordered that a new judge be assigned to his case. (ECF 420 ¶ 15; ECF 208 ¶ 22.) On April 26, 2019, the State dismissed all charges against Gibson. (ECF 420 ¶ 19; ECF 208 ¶ 26.)

On April 17, 2019, Gibson, Moore, and Brodsky entered into a supplemental retainer agreement. (ECF 420, Ex. C; ECF 208-2.) The agreement states that the attorneys will represent Gibson:

> [I]n any and all necessary post-conviction proceedings, including appeals, to gain his freedom and vacate and set aside the wrongful conviction in Cook County case No. 90 CR 3212, in any re-trial of the case of People v. James Gibson, 90 CR 3212 in the Circuit Court of Cook County, and in enforcing a cause of action against any person or entity liable arising out of the torture, wrongful conviction, and wrongful imprisonment, and wrongful prosecution of James Gibson . . . .

(ECF 420, Ex. ) (emphasis in original). The agreement also says that:

> The Attorneys and the Client re-affirm and renew the Retainer Agreement of September 3, 2015 and the Co-Counsel Agreement of March 2, 2017, and affirm that these agreements are and remain in full force and effect, and that this Supplemental and Renewed Retainer Agreement does not supercede or supplant these agreements in any way. The Attorneys and the Client hereby state that it is

3

> their intention that this Supplemental and Renewed Retainer Agreement is a continuation of these aforesaid agreements and in no way terminates or alters the rights and obligations of the parties to those agreements.

(*Id.*) In addition, Gibson agreed to pay Brodsky 22.222% and Moore 11.111% of any recovery. (*Id.*)

On May 10, 2019, Brodsky filed this suit. (ECF 420 ¶ 20; ECF 208 ¶ 27.) On May 29, 2010, he prepared a petition for a certificate of innocence for Gibson, which was granted. (ECF 420 ¶ 22.)

On June 19, 2019, for reasons unrelated to this suit, the Illinois Supreme Court entered an interim suspension of Brodsky's license to practice law. (ECF 420 ¶ 29; ECF 208 ¶ 28.) On November 13, 2020, the court entered an order suspending Brodsky from the practice of law for two years, retroactive to June 19, 2019, and until further order of court. (ECF 420 ¶ 29; ECF 208 ¶ 28.) On June 29, 2020, Gibson terminated Brodsky's representation. (ECF 420 ¶ 30.) On August 31, 2020, he terminated Moore's representation. (ECF 208 ¶ 31.)

## Discussion

Federal Rule of Civil Procedure 12(c) states: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Pleadings 'include the complaint, the answer, and any written instruments attached as exhibits.'" *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312–13 (7th Cir. 2020) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998)) (citing Fed. R. Civ. P. 10(c)). "When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020).

Gibson contends that Brodsky and Moore cannot recover for work they did for him before the murder charges against him were dismissed on April 26, 2019 because the retainer agreements violate Illinois Rule of Professional Conduct 1.5(e)(2).[1] In relevant part, Rule 1.5(e)(2) states that "[a] lawyer shall not enter into an arrangement for, charge, or collect . . . a contingent fee for representing a defendant in a criminal case." The April 17, 2019 agreement is the only one of the three agreements that purports to hire Brodsky and Moore on a contingency basis for work on a criminal case. As Gibson points out, however, that agreement also says "the Retainer Agreement of September 3, 2015 and the Co-Counsel Agreement of March 2, 2017 . . . remain in full force and effect," the April 17, 2019 Supplemental and Renewed Retainer Agreement "does not supercede [sic] or supplant these agreements in any way," and it is the parties' "intention that this Supplemental and Renewed Retainer Agreement is a continuation of these aforesaid agreements and in no way terminates or alters the rights and obligations of the parties to those agreements." (ECF 208-2.) Because the April 17, 2019 contingency fee agreement includes work on Gibson's criminal case and incorporates the two prior contingency fee agreements, Gibson argues that all three agreements violate Illinois Rule of Professional Conduct 1.5(e)(2).

Moore argues that the agreement is permissible because it does not "ask for a contingent fee in the event of a favorable outcome in criminal court." (ECF 706 at 2.) It is true that the agreement does not explicitly tie the lawyers' compensation to plaintiff's acquittal at any re-trial of his criminal case. But plaintiff could only pursue a 42 U.S.C. § 1983 civil suit for wrongful conviction and imprisonment if he prevailed in the criminal case. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) ("We hold that, in order to recover damages for allegedly unconstitutional

---

[1] Gibson also argues that the agreement violates Rule 1.8(i), but for the reasons explained infra, the Court need address this argument.

5

conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.").Thus, despite the agreement's silence on the matter, the lawyers' compensation is, in fact, contingent on the outcome of plaintiff's criminal case. Accordingly, it violates Rule 1.5(e)(2).

Gibson argues that the inclusion of criminal work in the April 17, 2019 agreement renders it void. That is true unless the unlawful provision can be severed from the contract. "[T]he initial inquiry as to the issue of severability is whether the unenforceable term is an essential part of the contract." *Kepple & Co. v. Cardiac, Thoracic & Endovascular Therapies, S.C.*, 920 N.E.2d 1189, 1193 (Ill. App. Ct. 2009). "If the unenforceable term is an essential part of the contract, the contract is not severable and the entire contract is void." *Id.*; *see Wigginton v. Dell, Inc.*, 890 N.E.2d 541, 549 (Ill. App. Ct. 2008) ("An unenforceable provision is severable unless it is 'so closely connected' with the remainder of the contract that to enforce the valid provisions of the contract without it 'would be tantamount to rewriting the [a]greement.'") (*quoting Abbott–Interfast Corp. v. Harkabus*, 619 N.E.2d 1337, 1344 (Ill. App. Ct. 1993)); *see Kepple & Co. v. Cardiac, Thoracic & Endovascular Therapies, S.C.*, 920 N.E.2d 1189, 1193 (Ill. App. Ct. 2009) ("Whether the unenforceable term is an essential part of the contract depends on the relative importance of the term in light of the entire agreement between the parties.").

Here, the term that would have to be severed -- that intervenors would represent Gibson "in any re-trial of the case of People v. James Gibson, 90 CR 3212" (ECF 420, Ex. C., Apr. 17, 2019 Agreement) --  would change the scope of the representation to which the parties agreed. The

6

scope of representation is an essential part of the retainer agreement. Thus, changing the scope, which is what severing the reference to Gibson's criminal case would do, would re-write the parties' agreement. Thus, the Court cannot sever the contested term.

Because the agreement as written violates Rule 1.5(e)(2) and the unlawful term cannot be severed from it, the agreement is void. *Richards v. SSM Health Care, Inc.,* 724 N.E.2d 975, 979 (Ill. App. Ct. 2000) ("Contracts between lawyers that violate Rule 1.5 are against public policy and cannot be enforced."). Moreover, "where the underlying contract is unenforceable as a matter of public policy, the plaintiff will not be aided in circumventing the contract by recovering under the equitable theory of quantum meruit." *Kane v. Option Care Enters., Inc.*, 194 N.E.3d 912, 927 (Ill. App. Ct. 2021). Thus, intervenors cannot recover in quantum meruit for the work they did for Gibson pursuant to the agreement.

Gibson further argues that Brodsky cannot recover fees for work in connection with the Torture Inquiry and Relief Commission proceedings because it pre-dated the first retainer agreement Gibson signed with Brodsky in March 2015. Under the circumstances, Gibson argues, Brodsky had "no expectation that [Gibson] would pay for the services rendered," and thus Brodsky cannot recover under a quantum meruit theory. *Paradise v. Augustana Hosp. & Health Care Ctr.*, 584 N.E.2d 326, 329 (Ill. App. Ct. 1991).

There is nothing in the record properly before the Court[2] that suggests Gibson agreed to pay Brodsky for his work on the Torture Inquiry and Relief Commission proceedings. But the Court cannot say "'it appears beyond doubt that [Brodsky] cannot prove any facts that would support his claim'" for fees for his work on the Commission proceedings. *N. Ind. Gun & Outdoor*

---

[2] Brodsky submitted some 2014 correspondence he exchanged with Gibson as exhibits to his response brief. But because the letters are not attached to Brodsky's complaint, the Court cannot consider them in resolving this Rule 12(c) motion. *See N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452-53.

7

*Shows, Inc.,* 163 F.3d at 452 (7th Cir. 1998) (quoting *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). Thus, Gibson's motion with respect to these fees should be denied.

Next, Gibson argues that Brodsky and Moore should not be permitted to seek fees for the certificate of innocence proceedings[3] because they already received a fee award from the Court of Claims. However, the order[4] awarding them fees states that, "[i]t is intended that the $59,023.75 in awarded attorney fees in this case *represent a portion of the legal work* done over the years [to] secur[e] Mr. Gibson's Certificate of Innocence." (ECF 705-4) (emphasis added). Thus, the Court of Claims appears not to have viewed the fee award as full compensation to Brodsky and Moore for their work to obtain a certificate of innocence for Gibson.

Finally, Gibson says that Brodsky cannot recover for the certificate of innocence proceedings because Brodsky filed the petition just three weeks before his law license was suspended. Illinois Supreme Court Rule 764 states that a "disciplined attorney may receive compensation on a quantum meruit basis for legal services rendered prior to the effective date of the order of discipline." *See Delbecarro v. Cirignani*, 633 N.E.2d 981, 985 (Ill. App. Ct. 1994). Thus, Brodsky can recover in quantum meruit for the work he did in connection with the certificate of innocence before his license was suspended.

---

[3] The certificate of innocence proceedings seem to fall outside the scope of the retainer agreement.

[4] The Court can take judicial notice of an order of another court. *See United States v. Payne*, 964 F.3d 652, 656 (7th Cir. 2020) ("[I]t is well-settled that [courts] may judicially notice court records as evidence of prior judicial actions."); *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017) (stating that the record on a 12(c) motion "is limited to the pleadings," "'documents incorporated by reference [into] the pleadings'" and "'judicial notice of matters of public record.'") (quoting *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)).

## Conclusion

For the reasons set forth above, the Court recommends that the district court grant in part and deny in part Gibson's motion for partial judgment on the pleadings [690].

**SO ORDERED**                          **ENTERED: October 17, 2025**

**M. David Weisman**
**United States Magistrate Judge**