**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES GIBSON,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **CITY OF CHICAGO, et al.,** <br><br> **Defendants.** | ) | **No. 19-cv-4152** <br><br> **Judge Jeffrey I. Cummings** |
| **JOEL BRODSKY and RAMON MOORE,** <br><br> **Intervenors,** <br><br> **v.** <br><br> **JAMES GIBSON,** <br><br> **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on intervenors Joel Brodsky's and Ramon Moore's (collectively, the "Intervenors") objections, (Dckt. ##722, 724), to Chief Judge Magistrate Weisman's October 17, 2025 Report and Recommendation, (Dckt. #712), recommending that this Court grant in part and deny in part plaintiff James Gibson's motion for judgment on the pleadings, (Dckt. #690). For the reasons set forth below, the Court sustains in part and overrules in part the Intervenors' objections. Accordingly, the Court grants in part and denies in part Gibson's motion for judgment on the pleadings, (Dckt. #690), as set forth below.

## I. BACKGROUND

The Court presumes familiarity with the intricate facts of this case and includes only those facts relevant to resolving the instant dispute. Those facts, and the relevant timeline, are as follows.

On October 8, 1991, James Gibson was convicted of double murder and sentenced to life in prison based on a statement coerced by torture by Chicago Police Detectives under the supervision of Jon Burge. (Dckt. ##420 ¶4; 208 ¶4). Thereafter, Gibson exhausted his appeals and his traditional post-conviction remedies to no avail. (Dckt. ##420 ¶5; 208 ¶5). However, in 2009, the State of Illinois enacted the Illinois Torture Inquiry and Relief Commission (TIRC) Act, 775 ILCS 40/1 *et. seq*. (Dckt. ##420 ¶6; 208 ¶6). In 2012, Gibson filed a claim under the TIRC Act on his own behalf. (Dckt. ##420 ¶7; 208 ¶7).

In April 2014, Gibson and Brodsky exchanged correspondence, (Dckt. ##705-2; 705-3), and Gibson agreed to have Brodsky represent him in the TIRC proceedings, in overturning the wrongful conviction, and prosecuting any future civil rights action. (Dckt. ##420 ¶8; 208 ¶8). Brodsky alleges that pursuant to that agreement, he counseled Gibson in his TIRC submissions, gathered and provided evidence to the TIRC, attended proceedings before the TIRC, and worked with the TIRC director on Gibson's behalf. (Dckt. #420 ¶9). On July 22, 2015, the Torture Commission entered an order finding that Gibson had been tortured into making a statement that was used as the primary evidence at trial to convict him, and it referred the matter to the Circuit Court of Cook County for further proceedings. (Dckt. ##420 ¶10; 208 ¶9).

On September 3, 2015, Gibson and Brodsky formalized their agreement through a written retainer agreement (hereinafter, "the 2015 Agreement"), which provides in relevant part as follows:

> The undersigned James Gibson, referred to as "Client," employs Attorney Joel A. Brodsky, referred to as "Attorneys," ***to represent client in any and all necessary post-conviction proceedings to gain his freedom and vacate and set aside the wrongful conviction in Cook County case No. 90 CR 3212, and in enforcing a cause of action against any person or entity liable arising out of the torture, wrongful conviction, and wrongful imprisonment of James Gibson . . .***
>
> . . .
>
> Client agrees to pay Attorneys a fee of 33.333 percent (1/3) of any recovery, whether the recovery is by way of settlement, lawsuit, claim, or otherwise. In the event of an appeal of any money judgment against those liable the Client agrees that the he will pay the Attorneys a fee of 40 percent (40%) of any amount they may obtain. If there is no recovery then the Client is not obligated to pay any fees to Attorneys.

(Dckt. #420 at 10–11) (emphasis added).

On October 9, 2015, Brodsky filed a petition for relief in the Circuit Court of Cook County pursuant to the TIRC Act, requesting that Gibson's conviction be overturned. (Dckt. ##420 ¶11; 208 ¶10). On July 29, 2016, after nearly a year of litigation and a six-day evidentiary hearing with seventeen witnesses, the Circuit Court issued a written order denying Gibson any relief. (Dckt. ##420 ¶11; 208 ¶11). Brodsky filed an appeal on Gibson's behalf on August 15, 2016. (Dckt. ##420 ¶12; 208 ¶12).

On March 2, 2017, while the appeal was still pending, Brodsky and Gibson agreed to bring on attorney Ramon Moore as co-counsel. (Dckt. ##420 ¶13; 208 ¶13). The March 2, 2017 "Co-Counsel Agreement," (hereinafter, "the 2017 Agreement"), reiterated the above quoted language of the 2015 Agreement, and provides further as follows:

> Joel A. Brodsky has . . . employed Attorney Ramon Moore as his co-counsel in the above referenced matter, and has agreed to pay him eleven and 111/100 percent (11.111%) of any sum recovered on behalf of the Client whether the recovery is by way of settlement, lawsuit, claim, or otherwise, (which amounts to one-third (33.333%) of the fee the Attorney is entitled to out of any recovery made on behalf of Client pursuant to the written fee agreement between the Attorney and Client). Attorney Ramon Moore agrees to accept this contingent fee arrangement and

> understands that he will receive no fees if there is no recovery from the above referenced case.

(Dckt. #420 at 13–14).

Brodsky and Moore proceeded with Gibson's appeal, including filing a 98-page brief and presenting oral argument. (Dckt. ##420 ¶13; 208 ¶17–18). On March 22, 2018, the Appellate Court reversed the Circuit Court's denial of relief and remanded the case for further proceedings. (Dckt. ##420 ¶13; 208 ¶12); *People v. Gibson*, 105 N.E.3d 47 (Ill.App.Ct. 2018). On remand, the Circuit Court again denied Gibson's petition for relief under the TIRC Act. (Dckt. ##420 ¶14; 208 ¶19). Brodsky and Moore filed another appeal on Gibson's behalf on August 29, 2018. (Dckt. ##420 ¶14; 208 ¶20).

On March 13, 2019, the Illinois Appellate Court issued an opinion again reversing the Circuit Court's order, vacating Gibson's conviction and life sentence, ordering a new trial before a new judge, and excluding from evidence the coerced statement. (Dckt. ##420 ¶15; 208 ¶22); *People v. Gibson*, 2019 WL 1231106 (Ill.App.Ct. 2019). On remand, Gibson's conviction and life sentence were vacated, a new trial judge was assigned, and Brodsky and Moore secured a new trial date. (Dckt. ##420 ¶16; 208 ¶23).

On April 17, 2019, Gibson, Brodsky, and Moore executed a "Supplemental and Renewed Retainer Agreement," (hereinafter, "the 2019 Agreement"), which provides in relevant part as follows:

> The undersigned James Gibson, referred to as "Client," has employed Attorney Joel A. Brodsky as his attorney by an agreement entered on September 3, 2015, and has employed Attorney Ramon A. Moore as his attorney as co-counsel with Attorney Joel A. Brodsky, by an agreement entered on March 2, 2017, both of whom shall hereinafter be referred to as "Attorneys," to represent Client in any and all necessary post-conviction proceedings, including appeals, to gain his freedom and vacate and set aside the wrongful conviction in Cook County case No. 90 CR 3212, ***in any re-trial of the case of People v. James Gibson, 90 CR 3212 in the Circuit Court of Cook County***, and in enforcing a cause of action against any person or

> entity liable arising out of the torture, wrongful conviction, and wrongful imprisonment, and wrongful prosecution of James Gibson . . .
>
> ***The Attorneys and the Client re-affirm and renew the Retainer Agreement of September 3, 2015 and the Co-Counsel Agreement of March 2, 2017, and affirm that these agreements are and remain in full force and effect, and that this Supplemental and Renewed Retainer Agreement does not supersede or supplant these agreements in any way. The Attorneys and the Client hereby state that it is their intention that this Supplemental and Renewed Retainer Agreement is a continuation of these aforesaid agreements and in no way terminates or alters the rights and obligations of the parties to those agreements.***
>
> Client agrees to pay Attorneys a fee of 33.333 percent (1/3) of any recovery, whether the recovery is by way of settlement, lawsuit, claim, or otherwise as follows: Joel A. Brodsky is to receive 22.222% . . . and Ramon A. Moore is to receive 11.111% . . . of any recovery, whether the recovery is by way of settlement, lawsuit, claim, or otherwise.

(Dckt. #420 at 18–19) (emphasis added).

The day after executing the 2019 Agreement, Brodsky and Moore successfully moved for Gibson's release on bail pending his re-trial, and on that day, Gibson was released from prison after serving 29 years. (Dckt. ##420 ¶17; 208 ¶24). Shortly thereafter, on April 26, 2019, the State dismissed all charges against Gibson. (Dckt. ##420 ¶19; 208 ¶26).

On May 10, 2019, Brodsky, who at the time was suspended from practicing law in the Northern District of Illinois, initiated this action by filing a 210-paragraph complaint in the Circuit Court of Cook County against the City of Chicago and various officers. (Dckt. ##420 ¶20; 208 ¶27). Defendants timely removed the case to this Court. (Dckt. #420 ¶21). On May 29, 2019, Brodsky also prepared and filed a petition for certificate of innocence on Gibson's behalf. (*Id.* ¶22).

On June 19, 2019, for reasons unrelated to this case, the Supreme Court of Illinois entered an interim suspension of Brodsky's license to practice law. (Dckt. ##420 ¶29; 208 ¶28). Ultimately, on November 13, 2020, the Illinois Supreme Court entered an Order of Discipline

against Brodsky suspending him from the practice of law for two years retroactive to June 19, 2019, and until further order of court. (*Id.*).

After Brodsky's suspension, Moore continued to represent Gibson in this matter. (Dckt. #208 ¶31). Moore also continued to work on the certificate of innocence proceedings, through which he eventually secured a certificate of innocence for Gibson, as well as a $236,095 award before the Illinois Court of Claims. (*Id.* ¶¶33–35).

Ultimately, Gibson formally terminated Brodsky's representation on June 29, 2020, (Dckt. #420 ¶30), and terminated Moore's representation on August 31, 2020, (Dckt. #208 ¶31). Thereafter, Brodsky and Moore sought and were granted leave to file their complaints in intervention in this case, in which they seek attorney's fees under a theory of quantum meruit. Specifically, Brodsky seeks fees for the value of the services he provided to Gibson from April 28, 2014 through June 19, 2019 (his suspension) and to recover the costs advanced on Gibson's behalf. (Dckt. #420). Moore seeks fees for the value of the services he provided to Gibson from March 2, 2017 through the termination of his representation on August 31, 2020. (Dckt. #208).

The Intervenors' complaints were stayed pending the resolution of Gibson's claims against the defendants. After Gibson and defendants reached a settlement, Gibson answered the Intervenors' complaints and moved for judgment on the pleadings seeking a ruling as a matter of law that the Intervenors "may not recover any amounts under any theory of work predating Gibson's April 26, 2019 exoneration and . . . are limited to recovery of fees—at most—incurred in connection with the instant civil rights dispute." (Dckt. #690 at 2). More specifically, Gibson argues that the Intervenors are barred from recovering fees for any work performed prior to the April 26, 2019 dismissal of the murder charges because: (1) their fee agreements violate Illinois Rule of Professional Conduct 1.5(e)(2), which prohibits contingency fee agreements for criminal

work; (2) their fee agreements violate Illinois Rule of Professional Conduct 1.8(i), which prohibits attorneys from acquiring a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client; (3) Brodsky cannot recover for work tied to the TIRC proceedings because he did not represent Gibson until September 3, 2015; and (4) Brodsky and Moore cannot recover fees for work performed on the certificate of innocence proceedings because (a) they already received compensation from the Court of Claims related to those proceedings and (b) Brodsky was suspended during the pendency of this work.

This Court referred the motion to Chief Judge Magistrate Weisman, who issued a Report and Recommendation on October 17, 2025, (Dckt. #712). In it, Judge Weisman recommended that this Court grant in part Gibson's motion for judgment on the pleadings, finding first that: (1) the 2019 Agreement violates Rule 1.5(e)(2) because it purports to hire the Intervenors on a contingency fee basis for work on a criminal case; (2) the improper provision cannot be severed because it would change the scope of the representation to which the parties agreed; and (3) as a result, the 2019 Agreement is void and the Intervenors cannot recover in quantum meruit for the work they did for Gibson pursuant to the agreement.[1]

Furthermore, with respect to the 2015 and the 2017 Agreements, Judge Weisman adopted Gibson's argument that "because the April 17, 2019 contingency fee agreement includes work on Gibson's criminal case and incorporates the two prior contingency fee agreements, all three agreements violated Rule 1.5(e)(2)." (Dckt. #712 at 5). Finally, Judge Weisman recommended that this Court otherwise deny Gibson's motion for judgment on the pleadings, finding no merit to Gibson's remaining arguments related to the Intervenors' work on the certificate of innocence proceedings and Brodsky's work on the TIRC proceedings that pre-dated the 2015 Agreement.

[1] Because Judge Weisman found that the 2019 Agreement violated Rule 1.5(e)(2), he did not address Gibson's argument that the agreement violates Rule 1.8(i).

Brodsky and Moore have filed objections to Judge Weisman's Report and Recommendation, (Dckt. ##722, 724), and they urge the Court to reject Judge Weisman's finding that the 2019 Agreement violated Rule 1.5(e)(2), and any implications flowing from that finding. Gibson responds in turn, (Dckt. #726), and requests that the Court overrule the Intervenors' objections and adopt the Report and Recommendation.

## II. LEGAL STANDARD

### A. Standard for the Review of a Report and Recommendation

"When a magistrate judge prepares a report and recommendation for a district court, the governing statute provides that the district court 'shall make a *de novo* determination' with respect to any *contested* matter." *Kanter v. C.I.R.,* 590 F.3d 410, 416 (7th Cir. 2009), *quoting* 28 U.S.C. §636(b) (emphasis added); *see also* Fed.R.Civ.P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). As the Seventh Circuit has observed:

> De novo review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion. The district judge is free, and encouraged, to consider all of the available information about the case when making this independent decision. A district judge may be persuaded by the reasoning of a magistrate judge or a special master while still engaging in an independent decision-making process.

*Mendez v. Republic Bank,* 725 F.3d 651, 661 (7th Cir. 2013) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)). If, however, "no objection or only partial objection is made, the district court judge reviews those *unobjected portions* for clear error." *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir. 1999) (emphasis added). Ultimately, the district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1); *see also* Fed.R.Civ.P. 72(b).

### B. Standard for Judgment on the Pleadings

Rule 12(c) permits a party to move for judgment on the pleadings after the complaint and answer have been filed by the parties. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing Fed.R.Civ.P.12(c)). "A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). As such, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As with a Rule 12(b)(6) motion, when resolving a motion for judgment on the pleadings, the Court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). "When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020).

## III. ANALYSIS

### A. The Court Adopts in Part Judge Weisman's Report and Recommendation Regarding the Violation of Rule 1.5(e)(2).

In his motion, Gibson first argued, and Judge Weisman agreed, that the Intervenors cannot recover for any work they did for Gibson before the murder charges against him were dismissed on April 26, 2019 because their retainer agreements violated Illinois Rule of

Professional Conduct 1.5(e)(2).[2] That Rule provides that a "lawyer shall not enter into an arrangement for, charge, or collect . . . a contingent fee for ***representing a defendant in a criminal case.***" Rule 1.5(e)(2) (emphasis added).

"The prohibition against fees that are contingent upon attaining a particular result in criminal defense cases seems to be universal." *Mauzy v. Edward Kraemer & Sons, Inc.*, No. CIV. 02-879 AFB, 2004 WL 611127, at *5 n.11 (D.Minn. Mar. 4, 2004). "[T]he rationale for the prohibition is to protect the criminal defendant's interests and reduce the temptation for a lawyer to use improper or corrupt strategies to ensure payment of fees." *Id.*; *Landsman v. Moss*, 579 N.Y.S.2d 450, 452 (N.Y.S.Ct. 1992) (The rule against "the use of contingent fee agreements to pay for representation of a defendant in a criminal action . . . is predicated, *inter alia*, upon a public policy disfavoring such agreements because they carry the inherent danger of corrupting justice.") (cleaned up). Indeed, one of the reasons behind the prohibition against contingent fees in criminal cases is that such a fee creates the potential for a conflict because the attorney has an incentive to pursue an acquittal at trial instead of pursuing a plea bargain or lesser offense. *See* Lushing, P., *The Fall and Rise of the Criminal Contingent Fee*, 82 J. CRIM. L. & CRIMINOLOGY 498, 517 (1991) ("This incentive arguably conflicts with the client's interest in obtaining a plea bargain, or, if the case goes to trial, in the client's interest in instructions giving the jury the option of returning a verdict of guilty of a lesser offense.").

**1. The 2019 Agreement Violates Rule 1.5(e)(2).**

Here, the Court agrees with Judge Weisman that the 2019 Agreement—entered into *after* the Circuit Court vacated Gibson's prior conviction, but *before* the State dismissed the charges—violates Rule 1.5(e)(2). Once more, this Agreement (unlike the first two agreements) committed

[2] At the time the agreements were executed, this provision was found under Rule 1.5(d)(2).

the Intervenors to representing Gibson in a criminal case, i.e. "***any re-trial of the case of People v. James Gibson, 90 CR 3212 in the Circuit Court of Cook County***." Although the 2019 Agreement does not expressly state that payment for the work that the Intervenors agreed to perform on the retrial of Gibson's criminal case was contingent on the outcome of the criminal case, it does describe the fee to be paid to the Intervenors as a "contingency fee" and makes clear that Gibson "[wa]s *not* obligated to pay any fees to Attorneys" (i.e., the Intervenors) "[i]f there is no recovery" by way of a settlement, civil lawsuit or claim. (Dckt. #208-2 at 1–2). The *only* way that Gibson would receive any recovery in a civil action is *if* the criminal proceedings were successfully resolved in his favor. Consequently, the Intervenors' recovery of their fee was fully contingent upon the outcome of the criminal retrial. As such, the 2019 Agreement violates Rule 1.5(e)(2).

The Intervenors disagree and point to Illinois State Bar Association Advisory Opinion on Professional Conduct No. 84-9. (Dckt. #706-1). However, the hypothetical retainer agreement in Opinion No. 84-9 is materially different from the 2019 Agreement. In particular, Opinion No. 84-9 provides in pertinent part as follows:

> <u>FACTS</u>
>
> The inquiring attorney proposes to represent a client in defending a criminal charge and also in litigating a Civil Rights claim which the client may have as a result of incidents alleged to have occurred in connection with the client's arrest. (The client has not yet decided whether to pursue the Civil Rights claim.)
>
> The proposed fee arrangement is as follows:
>
> (a) Fees for criminal proceeding: If the Civil rights action is not pursued, the client will be responsible for payment of the fees in the criminal case. If the Civil Rights action is pursued, the fees for the criminal (as well as for the civil) representation will be paid from the proceeds, if any, of the civil action.
>
> (b) Fees for Civil Rights proceeding (if pursued): a fraction of any recovery, and a greater fraction thereof if an appeal is taken by any party.

(Dckt. #706-1 at 1–2). In this scenario, unlike here, "the fee for the criminal defense work is not contingent on the 'successful accomplishment' of the criminal charge defense. Rather, it is contingent upon a recovery in the civil proceeding, and it is not contingent at all if no civil proceeding is instituted." (*Id.* at 2). Moreover, the fact that the "criminal defense fee [will be] foregone if [the] civil action [is] unsuccessful" does not convert the hypothetical retainer into a forbidden contingent fee for representing a criminal defendant. (*Id.* at 1). For these reasons, the scenario discussed in Opinion No. 84-9 is distinguishable from the factual circumstances here.

Finally, the Court agrees with Judge Weisman's finding that that the invalid provision cannot be severed from the 2019 Agreement as it would change the scope to which the parties agreed regarding the full scope of the Intervenors' representation of Gibson at the time. (*See* Dckt. #712 at 6–7).

### 2. The 2019 Agreement Is Void as Against the Public Policy of Illinois.

The parties dispute whether the 2019 Agreement violates the public policy of Illinois, and the resolution of this dispute raises a "question of law." *Timothy Whelan L. Assocs., Ltd. v. Kruppe*, 947 N.E.3d 366, 370 (Ill.App.Ct. 2011); *In re Marriage of Rife*, 878 N.E.2d 775, 780 (Ill.App.Ct. 2007) (same). "Illinois courts recognize a distinction between an attorney-client agreement that is unenforceable because it contains an illegal term or fails to include a legally required term, on the one hand, and one that is void as against public policy because the subject of the agreement is prohibited by law, on the other." *Andrew W. Levenfeld & Assocs., Ltd. v. O'Brien*, 248 N.E.3d 1053, 1067 (Ill. 2024).

Retainer agreements that contain prohibited contingency fee provisions are considered illegal contracts that violate the public policy of Illinois. *See, e.g.*, *id.* at 1068 (citing *Licciardi v. Collins*, 536 N.E.2d 840, 847–48 (Ill.App.Ct. 1989) ("attorney-client agreement violated public

policy because contingency fee was prohibited in domestic relations cases")); *First Nat. Bank of Springfield v. Malpractice Rsch., Inc.*, 688 N.E.2d 1179, 1182 (Ill. 1997) (noting that agreement that paid a contingent fee to persons who obtained expert witnesses on behalf of parties to the litigation is "void as contrary to the public policy of this state"); *Sanchez & Daniels v. Koresko & Assocs.*, No. 04 C 5183, 2005 WL 4888082, at *6 (N.D.Ill. Dec. 5, 2005) ("Illinois courts have denied an attorney quantum meruit recovery only when the attorney entered into an agreement with the client that violated public policy, such as an improper contingency fee or fee-sharing agreement.") (citing cases).

No Illinois decision (to this Court's knowledge) has held that a contingent fee agreement—like the 2019 Agreement—that violates Rule 1.5(e)(2) by charging a contingent fee for representing a defendant for the retrial in his criminal case is void as against Illinois public policy. Nonetheless, the Court has no doubt that the 2019 Agreement does, indeed, violate Illinois public policy in view of the caselaw cited in the preceding paragraph and in Section III(A). There is no principled reason to distinguish between contingent fee agreements in domestic relations cases and for procuring expert witnesses (which are void as against public policy under Illinois Supreme Court precedent) and contingent fee agreements for representing a defendant in a criminal case. Consequently, the Court overrules the Intervenors' objections to Judge Weisman's Report and Recommendation to the extent that they concern the 2019 Agreement.[3]

[3] Brodsky argued in his objections that Gibson's motion for judgment on the pleadings should be fully barred by the doctrines of collateral estoppel and waiver. (Dckt. #722 at 21–24). But because Brodsky did not raise these arguments in response to the motion for judgment on the pleadings, they were not before Magistrate Judge Weisman and have thus been waived. *See United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) (noting that "arguments not made before a magistrate judge are normally waived").

**3. The 2015 and the 2017 Agreements are not barred by Rule 1.5(e)(2).**

Although Gibson argued (and Judge Weisman found) that the 2019 Agreement "incorporates the two prior contingency fee agreements," (Dckt. #712 at 5), the 2019 Agreement did *not* expressly incorporate the 2015 and the 2017 Agreements. To the contrary, the 2019 Agreement states as follows with respect to the two prior fee agreements:

> The Attorneys and the Client re-affirm and renew the Retainer Agreement of September 3, 2015 and the Co-Counsel Agreement of March 2, 2017, and affirm that these agreements are and remain in full force and effect and that this Supplemental and Renewed Retainer Agreement does not supercede or supplant these agreements in any way. The Attorneys and the Client hereby state that it is their intention that this Supplemental and Renewed Retainer agreement is a continuation of these aforesaid agreements and in no way terminates or alters the rights and obligations of the parties to those agreements.

(Dckt. #208-2 at 1). As such, the 2015 and the 2017 Agreements "remain in full force and effect" notwithstanding the invalidity of the 2019 Agreement.

Moreover, neither the 2015 Agreement nor the 2017 Agreement charge a contingency fee for "representing [Gibson] in a *criminal* case" in violation of Rule 1.5(e)(2), nor could they have. This is so because at the time the parties entered into these Agreements, Gibson's criminal proceedings had long since concluded, and he and his attorneys were pursuing post-conviction proceedings, namely the TIRC proceedings, which all parties agree—and the Illinois Appellate Court has confirmed—are *civil* in nature. *See Gibson*, 105 N.E.3d at 60 ("Judicial review of a TIRC disposition is a civil proceeding, akin to the third stage of a postconviction proceeding, which is also civil in nature.") (cleaned up). Thus, although the 2015 Agreement and the 2017 Agreement are contingency fee agreements, they do not violate Rule 1.5(e)(2)'s prohibition

against contingency fees for *criminal work*. As such, neither the 2015 Agreement nor the 2017 Agreement are void agreements against the public policy of Illinois.[4]

For these reasons, the Court sustains the Intervenors' objections to Judge Weisman's report and recommendation to the extent that it concerns the 2015 and the 2017 Agreements.

**B. The Court Adopts the Remainder of the Report and Recommendation.**

Judge Weisman otherwise recommended that this Court deny Gibson's motion with respect to the fees for the interveners' work on the certificate of innocence proceedings and Brodsky's work before the first formal agreement on September 3, 2015. Naturally, the Intervenors did not object to these recommendations, which weighed in their favor, nor, however, did Gibson. As such, this Court need only to review Judge Weisman's recommendations on these issues for clear error. *Johnson*, 170 F.3d at 739. Having done so, the Court finds no clear error.

First, with respect to Gibson's argument that Brodsky cannot recover fees for work on the TIRC proceedings that pre-dated the 2015 Agreement, Judge Weisman could not say that it "appears beyond doubt that [Brodsky] cannot prove any facts that would support his claim for fees for his work on the Commission proceedings." (Dckt. #712 at 7 (citing *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452 (7th Cir. 1998)). This Court agrees.

---

[4] Gibson also argues in passing that the agreements violate Illinois Rule of Professional Conduct 1.8(i), which provides that "A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may: (1) acquire a lien authorized by law to secure the lawyer's fee or expenses; and (2) contract with a client for a reasonable contingent fee in a civil case." But Gibson did not support this argument with pertinent case law directly on point, nor did he address this Rule in his reply in response to the Intervenors' arguments that they did not violate Rule 1.8(i). Accordingly, the Court considers the argument waived. *See United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Second, Judge Weisman rejected Gibson's arguments related to the Intervenors' work on the certificate of innocence proceedings, which Judge Weisman indicated "seem[ed] to fall outside the scope of the retainer agreement." (Dckt. #712 at 8 n.3). Specifically, Judge Weisman noted that the order awarding fees from the Court of Claims expressly stated that "[i]t is intended that the $59,023.75 in awarded attorney fees in this case *represent a portion of the legal work* done over the years [to] secur[e] Mr. Gibson's Certificate of Innocence." (*Id.* at 8 (citing Dckt. #705-4) (emphasis added)). Thus, as Judge Weisman correctly observed, "the Court of Claims appears not to have viewed the fee award as full compensation to Brodsky and Moore for their work to obtain a certificate of innocence for Gibson." (Dckt. #712 at 8).

Finally, Judge Weisman correctly found that notwithstanding Brodsky's suspension, which was retroactive to June 19, 2019, Brodsky could "recover in quantum meruit for the work he did in connection with the certificate of innocence *before* his license was suspended." (*Id.*).

## CONCLUSION

For the foregoing reasons, the Court overrules in part and sustains in part the Intervenors' objections to Chief Magistrate Judge Weisman's October 17, 2025 report and recommendation.

**DATE: September 25, 2026**



**Jeffrey I. Cummings**
**United States District Court Judge**